Adam Hosmer-Henner, Esq., NSBN 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

*Attorneys for Defendants*
*Hometown Health Providers Insurance Company, Inc.,*
*Hometown Health Plan, Inc., and Hometown Health*
*Management Company*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PRIME HEALTHCARE SERVICES- RENO, LLC D/B/A SAINT MARY'S REGIONAL MEDICAL CENTER,<br><br>          Plaintiff,<br><br>vs.<br><br>HOMETOWN HEALTH PROVIDERS INSURANCE COMPANY, INC., HOMETOWN HEALTH PLAN, INC., and HOMETOWN HEALTH MANAGEMENT COMPANY,<br><br>          Defendants. | Case No: 3:21-CV-00226-MMD-CLB<br><br>**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |

Defendants Hometown Health Providers Insurance Company, Inc., Hometown Health Plan, Inc., and Hometown Health Management Company (collectively, "Hometown Health")[1] hereby move to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") or, in the alternative, for a more definite statement under FRCP 12(e). This Motion is based upon the following memorandum of points and authorities, the pleadings and papers on file, and such other information as the Court may wish to consider.

---

[1] Defendant Hometown Health, LLC was previously voluntarily dismissed by Plaintiff. (ECF No. 31).

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

McDONALD 𝕸 CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

I.      INTRODUCTION

Plaintiff Prime Healthcare Services – Reno, LLC d/b/a Saint Mary's Regional Medical Center ("Saint Mary's") filed a deliberately ambiguous complaint, which is drafted in an attempt to avoid dispositive defenses rather than in a genuine attempt to obtain legal relief. Saint Mary's claims an entitlement to payment on "over 600 unpaid or underpaid claims." (ECF No. 1, Compl. ¶ 10). Yet these claims do not remotely present the same "single, simple question" that Saint Mary's pretends they do. (*Id.* p. 1). Instead, these claims apparently involve 1) ERISA and non-ERISA plans; 2) self-funded and fully-insured plans; 3) emergency and non-emergency services; 4) denied and approved claims; 5) claims that were administratively appealed to Hometown Health and those that were not; and 6) claims where Saint Mary's received an assignment of benefits from insureds per the language of Paragraph 16 in the Complaint and other claims where the assignment language differed. To further increase the permutations, Saint Mary's intentionally omitted from the Complaint any mention of the timeframe for the allegedly denied or underpaid claims in question.

This last point is especially critical as Nevada adopted a statutory framework for resolving payment disputes between insurers and out-of-network providers, which went into effect on January 1, 2020. NRS 439B.754 (requiring that an "out-of-network provider shall accept or reject an amount paid . . . as payment in full for the medically necessary emergency services for which the payment was offered within 30 days after receiving the payment" and if the amount is rejected then the parties must "participate in binding arbitration"). While Saint Mary's cites to NRS Chapter 439B for the proposition that Hometown Health is "required to provide such coverage of emergency care to out-of-network providers at the usual and customary rate," ECF No. 1, Compl. ¶ 72, which is blatantly untrue based on the plain language of the statute, Saint Mary's completely fails to inform the Court that these statutes mandate binding arbitration for disputes about billing for out-of-network emergency services and that Saint Mary's is no longer allowed to engage in the practices of balance billing or surprise billing. NRS 439B.745. Saint Mary's claim that Defendants' actions "potentially subjected HH's

2

own insureds to near full-price medical bills even though they were insured" is untrue as a matter of law. (ECF No. 1, Compl. ¶ 9).

Instead, the individual patients have not been harmed as Saint Mary's cannot and does not allege that these patients have paid anything additional as a result of Defendants' conduct or that they failed to receive any medical care. As Saint Mary's claims depend on standing "in the shoes of the insureds" and being "entitled to any amounts for which the insureds would be entitled to reimbursement," the claims must fail as the patients have not suffered an injury-in-fact and are not awaiting reimbursement. (ECF No. 1, Compl. ¶ 17). Even if this was not the case, the health insurance plans provided by Defendants Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc. strictly prevent assignment to providers such as Saint Mary's through contractual anti-assignment provisions. This Court should give effect to these anti-assignment provisions and categorically bar Saint Mary's from attempting to stand "in the shoes of these insureds." (ECF No. 1, Compl. ¶ 9).

Saint Mary's surprisingly does not appear to be aware of the current state of Nevada healthcare law and has attempted to spin routine payor-provider disputes that must be resolved, if at all, through statutory arbitration or at the administrative level into an unwieldy and legally unsupportable omnibus federal complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2021, Plaintiff Prime Healthcare Services – Reno, LLC d/b/a Saint Mary's Regional Medical Center ("Saint Mary's" or "Plaintiff") filed its Complaint in this action. (ECF No. 1). Saint Mary's, a private hospital owned by Prime Healthcare Services, alleges that it is entitled to payment from Hometown Health on over 600 unpaid or underpaid claims totaling more than six million dollars. (ECF No. 1, Compl. ¶ 10-11). Saint Mary's alleges six causes of action—(1) Failure to Comply with Health Benefit Plans in Violation of ERISA; (2) Breach of Contract; (3) Contract Implied-in-Law (In the Alternative); (4) Unjust Enrichment/Quantum Meruit (In the Alternative); (5) Violation of Nevada Emergency Care Statutes; and (6) Violation of Nevada Prompt Payment Statutes.  (*See generally* ECF No. 1).  Saint Mary's brings Counts 1 and 2 on behalf of plan participants, relying solely on assignments.  (ECF No. 1, Compl. ¶ 44,

3

51).[2] The remaining claims are all brought derivatively based on alleged harm suffered by the plan participants.

Saint Mary's fails to allege any specific facts about the claims central to this dispute. It fails to identify which claims involve ERISA plans, admitting that it "cannot at this time plead the proportions of each type of claim [e.g., ERISA v. non-ERISA] in the Claims List." (ECF No. 1, Compl. ¶ 11). It fails to identify the specific ERISA plan provisions that Hometown Health is alleged to have violated, and instead generally alleges "HH has violated HH's duty to HH's insureds by not payment claims which were covered, and by underpaying claims which were covered at a higher level than HH paid." (ECF No. 1, Compl. ¶ 40). And it fails to specifically plead that it exhausted its administrative remedies, summarily stating that "Saint Mary's has exhausted all remedies required under applicable law prior to this litigation, or was excused from so doing." (ECF No. 1, Compl. ¶ 42).

## III.   LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682, at *1 (D. Nev. Aug. 29, 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, mere "labels and conclusions" and "formulaic recitation of the elements of

---

[2] Saint Mary's attempts to distract from its insufficient pleading by claiming that it "is not a coincidence that the repeated and extensive pattern and behavior of non-payment and gross underpayment to Saint Mary's is perpetrated by an insurer (Hometown Health) that is a wholly owned subsidiary of Renown Healthcare, Saint Mary's principal competitor for the provision of heath [sic] care services in Northern Nevada." (ECF No. 1, p. 1). Despite this statement and other slanted accusations of monopolistic behavior, Saint Mary's does not bring any claims predicated upon these allegations, which are baseless and included for immaterial and impertinent purposes.

a cause of action" are insufficient. *Henry v. Dovenmuehle Mortg.*, No. 2:19-cv-00360-MMD-NJK, 2020 WL 1290787, at *5-6 (D. Nev. Mar. 18, 2020) (citations omitted).

FRCP 12(b)(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

## IV.   ARGUMENT

### A.   Saint Mary's Lacks Standing to Sue Defendants.

Saint Mary's purports to "stand in the shoes" of individuals insured by Hometown Health Providers Insurance Company, Inc. or Hometown Health Plan, Inc. but it cannot satisfy the prerequisites for maintaining such a suit. Under ERISA's civil enforcement provision, only plan participants and beneficiaries can sue to recover benefits under the plan. 29 U.S.C. § 1132(a)(1)(B); *see also id.* at § 1002(7) (defining a "participant" as an employee, current or former, or members of an employee organization, current or former, who are eligible to receive benefits under a covered plan); *id.* at § 1002(8) (defining a "beneficiary" as any person designated by a participant or the terms of the plan to receive some benefit from the covered plan). A healthcare provider does not fall within either category, and therefore has no direct standing to sue under ERISA. *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 874 (9th Cir. 2017) ("We have held before, and reiterate now, that health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions."). A healthcare provider can sue under ERISA only if it establishes derivative standing through a valid assignment from the participant or beneficiary. *Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) ("[A] non-participant health care provider . . . cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims.").

#### 1.   Defendants' Anti-Assignment Provisions Bar Plaintiff's Claims.

Saint Mary's is neither a plan participant nor beneficiary. It therefore does not have direct standing to sue under ERISA to recover benefits. Saint Mary's tries to establish derivative standing by generally alleging that the participants assigned their benefits to Saint

Mary's.  (ECF No. 1, Compl. ¶¶ 16-17).  Its attempt at manufacturing standing fails because Hometown Health's plans contain valid and enforceable anti-assignment provisions that expressly prohibit the assignment of rights under the plans.  They provide: "You may not assign this EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without Our prior written consent." *See* Declaration of Jamie L. Winter, ¶ 4; *see also* Exhibit 1, attached thereto (Excerpts of "Hometown Health Plan, Inc.'s Large Group Signature HMO Plan – 2020 Evidence of Coverage").[3]  Saint Mary's does not and cannot allege that Defendants provided written consent to the assignment.

"Anti-assignment clauses in ERISA plans are valid and enforceable" and render such assignments void.  *Spinedex*, 770 F.3d at 1296; *see also Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) (holding that "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan"); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018)

---

[3] This Court may properly look beyond the pleadings and consider a document, like the Plan documents, without converting the motion to dismiss into one for summary judgment where: (1) the document was not physically attached to the plaintiff's complaint, but the contents of the document "are alleged in [the] complaint" and no party questions the authenticity of the document, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the "incorporation by reference" doctrine); or (2) the document was not attached to or referenced by the plaintiff's complaint, but no party contests the authenticity of the document and the plaintiff's complaint necessarily relies on the contents of that document, *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141, n. 5 (9th Cir. 2003) (in deciding a 12(b)(6) motion, the court may consider documents on which the complaint "necessarily relies" and whose "authenticity . . . is not contested").  Under either scenario, "[t]he court may treat such document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the Court may consider the anti-assignment provisions in the Plan documents attached to this Motion because the Complaint refers to this type of plan's terms and alleges its contents.  (E.g., ECF No. 1, Compl. ¶ 9, 11, 14).  Further, Saint Mary's Section 502(a)(1)(B) claim for benefits under ERISA necessarily relies on the Plan documents. This Court can therefore consider the anti-assignment provisions without converting Hometown Health's motion to dismiss into one for summary judgment under either theory cited above. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (holding that the district court did not err in considering documents referred to, but not attached to the complaint without converting the motion to dismiss into one for summary judgment where the documents showed that they do not support plaintiff's claim), o*verruled in part on other grounds, Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

1    (joining the unanimous consensus among circuit courts and "hold[ing] that anti-assignment

2    clauses in ERISA-governed health insurance plans as a general matter are enforceable"). In

3    *Spinedex*, the Ninth Circuit analyzed an anti-assignment provision that was similar to Hometown

4    Health's anti-assignment provision. The provision in *Spinedex* stated, in relevant part: "You may

5    not assign your Benefits under the Plan to a non-Network provider without our consent."

6    *Spinedex*, 770 F.3d at 1296. The Ninth Circuit held that the anti-assignment provision prevented

7    the plan participants from assigning their claims under that plan.  *Id.*

8          The anti-assignment provisions here similarly prevent the assignment of all rights and

9    claims under the plans.  Further, Saint Mary's does not allege facts showing that Hometown

10   Health provided written consent to any assignment.  Saint Mary's has therefore failed to show

11   that the assignment of its patients' benefits claims is sufficient to confer standing.  Absent such a

12   showing, it has failed to establish derivative standing.  Thus, Saint Mary's claims lack either

13   statutory or derivative standing to sue under ERISA, thereby warranting dismissal of its

14   derivative claims under FRCP 12(b)(6).  *Reg'l Med. Ctr. of San Jose v. WH Administrators, Inc.*,

15   No. 17-03357-EJD, 2017 WL 6513441, at *4 (N.D. Cal. Dec. 20, 2017) (explaining that "[a]

16   dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for

17   failure to state a claim rather than a dismissal for lack of subject matter jurisdiction").

18             **2.  The Purported Assignment is Inadequate to Confer Derivative Standing.**

19         Saint Mary's contends, in typically oblique fashion, that it obtained an assignment from

20   the insureds "in these words, or in similar language with similar legal effect," providing that the

21   insured "assigns and hereby authorizes . . . direct payment to the hospital . . . all private and

22   public insurance benefits otherwise payable to or on behalf of the patient . . ." (ECF No. 1,

23   Compl. ¶ 16). Yet, this assignment is narrow and does not cover the claims asserted by Saint

24   Mary's in this action. *Cf. DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 968–69 (N.D.

25   Cal. 2019) (construing a broad assignment provision in the form of: "I hereby assign to DaVita

26   all of my right, title and interest *in any cause of action* and/or any payment due to me")

27   (emphasis added). The most that Saint Mary's could obtain from this assignment is the right to

28   direct payment from the insurer so that payment is made to Saint Mary's rather than to the

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

insured. The language is not broad enough to cover the assignment of a cause of action. The excerpted provision provided by Saint Mary's is difficult to interpret given the missing portions, but appears nowhere near as broad as the provision analyzed in *DaVita* above. While some courts in the Ninth Circuit have certainly held that the assignment of benefits carries with it the ability to pursue legal relief related to those benefits, *see, e.g., Spinedex*, 770 F.3d at 1292, 1297, the provision cited by Saint Mary's does not even appear to contain a blanket assignment of benefits, but only the benefits that are payable to or on behalf of the patient. (ECF No. 1, Compl. ¶ 16). This assignment is therefore a limited one for the distribution of funds, but does not carry with it standing or the right to sue (which would in any event be barred by the anti-assignment provision above).

### 3. Absent an Injury-in-Fact for the Insureds, Saint Mary's Cannot Establish Derivative Standing.

At its core, Saint Mary's complaint is that it should have been paid more for the services it provided to the patients insured by Defendants than Saint Mary's ultimately received. To support this position, Saint Mary's makes arguments that would only be persuasive to those unfamiliar with the health care industry and its practices. (ECF No. 1, Compl. ¶ 23) ("Even excluding all cases in which HH paid nothing, the average payment percentage relative to Saint Mary's billed charges for the Claims at issue is a pitiful 20.42%"). While there is no need to dispute this allegation at present, Saint Mary's walks a fine line when arguing that Hometown Health's reimbursement rate is a "pitiful" 20.42%, as this argument could just as easily be flipped to demonstrate the excessiveness of Saint Mary's billed charges. In any event, what matters at this stage is that even if Saint Mary's can stand in the shoes of the insureds (which it cannot as shown above), there is no injury-in-fact to pursue on behalf of those insureds.

Saint Mary's is clear that it is not pursuing further payment from the insureds. (ECF No. 1, Compl. ¶ 38). Nor can it balance bill these patients. NRS 439B.745. When Defendants allegedly underpaid Saint Mary's, this did not cause the patients to pay anything more than if Defendants had paid Saint Mary's asking price. When Defendants allegedly denied Saint Mary's bills due to timeliness or other reasons, this also did not cause the insureds to pay anything

additional. These alleged disputes were based on Defendant's policies and procedures that govern the submission and documentation of claims. It is for this reason, that Saint Mary's cannot bring these claims against Defendants as the insureds fully received the benefit of the bargain of their insurance contracts. They received medical care and the claims were submitted for resolution between the provider and the insurer without further financial consequence to the insured. In fact, the exemplar plan document establishes that there are plans where the insured is explicitly told that "[g]enerally, Hometown Health pays a lower, Out-of-Network benefit level, or does not pay a benefit at all, for services provided by an Out-of-Network Provider, unless the services are rendered as part of an Emergency room visit, an Urgent Care Center visit received Out-of-Area . . . " See Declaration of Jamie L. Winter, ¶ 4; see also Exhibit 1, attached thereto (Excerpts of "Hometown Health Plan, Inc.'s Large Group Signature HMO Plan – 2020 Evidence of Coverage").

In *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 970–71 (N.D. Cal. 2019), the provider made a similar argument to Saint Mary's and claimed that the plan documents entitled the insured to "better coverage and higher reimbursement than he actually received." The court specifically found that the alleged underpayment to the provider was entirely consistent with the rates that were defined in that plan. *Id.* The insured continued to receive treatment and did not suffer an injury-in-fact. *Id.* (holding that "DaVita lacks the requisite Article III standing to bring an ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Count 3 is therefore DISMISSED with prejudice."). Similarly, in *Star Dialysis, LLC v. WinCo Foods Emp. Benefit Plan*, 401 F. Supp. 3d 1113, 1138 (D. Idaho 2019), the provider "alleged only that it has suffered injury as a result of WinCo's (or EthiCare's) failure to pay for the services provided at the rate DaVita contends it was owed." The provider failed to explain how the patients were harmed and "failed to allege any distinct injury . . . such as an obligation to pay part of DaVita's billed charges that exceeded the reimbursement amount determined by WinCo." *Id.* (holding that "[a]bsent facts that would establish an injury to the Plan beneficiaries, DaVita does not have derivative standing to assert the WinCo Plan beneficiaries' claims.")

1    The patients that are presumably at issue here, would be in the exact same situation

2    regardless of whether Saint Mary's succeeds or fails in this litigation. They also would have

3    been in the exact same situation at the time of assignment because they were not at risk of an

4    injury-in-fact then or at any subsequent point in time. This is a commercial disagreement

5    between an out-of-network provider and an insurer and it is hardly a unique disagreement in the

6    health care industry.

7        **B.    ERISA Preempts Saint Mary's State and Common Law Claims.**

8    ERISA preempts all state and common law claims that "relate[] to" an ERISA plan, i.e.,

9    claims that have "a connection with or reference to such a plan." *Providence Health Plan v.*

10   *McDowell*, 385 F.3d 1168, 1171-72 (9th Cir. 2004); 29 U.S.C. § 1144(a) (ERISA's preemption

11   provision.)  To determine whether a claim has a "reference to" an ERISA plan, courts focus on

12   "whether the claim is premised on the existence of an ERISA plan, and whether the existence of

13   the plan is essential to the claim's survival."  *McDowell*, 385 F.3d at 1172.  To determine

14   whether a claim has "a connection with" an ERISA plan, "courts in this circuit use a relationship

15   test" that emphasizes "the genuine impact that the action has on a relationship governed by

16   ERISA, such as the relationship between the plan and a participant." *Id.*; *see also Gen. Am. Life*

17   *Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("The key to distinguishing

18   between what ERISA preempts and what it does not lies . . . lies in recognizing that the statute

19   comprehensively regulates certain relationships: for instance, the relationship between plan and

20   plan member, between plan and employer, between employer and employee[,] . . . and between

21   plan and trustee."). ERISA's expansive preemptive provisions are interpreted broadly to provide

22   a uniform regulatory scheme. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also*

23   *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).

24   Here, Saint Mary's state-law claims relate to the same alleged underpayments or non-

25   payments that Saint Mary's contends Defendants were at fault for. Both common law and

26   statutory claims can be preempted by ERISA. *Neurological Surgery, P.C. v. Aetna Health Inc.*,

27   No. 219CV4817DRHARL, 2021 WL 26097, at *14 (E.D.N.Y. Jan. 4, 2021) (finding that the

28   New York "Prompt Payment Law cause of action is also preempted by ERISA."). The test for

McDONALD ⚖ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

10

preemption is not overly complicated. A state claim is completely preempted if "an individual, at some point in time, could have brought [the] claim under ERISA § [1132](a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions." *Marin Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 946 (9th Cir. 2009). Here, all of Plaintiff's claims are brought derivatively on behalf of the individual and therefore the first prong is readily satisfied. Additionally, the "independent legal duty" prong is satisfied where the insurer's obligations are dependent upon the individual's enrollment "in a qualifying benefits plan." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig*., 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012). Plaintiff's claims all must be construed in the context of the plan and plan documents and Defendants' obligations exist only in the context of providing benefits to the individuals under a health insurance plan. To the extent that Saint Mary's is attempting to assert both ERISA and state law claims for the same patients, this attempt should be denied.

### C.   Any Remaining Claims Must Be Dismissed under FRCP 12(b)(6).

#### 1.   Saint Mary's Fails to Plead Facts Sufficient to State an ERISA Claim.

Even if this Court finds that Saint Mary's has standing to sue under ERISA despite Hometown Health's valid and enforceable anti-assignment provisions, Saint Mary's ERISA claim must still be dismissed.  To recover under § 502(a)(1)(B), a plan participant or beneficiary must show that he and/or she is due benefits "under the terms of [the] plan."  This requires a plaintiff to not only allege the existence of an ERISA plan, but to also identify "the provisions of the plan that entitle it to benefits."   *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, No. 10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) (dismissing plaintiff's ERISA claim because it contained conclusory allegations without reference to the terms of the controlling plans).

In its Complaint, Saint Mary's summarily alleges that "HH has violated ERISA; specifically, HH has violated HH's duty to HH's insured by not paying claims which were covered, and by underpaying claims which were covered at a higher lever than HH paid."  (ECF No. 1, Compl. ¶ 40).   It further alleges that "HH breached the terms of those patients' health insurance plans by failing to pay Saint Mary's . . ." *Id.* at ¶ 47.  But nowhere in the Complaint

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

11

does Saint Mary's identify what provisions of the plans entitle the participants to additional benefits.  In fact, Saint Mary's admits that it cannot even "plead the proportions of each type of claim [e.g., ERISA v. non-ERISA] in the Claims List," let along plead facts specific to each plan. (ECF No. 1, Compl. ¶ 11). Plaintiff bears the burden of pleading specific facts that "rise above the speculative level," and failure to satisfy that burden justifies dismissal.  *Dovenmuehle Mortg.*, 2020 WL 1290787, at *2 (quoting *Twombly*, 550 U.S. at 555); *see also Steelman v. Prudential Ins. Co. of Am.*, No. 06-2746, 2007 WL 2009805, at *6 (E.D. Cal. July 6, 2007) (explaining that a complaint must sufficiently allege how defendant violated a plan term of ERISA to rise above speculative level).  Saint Mary's conclusory allegations are therefore insufficient to state an ERISA claim.

### 2.  *Saint Mary's Fails to State a Viable Claim for Breach of Contract*.

Saint Mary's claim for breach of contract is based only on the provision of emergency services. To the extent that these claims have arisen after January 1, 2020, they are expressly preempted by Nevada law. NRS 439B.754. To the extent these, apparently very stale, claims relate to the payments to Saint Mary's prior to January 1, 2020, then these claims still fail as Saint Mary's does not establish that the insured suffered any damages from the rate of compensation provided by Defendants to Saint Mary's.

In its claim for breach of contract, Saint Mary's again relies on the assignments of rights from plan participants.  It alleges that "[e]ach of the HH insureds for whom Saint Mary's provided emergency services validly assigned his or her health insurance plan benefits to Saint Mary's as part of their conditions of admission paperwork."  (ECF No. 1, Compl ¶ 51). Hometown Health's anti-assignment provision renders the alleged assignments void, and Saint Mary's is therefore precluded from bringing a claim for breach of contract on behalf the plan participants.

Even in the absence of a valid and enforceable anti-assignment provision, the assignment provision on which Saint Mary's relies does not expressly assign the right to sue for breach of contract. Saint Mary's alleges that it received "signed assignments of ***benefits*** from the insureds." (ECF No. 1, Compl. ¶ 16).  Nothing in the assignment provision quoted in Paragraph

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020)

16 of the Complaint specifically assigns to Saint Mary's the right to bring a claim for breach of contract under state law on the patients' behalf, as alleged in Count 2 of the Complaint. (*See* ECF No. 1, Compl. ¶ 51, alleging in its state-law claim for breach of contract that the patients "validly assigned his or her health insurance plan benefits to Saint Mary's . . . . Thus, Saint Mary's stands in the insured's shoes and has standing to assert all rights that HH owes to each insured under his or her health insurance plan").

Under Ninth Circuit precedent, an assignment of the right to receive payment of benefits under ERISA includes only the limited right to sue for non-payment under § 502(a)(1)(B). *See Spinedex*, 770 F.3d at 1292. Further, "[i]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (quoting Restatement (Second) of Contracts, § 324 (1981)). Saint Mary's broad assertion that the assignment provision assigned to it the right to bring all its state law and common law claims, without any allegation that the parties intended for such a broad and far-reaching assignment, must therefore be rejected.

### 3. *Saint Mary's Fails to State a Viable Claim for Contract Implied-in-Law.*

Saint Mary's allegations regarding an implied-in-fact contract are self-defeating. Saint Mary's alleges that Defendants "demonstrated its acknowledgement of a duty to pay for the majority of the services by paying or causing payment of something on them." (ECF No. 1, Compl. ¶ 58). Contrary to Saint Mary's interpretation, this course of conduct demonstrates that Defendants *never* agreed to pay the rates requested by Saint Mary's by *never* paying the rates requested by Saint Mary's. To claim that there was a course of conduct – which is the basis of this lawsuit – that created a contract on different terms whereby Defendants agreed to Saint Mary's rates is simply preposterous. *Emergency Grp. of Arizona Pro. Corp. v. United Healthcare Inc.*, 448 F. Supp. 3d 1077, 1085 (D. Ariz. 2020), *reversed on other grounds* (noting that an implied-in-fact contract was a stretch as "the parties here were unable to reach agreement on a provider agreement, which is why the Plaintiffs are out-of-network providers").

13

### 4. *Saint Mary's Did Not Confer a Benefit on Hometown Health, so Saint Mary's Unjust Enrichment/Quantum Meruit Claim Fails as a Matter of Law.*

A plaintiff seeking quantum meruit under an unjust enrichment theory must allege that it conferred a benefit on the defendant. *Topaz Mut. Co., Inc. v. Marsh*, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (listing the essential elements of unjust enrichment); *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012) (explaining that "a pleading of quantum meruit for unjust enrichment does not discharge the plaintiffs obligation to demonstrate that the defendant received a benefit from services provided").   Absent an allegation or evidence that plaintiff bestowed a benefit or "ascertainable advantage" on defendant, plaintiff cannot recover quantum meruit under an unjust enrichment theory. *Certified Fire*, 128 Nev. at 383, 283 P.3d at 258; *see e.g.*, *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, Case No. 2:10–cv–00661–GMN–RJJ, 750 F. Supp. 2d 1180, 1197 (D. Nev. 2010) (finding that plaintiff failed to allege that the defendant unjustly retained any benefit that plaintiff bestowed upon them and therefore dismissing plaintiff's unjust enrichment claim); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, Case No. 214–cv–01975–KJD–NJK, 2019 WL 3936387, at *2 (D. Nev. Aug. 19, 2019) (same).

Saint Mary's alleges that "Hometown Health received the benefit of having its healthcare obligations to its plan members discharged and its members received the benefits of the medical care provided to them by Saint Mary's." (ECF No.1, Compl. ¶ 64).  But Hometown Health, as the insurer, does not have an obligation to provide healthcare services under its plans, so the medical services provided by Saint Mary's upon patients do not confer a benefit on Hometown Health.  Any benefit conferred was on the patients—not Hometown Health.  *See Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) (explaining that "[t]he insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.").  Saint Mary's admits as much when it concedes that "Saint Mary's rendered valuable emergency services *to HH's members*" and that Hometown Health's "*members* received the benefit of the medical care provided to them by Saint Mary's." *Id.* at ¶¶ 63, 64

14

(emphasis added).  Hometown Health has not received a benefit from Saint Mary's, and therefore Saint Mary's has not—and cannot—plead the essential elements of its quantum meruit/unjust enrichment claim.[4]

Further, Hometown Health did not directly request that Saint Mary's perform the medical services—the patients requested the services.  In this context, a "[p]laintiff cannot recover under a theory of unjust enrichment or quantum meruit if the services the plaintiff provided were done at the behest of someone other than the defendant." *See Pekler v. Health Ins. Plan of Greater N.Y.*, 67 A.D.3d 758, 760 (N.Y.S.2d 2009) ("As the complaint alleges that medical services were performed by the plaintiff doctors at the behest of their patients, no claim in quantum meruit can be asserted against the defendants.").  Saint Mary's fails to allege that Hometown Health, rather than the patients, requested the medical services, and therefore further fails to sufficiently plead its unjust enrichment/quantum meruit claim.

Because Saint Mary's failed to adequately allege that it conferred a benefit on Hometown Health and further failed to allege that Hometown Health requested the medical services, Saint Mary's has failed to state a viable quantum meruit/unjust enrichment claim, thereby warranting dismissal.  *U.S. Bank Nat'l Ass'n v. Saticoy Bay LLC*, No. 216–cv–01346–JCM–CWH, 2017 WL 277494, at *4 (D. Nev. Jan. 19, 2017) (dismissing plaintiff's unjust enrichment claim because the "alleged benefits were not benefits plaintiff conferred on defendant"); *Carrington Mortg. Servs., LLC v. SFR Invs. Pool 1, LLC*, No. 215–cv–1377–JCM–NJK, 2017 WL 537192, at *6 (D. Nev. Feb. 8, 2017) (dismissing plaintiff's unjust enrichment claim where plaintiff's complaint did not sufficiently allege that *plaintiff* conferred a benefit on *defendant* and merely provided "conclusory allegations, without sufficient facts in support

---

[4] The overwhelming authority supports this conclusion.  *E.g.*, *MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17–cv–01909 (KAD), 2019 WL 2015949, at *10 (D. Conn. May 7, 2019) (listing cases where "courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds."); *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16–cv–00266–BSM, 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018) ("[A] number of courts have found that medical providers cannot bring unjust enrichment claims against insurers because patient-subscribers, and not insurers, are the ones receiving benefits from the provider's services.").

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

thereof, that the HOA benefited from the foreclosure sale and CMS's property-related payments").

### 5. Claim - Nevada Emergency Care Statutes

Saint Mary's alleges that Defendants had a duty to "provide such coverage of emergency care to out-of-network providers at the usual and customary rate" and violated NRS 439B.748 by not paying this rate to Saint Mary's. (ECF No. 1, Compl. ¶ 72). Saint Mary's failed to accurately restate the legal obligation created by NRS 439B.748(2), which actually provides that:

> If an out-of-network emergency facility did not have a provider contract as an in-network emergency facility within the 24 months immediately preceding the date on which the medically necessary emergency services were rendered to a covered person, the third party that provides coverage to the covered person shall pay to the out-of-network emergency facility **an amount that the third party has determined to be fair and reasonable as payment for the medically necessary emergency services**, except for any copayment, coinsurance or deductible that the coverage requires the covered person to pay for the services when provided by an in-network emergency facility.

Any obligation for Defendants was not to pay the "usual and customary rate" but to pay an amount that Defendants determined "to be fair and reasonable." NRS 439B.748(2). Saint Mary's cannot state a claim based on the accurate restatement of the statute. Furthermore, as this statute only became effective on January 1, 2020, it is beyond dispute that Saint Mary's claims are preempted by the statutory arbitration process in NRS 439B.754.

### 6. Claim – Violation of Nevada Prompt Payment Statutes.

Finally, Saint Mary's alleges that Hometown Health violated NRS 683A.0879, Nevada's prompt-pay statute for health insurance coverage. (ECF No. 1, Compl. ¶¶ 75-78). Under NRS 679B.120(3), which is contained within NRS Title 57, the Nevada Insurance Commissioner has express authority to "[e]nforce the provisions of [the Nevada Insurance] Code." And under NRS 686A.015(1), which is also contained within NRS Title 57, the Insurance Commissioner has "exclusive jurisdiction in regulating the subject of trade practices in the business of insurance in this state." The Nevada Supreme Court has interpreted these two provisions in Title 57 to preclude a private right of action under Nevada's prompt-pay statute for casualty insurance.

16

*Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 573, 170 P.3d 989, 995 (2007) ("Given the [Nevada Department of Insurance's] exclusive original jurisdiction over this matter, we conclude that no private right of action exists under NRS 690B.012."); *see also Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1255 (D. Nev. 2016) (citing *Thorpe* and finding that "[t]he Nevada Supreme Court has clearly held that there is no private right of action in the district court under the statute" (internal quotation marks omitted)). NRS 683A.0879 is similarly contained within Title 57, thereby precluding a private right of action under Nevada's prompt-pay statute.

Even if this Court finds that Saint Mary's can sue under Nevada's prompt-pay statute, despite the controlling caselaw and Saint Mary's failure to sufficiently allege exhaustion of remedies (see below), Saint Mary's conclusory allegations are insufficient to state a viable claim for relief. Saint Mary's generally alleges that "HH has taken far longer than 30 days to adjudicate and pay Saint Mary's clean claims, even when it underpaid those claims." (ECF No. 1, Compl. ¶ 77). Saint Mary's does not allege any specific facts about the allegedly late payment of the claims, like which of the 690 claims were allegedly late, how long the alleged delay was, whether Hometown Health requested additional information, or whether and to what extent Saint Mary's appealed the decisions. Instead, Saint Mary's claim is merely a "formulaic recitation of the elements of a cause of action," void any specific allegations that could reasonably put Hometown Health on notice of the allegations. *See Dovenmuehle Mortg.*, 2020 WL 1290787, at *5-6.

**D. Saint Mary's Failed to Properly Allege Exhaustion of Administrative Remedies.**

Controlling caselaw in this Circuit requires Saint Mary's to exhaust the administrative remedies provided by the plans before seeking this court's review. *See, e.g.*, *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (concluding that as a matter of sound policy, federal courts should exercise their authority to enforce the exhaustion of remedies requirement in suits under ERISA); *Wojciechowski v. Charles River Lab'ys, Inc.*, No. 308-cv-00250-BES-RAM, 2009 WL 10708972, at *5 (D. Nev. Jan. 23, 2009) ("Failure to exhaust the plan's review process precludes court actions for benefits due under ERISA."). Defendants' plan documents contain clear

requirements for administrative appeals. *See* Declaration of Jamie L. Winter, ¶ 4; *see also* Exhibit 1, attached thereto (Excerpts of "Hometown Health Plan, Inc.'s Large Group Signature HMO Plan – 2020 Evidence of Coverage").

Acknowledging this, Saint Mary's summarily alleges that it "has exhausted all remedies required under applicable law prior to this litigation, or was excused from so doing." (ECF No. 1, ¶ 42). But its conclusory allegation does not suffice to plead exhaustion. *See Twombly*, 550 U.S. at 555; *RMP Enterprises LLC v. Connecticut Gen. Life Ins. Co.*, No. 9:18-CV-80171, 2018 WL 2973389, at *3 (S.D. Fla. June 13, 2018) ("The Court agrees with Defendants that Plaintiffs have not met their burden to allege that they either exhausted administrative remedies or that the administrative remedies would be futile. As a threshold issue, the Court cannot discern from the Complaint exactly what claims Defendants denied or what steps Plaintiffs took to appeal those claims."); *De Vito v. Local 553 Pension Fund*, 02-cc-4686, 2005 WL 167590, at *7 (S.D.N.Y. Jan. 26, 2005) ("Plaintiff's complaint alleges that he has exhausted his administrative remedies. This conclusory allegation, however, does not suffice."); *Med. Alliances, LLC v. Am. Med. Sec.*, 144 F. Supp. 2d 979, 982-83 (N.D. Ill. 2001) (holding that plaintiff failed to sufficiently plead exhaustion where complaint alleged that plaintiff made numerous demands but contained no allegation regarding administrative appeals or procedures nor any allegation that plaintiff pursued all avenues of administrative relief).

Saint Mary's attempts to avoid its requirement to plead specific facts related to exhaustion by alleges that it was excused from exhausting its administrative remedies because "any such appeals have proved to be futile in previous dealings with HH." (ECF No. 1, ¶ 19). In other words, it urges this Court to apply the futility exception to the general rule that a plaintiff bringing an ERISA claim in federal court must exhaust administrative remedies under the relevant benefit plan. *See Amato*, 618 F.2d at 568; *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995) (recognizing the futility exception). The same administrative requirements apply to claims based on the payment claims by Saint Mary's.

But "[t]he futility exception is narrow—the plan participant must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result

in a different decision." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1179 (C.D. Cal. 2015) (quoting *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009)).  Saint Mary's does not show or allege that it is *certain* that its claims will be denied.  On the contrary, Saint Mary's does exactly what federal courts have expressly rejected—it alleges, with no specificity or justification, that it doubts the success of any appeal based solely on past alleged conduct.  This allegation is conclusory, and the Ninth Circuit has squarely rejected conclusory futility arguments in the context of administrative exhaustion.  *See Diaz*, 50 F.3d at 1485 (holding that "bare assertions of futility are insufficient to bring a claim within the futility exception"); *Grenell v. UPS Health & Welfare Package*, 390 F. Supp. 2d 932, 935 (C.D. Cal. 2005) (granting defendants' motion to dismiss because plaintiff "completely fail[ed] to explain *why* an appeal of the claim denial would have been futile").  Saint Mary's conclusory allegation that exhaustion would be futile does not show *why* administrative review would have been a wasted effort, and therefore does not excuse Saint Mary's from its obligation to exhaust the administrative remedies under the plans.

**E.  In the Alternative, Saint Mary's Should Be Required to Make a More Definite Statement of its Claims.**

Saint Mary's attempts to avoid pleading its claims within the four corners of its Complaint.[5] Instead, Saint Mary's states that it "provided to HH a specific and comprehensive list and itemization of claims . . . through a link contained in a demand letter sent concurrently with this lawsuit. As such HH, by this complaint HH is fairly informed and noticed of the claims being asserted in this case." (ECF No. 1, Compl. ¶ 10.) This pleading practice should not be allowed as it improperly shifts allegations from the docket into the private inboxes of counsel. Are Defendants required to take the allegations in the demand letter as true? Are sanctions available if the demand letter does not meet the requirements of FRCP 11? If Saint Mary's wishes to defend its Complaint on the basis of the content and allegations in its demand letter,

---

[5] Defendants specifically reserve all right to assert additional arguments based on the refinement of Plaintiff's pleading and do not intend to waive any argument or defense at this point, given the vague and uncertain allegations presented by Plaintiff.

then these documents need to come into the public record. 5A Fed. Prac. & Proc. Civ. § 1327 (Wright & Miller 4th ed.) (Wright & Miller), *Exhibits as Part of the Pleadings* ("Mere reference to the existence of a document that has not been attached usually is not sufficient . . ."). Furthermore, the allegations need to be brought into court by Saint Mary's, who is attempting to rely on them, and not by Defendants.[6]

With respect to ERISA, Saint Mary's Complaint is specifically deficient. A pleading fails to state an ERISA claim when it does not adequately allege "the existence of valid assignments from their patients and have not adequately alleged how Defendants' payments violate specific terms of their patients' ERISA plans." *Emergency Physicians of St. Clare's, LLC v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 19-12112, 2020 WL 2079286, at *3 (D.N.J. Apr. 30, 2020). This is not a situation where Defendants are attempting to obtain discovery in the form of a more comprehensive pleading. Instead, Saint Mary's claims are truly unintelligible because it needs to actually specify the type of plan, the date range, the actual violation at issue, and a host of other critical details that would actually give rise to a claim. It is not enough to simply allege that Saint Mary's was paid less than it wanted and therefore there is an ERISA or state law violation. *Sanctuary Surgical Ctr., Inc. v. United Health Grp., Inc.*, 2013 WL 149356, at *1 (S.D. Fla. Jan. 14, 2013) (granting defendant's motion to dismiss because plaintiffs failed to identify a specific plan term that conferred the benefit in question in an action involving "at least 300 different health insurance plans governing 996 derivative ERISA benefit claims asserted on behalf of approximately 500 different patients"). It is also not sufficient to claim that all conditions precedent, such as administrative exhaustion, are satisfied with respect to each and every one of the 600 or more claims. This omnibus action does not sufficiently allege common links between the individuals and would seem to require 600 or more trials with different operative documents and claims. Fortunately, all of these claims are barred by the arguments herein.

---

[6] A defendant in litigation should certainly not be able to attach a demand letter to the Motion to Dismiss and claim that its contents should be construed as part of the operative pleading.

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

**F.  Uninvolved Hometown Health Entities Should Be Separately Dismissed.**

Saint Mary's named four defendants – Hometown Health Providers Insurance Company, Inc., Hometown Health Plan, Inc., Hometown Health Management Company, and Hometown Health, LLC – as these entities on "information and belief, all are involved in the issuance and administration of the plans at issue in this case." (ECF No. 1 ¶ 7). Saint Mary's approach to pleading was indiscriminate and not well-researched. Hometown Health, LLC is an unrelated entity and has already been dismissed. (ECF No. 31). Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc. are indeed health insurance companies licensed by the State of Nevada and so are at least potential targets for Saint Mary's unfounded claims.[7] The other remaining defendant, Hometown Health Management Company, should be dismissed separately and independently of the above arguments. It is an entity that is not actively or directly involved with the issuance or administration of health insurance plans. Declaration of Jamie L. Winter, ¶ 3. There is no plausible basis for Saint Mary's to continue suit against Hometown Health Management Company and therefore this entity should be separately dismissed.

//

//

//

//

//

//

//

//

//

//

//

---

[7] *See* Nevada Division of Insurance, Department of Business and Industry Company Lookup at http://di.nv.gov/ins/f?p=licensing:search.

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

1

## V.      CONCLUSION

2          For all of the foregoing reasons, Defendants respectfully request that the Court dismiss

3   Plaintiff's Complaint in its entirety, with prejudice.  In the alternative, if the Court does not

4   dismiss the action outright, at a minimum Plaintiff should be required to submit a more definite

5   statement pursuant to FRCP 12(e).

6          Dated:  July 19, 2021.

7                                                  McDONALD CARANO LLP

8                                                  /s/ *Adam Hosmer-Henner*

9                                                  Adam Hosmer-Henner, NV Bar No. 12779
10                                                 Chelsea Latino, Esq., NBSN 14227
                                                   Jane Susskind, Esq., NSBN 15099
11                                                 100 W. Liberty Street, Tenth Floor
                                                   Reno, NV 89501
12                                                  (775) 788-2000

13                                                 *Attorneys for Defendants Hometown Health*
                                                   *Providers Insurance Company, Inc., Hometown*
14                                                 *Health Plan, Inc., and Hometown Health*
                                                   *Management Company*

15

16

17

18

19

20

21

22

23

24

25

26

27

28