1   William E. Peterson, Bar No. 1528
    Janine C. Prupas, Bar No. 9156
2   SNELL & WILMER L.L.P.
    50 West Liberty Street, Suite 510
3   Reno, Nevada 89501
    Telephone: (775) 785-5440
4   FAX: (775) 785-5441
    wpeterson@swlaw.com
5   jprupas@swlaw.com

6   Jennifer R. Ecklund *admitted pro hac vice*
    Mackenzie S. Wallace *admitted pro hac vice*
7   John P. Atkins *admitted pro hac vice*
    THOMPSON COBURN LLP
8   *Admitted Pro Hac Vice*
    2100 Ross Ave., Suite 600
9   Dallas, TX 75201
    Telephone: (972) 629-7100
10  FAX: (972) 629-7171
    jecklund@thompsoncoburn.com
11  mwallace@thompsoncoburn.com
    jatkins@thompsoncoburn.com
12
    *Attorneys for Plaintiff*
13

14
                    UNITED STATES DISTRICT COURT
15
                         DISTRICT OF NEVADA
16

17  PRIME HEALTHCARE SERVICES – RENO,          Case No. 3:21-cv-226-MMD-CLB
    LLC D/B/A SAINT MARY'S REGIONAL
    MEDICAL CENTER,
18
19  PLAINTIFF,                                 **PLAINTIFF'S RESPONSE TO
                                               DEFENDANTS' MOTION TO DISMISS
    vs.                                        OR, IN THE ALTERNATIVE, FOR A
20                                             MORE DEFINITE STATEMENT;
                                               PLAINTIFF'S ALTERNATIVE MOTION
21  HH PROVIDERS INSURANCE COMPANY,            TO DEFER OR DENY SUMMARY
    INC., HH PLAN, INC., and HH                JUDGMENT UNDER FED. R. CIV. P.
22  MANAGEMENT COMPANY,                        56(D)**

23  DEFENDANTS.

24

25

26

27

28

4846-7035-1348

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

# I.    SUMMARY OF ARGUMENT

HH[1] seeks to have this Court conclude that either (1) Saint Mary's[2] should receive no payment for the emergency and critical care Saint Mary's provided to HH's members or that (2)  HH can pay Saint Mary's any amount it chooses. Though Saint Mary's already provided to HH's members emergency and other life-saving care, HH argues that Saint Mary's has *no legal recourse whatsoever* against HH for its dramatic underpayment or even outright denial of payment. HH has moved to dismiss all of Saint Mary's claims, but none of its arguments is supported by law. The Court should thus deny HH's Motion to Dismiss or, in the Alternative, for a More Definite Statement (the "Motion") in its entirety.

*Saint Mary's has standing to sue HH,* because (a) Saint Mary's assignments are sufficient, and HH waived its anti-assignment defense by issuing partial payment on Saint Mary's claims, (b) binding precedent supports that HH's failure to compensate Saint Mary's at the rate required by the relevant plan documents constitutes an injury-in-fact, (c) HH's argument premised on its alleged anti-assignment clauses fails because the evidence submitted in support is improper at the dismissal stage, and (d) even with such improper evidence, HH has failed to assert a basis for dismissal or judgment since it does not even claim that the anti-assignment clause at issue applies to the claims in this case (HH attaches one HMO policy in effect in 2020 as a basis for dismissing all of our claims even though the policy cannot apply to a single claim, let alone all of the claims).

*ERISA does not preempt Saint Mary's state and common law claims*, because the Emergency Care Statutes and the Nevada Prompt Pay Statutes directly affect risk pooling arrangements and are thus saved from preemption. Likewise, ERISA also does not completely preempt Saint Mary's Quantum Meruit claim because the Emergency Care Statutes provide an independent legal basis for that claim. Moreover, any determination on ERISA preemption is premature because HH has refused to provide information that would have allowed Saint Mary's to identify which of the 690 claims involve non-ERISA and fully-funded plans.

---

[1] Defendants Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc. will be referred to herein collectively as "HH."

[2] Plaintiff Prime Healthcare Services – Reno, LLC d/b/a Saint Mary's Regional medical Center will be referred to herein as "Saint Mary's."

4846-7035-1348

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

*Saint Mary's Complaint sufficiently pleaded each cause of action*. Saint Mary's Complaint incorporates the Claims List setting out all of the 690 claims HH failed to properly pay, and specifically alleges the basis for HH's liability to Saint Mary's. For example, for each of the 690 claims, if the underlying plan was an ERISA plan, then HH's failure to pay the benefit the plan required was a denial of assigned ERISA benefits, and if the plan was not an ERISA plan, then HH's failure to pay the required amounts under the plan was a breach of assigned contract rights; the Nevada Legislature intended that a healthcare provider not paid as the Emergency Care Statutes require should have the right to payment at the usual and customary rate; Saint Mary's is entitled to assert a claim for Quantum Meruit against HH because Saint Mary's conferred a direct benefit to HH; and the Nevada Insurance Code entitles the Hospital to recover prompt pay penalties.

*Saint Mary's was not required even to plead exhaustion of appeals*, because Saint Mary's right to reimbursement is not conditioned on compliance with any appeals process, and failure to exhaust administrative remedies is HH's affirmative defense and not Saint Mary's pleading burden.

## II.    STATEMENT OF FACTS

Saint Mary's, an award-winning acute care hospital, provides critical health care services to residents of Reno, Nevada and the surrounding area. Compl. ¶8. As a non-participating provider, Saint Mary's has no agreement with HH to accept any particular rates as payment-in-full for providing care to HH's members. Compl. ¶14. Saint Mary's still treats HH members, as it is ethically and legally required to, including by providing emergency and other care. Patients in need of emergency care often present to the nearest hospital, regardless of network status. Saint Mary's secures assignments of insurance benefits from all patients, which explicitly mention ERISA benefits. Compl. ¶16. Where no written agreement exists, the patients' health insurance plans, or the Nevada Insurance Code, specify the level of payment that HH is required to pay Saint Mary's for providing emergency services to its members. Thereunder, HH is obligated to pay Saint Mary's at the usual and customary rate for the services that it provides to HH's members.

Saint Mary's provided medically necessary services to patients insured under plans that were underwritten or administered by HH. Compl. ¶9.a. Thereafter, HH underpaid or improperly denied payment for 690 claims. Compl. ¶¶9.b, 11. When Saint Mary's attempted to obtain

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

information from HH regarding which of the claims were related to fully-funded or self-funded ERISA plans and which were not, HH refused to provide the information. Compl. ¶11. Although Saint Mary's does not know the proportions of each type of claim in the Claims List, Saint Mary's can demonstrate that HH denied any reimbursement whatsoever on 128 claims. Compl. ¶11. The remaining 562 claims were underpaid. *See* Compl. ¶11. At present, the total amounts due for claims for services that were denied and underpaid is $6,001,530.51. Compl. ¶15.

Saint Mary's has been assigned the right to direct payment by the members whose services HH contracted to cover, as well as to benefits flowing from the relevant plans. Compl. ¶17. Moreover, although it need not plead this, Saint Mary's exhausted all contractually required appeals procedures on behalf of the members, or was excused from doing so either due to a prior breach by HH or because appeals have proved futile in previous dealings with HH. Compl. ¶19. HH was given notice of the disputed claims when Saint Mary's provided HH with a comprehensive list and itemization of claims (the "Claims List"), including details, such as the dates of service and unique patient identifiers, through a link contained in a demand letter sent concurrently with the Complaint. Compl. ¶10. The Claims List is incorporated into the Complaint by reference. *Id.*

### III.    LEGAL STANDARD

A complaint needs to be only a "short and plain statement of the claim showing that the pleader is entitled to relief" to provide a defendant with fair notice of the claim and the grounds upon which it stands. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Rule 12(b)(6), the court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Park School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) "is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Trustees of Nev. Resort Ass'n Int'l All. of Theatrical Stage Emps. & Moving Picture Mach. Operators of U.S. & Canada Loc. 720 Pension Tr. v. Encore Prods., Inc.*, 742 F. Supp. 2d 1132, 1134 (D. Nev. 2010).

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

Moreover, "dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467 (9th Cir. 1991) ("dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment").

## IV.   ARGUMENT

**A.   Saint Mary's has standing to sue HH.**

In its Motion, HH asserts that Saint Mary's contract and ERISA causes of action are barred for lack of standing for some or all claims.  In support of its assertion, HH first argues that some of the policies forbid assignment (without identifying any claims to which this argument applies). Second, HH argues that the language in the pleaded assignment of benefits is inadequate to assign the right to sue, and third that no party suffered an injury-in-fact. These arguments all fail.

> **1.    The alleged anti-assignment clauses are ineffective in barring Saint Mary's claims.**
>
> a.    <u>HH has improperly submitted evidence, and even with its improper evidence, HH has failed to provide a basis for dismissal or judgment.</u>

HH argues that certain of its policies include anti-assignment provisions that prohibit the assignment of rights to Saint Mary's. First, Saint Mary's is not obligated to preemptively refute HH's affirmative defense of anti-assignment in its pleading. Second, HH improperly submits evidence outside of the pleadings, including an "evidence of coverage" (the "<u>EOC</u>") allegedly for one of its 2020 HMO plans, attempting to force Saint Mary's through a 12(b)(6) motion to take a position on an evidentiary question before discovery. But as HH knows, submission of such evidence is appropriate only if Saint Mary's complaint refers to and relies on the appended document, and no party questions its authenticity. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbriath v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Those conditions are not met. In this case, Saint Mary's did not plead the relevant EOC and does not rely on this EOC in its Complaint; rather, the EOC attached to HH's Motion is a 2020 EOC which Saint Mary's does not believe could apply any of the claims on the Claims List, since none of the claims have dates of services after December 31, 2019. Saint Mary's also does not

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

concede that this document is authentic—in fact, Saint Mary's specifically objects to its introduction without discovery to investigate its authenticity.[3] *Taymuree v. Nat'l Collegiate Student Loan Tr. 2007-2*, 16-CV-06138-YGR, 2017 WL 952962, at *2 (N.D. Cal. Mar. 13, 2017) ("Here, plaintiffs challenge the authenticity of the evidence presented by defendants…Accordingly, it would be improper for the Court to consider such evidence."). Saint Mary's asks that the EOC and the Winter Declaration be stricken and ignored by the Court in deciding this Motion.

Further, it is not Saint Mary's burden to plead the absence of anti-assignment clauses. Saint Mary's Complaint adequately pleads constitutional and "real party in interest" standing to pursue its contract and ERISA causes of action, by pleading that contract and ERISA benefits have been assigned to it by its patients, granting it derivative standing. Compl. ¶17. As a matter of law, such benefits are generally assignable. *Misic v. Bldg. Serv. Employees Health & Welfare Tr.*, 789 F.2d 1374, 1379 (9th Cir. 1986). This is sufficient to plead standing under 12(b)(6). *See In re WellPoint, Inc. v. Out-of-Network UCR Rates Litigation*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012) ("The Ninth Circuit has long recognized that assignments of benefits are sufficient to convey standing on an assignee to sue a plan directly"). The existence of contract language in the various plans that defeats the assignability of these claims is for HH to plead and prove, not for Saint Mary's to negate in its pleading. *See DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, 978 F.3d 326, 345-46 (6th Cir. 2020) (noting that questions of assignment do not go to Article III standing, but to "real party in interest" standing, which is an affirmative defense); *Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*, 3:11-CV-01471-M, 2017 WL 4507404, at *5 (N.D. Tex. June 26, 2017), *aff'd*, 919 F.3d 266 (5th Cir. 2019) (characterizing anti-assignment defense as an affirmative defense on which the health insurer bore the burden). Consequently, a 12(b)(6) motion is not a proper vehicle for this argument in this case. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (defense must appear on the face of the complaint to be proper for 12(b)(6) dismissal); *see also Clark v. EmCare, Inc.*, 2:16-CV-07503-ODW-JC, 2017 WL 1073342, at *2 (C.D. Cal. Mar. 21, 2017). ("A court cannot dismiss a complaint for failure to state sufficient facts going to an affirmative defense, because a plaintiff need not plead any facts relating to an

---

[3] *See* Saint Mary's Motion to Strike Evidence in Support of Defendant's Motion to Dismiss filed concurrently herewith.

4846-7035-1348

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

affirmative defense.")

    If HH is attempting to establish such a defense, its "evidence" is inadequate. Since Saint Mary's formally objects to the EOC, denies its authenticity, and denies any connection between the EOC and claims in this case until the necessary evidence to test HH's claims are disclosed in discovery, this Court must convert HH's Motion to Dismiss into a Motion for Summary Judgment in order to consider these materials. *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("When the district court looks outside the pleadings in evaluating a noticed Rule 12(b)(6) motion, the motion must be converted and treated as one for summary judgment under Rule 56.").

    The Motion could not be granted on a summary judgment basis either. The simplest reason is that HH doesn't meet the threshold of showing entitlement to judgment by the submitted evidence, because neither HH in its Motion, nor Ms. Winter in her declaration, claims that the attached EOC, or even other plans containing anti-assignment provisions, cover all (or even any specific) claims at issue in this litigation. Ms. Winter says only that HH plans "typically" contain such provisions. *See* Dkt. 34-1, Winter Dec., ¶4. "Typically" is not all. Ms. Winter also says nothing about whether this is "typically" true in 2020 (the date of this EOC) or was "typically" true in 2019 or 2018 or 2017 when many of the claims were submitted. HH claims that its "plans contain" such provisions, and cites to Ms. Winter's declaration regarding the same, but does not say they "all" do, and HH fails to identify even one claim that is subject to such a provision.[4] *See* Motion at 5-6. ***HH does not directly demonstrate that any of the claims at issue in this case are subject to an anti-assignment provision and does not identify which claims are; thus, the Court lacks information sufficient to dismiss even a single claim under this theory, even if this were a summary judgment motion and HH's evidence was uncontroverted.***[5] Although this alone would

---

[4] HH certainly could have done so. HH was provided with a list of all the claims at issue in this litigation on June 2, 2021. That list is incorporated into Saint Mary's Complaint by reference. Compl., Dkt. 1, ¶10.

[5] If the Court wishes to entertain HH's Motion as a summary judgment motion, then Saint Mary's alternatively moves this Court for relief under Rule 56(d), because it is presently without the discovery it would need to respond to HH's allegations regarding the typicality and breadth of anti-assignment provisions in its plan documents. *See* Fed. R. Civ. P. 56(d). While Saint Mary's has seen some HH plan documents, it is not a network provider and does not possess copies of HH's relevant

Snell & Wilmer
L.L.P.
LAW OFFICES
510 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

4846-7035-1348

1   be more than sufficient, HH's Motion on this ground should also be denied for the reasons given in

2   subsections b-d below.

3       b.      HH waived its anti-assignment defense.

4       HH waived the right to rely on the anti-assignment clauses by (under)paying Saint Mary's

5   on these claims. HH failed to assert or acknowledge the existence of anti-assignment clauses when

6   it underpaid any of the claims in this case; thus, it cannot assert the anti-assignment clause as a

7   defense to compelling it to pay the claim correctly now. Courts reviewing the denial of benefits

8   under ERISA are limited to the actual basis on which the administrator denied the claim, not its

9   post-hoc rationalizations. *Beverly Oaks Phys. Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*,

10  983 F.3d 435, 440 (9th Cir. 2020) (applying waiver to bar defendant from relying on the anti-

11  assignment provisions where it held such reasons in reserve); *see also Harlick v. Blue Shield of*

12  *Cal.*, 686 F.3d 699, 720 (9th Cir. 2012) (requiring plan administrators to provide specific reasons

13  for denial because "[a] contrary rule would allow claimants…to be 'sandbagged' by a rationale the

14  plan administrator adduces only after the suit has commenced."). In both cases, Blue Cross,

15  attempted to raise alternative defenses to the members' benefit claims that it had not used to deny

16  the members' claims. *See Beverly Oaks*, 983 F.3d at 440; *Harlick*, 686 F.3d at 720. In both cases,

17  the Ninth Circuit refused to recognize the alternative defenses and held that Blue Cross was limited

18  to the basis on which it had denied the claim. *Beverly Oaks*, 983 F.3d at 442; *Harlick*, 686 F.3d at

19  721. In this case, HH denied or underpaid Saint Mary's claims without asserting any anti-

20  assignment basis; it has therefore waived the right to deny payment to Saint Mary's based upon the

21

22  plans and has no means short of discovery to compel their disclosure. In this limited circumstance,

23  Saint Mary's therefore moves this Court to defer consideration of the Motion for sixty-three days

    after this Response is filed (August 2, 2021); to order HH to produce to Saint Mary's all plan

24  documents related to the claims listed on the Claims List within twenty-one days of August 2, 2021;

    to order the parties to schedule a deposition of Ms. Winter (or such other representative of HH or

25  Renown as can properly testify regarding provisions and authenticity of the relevant plan documents)

    within the next thirty-five days after August 2, 2021; and to permit HH to file a supplemental response

26  to this anti-assignment argument incorporating evidence located during this discovery within forty-

    nine days of August 2, 2021. Filed herewith is the Declaration of Mackenzie Wallace, who testifies

27  to the necessity of this discovery to analyze and answer the "non-assignment" argument to the extent

    that HH's improperly submitted evidence is to be considered. *See* Dec. of Mackenzie Wallace

28  ("Wallace Dec."), Dkt. 37-1, ¶¶2-8.

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

anti-assignment clause. *See Beverly Oaks*, 983 F.3d at 440; *Harlick*, 686 F.3d at 720.

      **c.**     <u>HH's anti-assignment clause violates Nevada law, which HH's EOC incorporates.</u>

Nevada law provides that individual health insurance plans must provide for the assignability of benefits. NRS 689A.135 ("A person insured under a policy of health insurance may assign his or her right to benefits to the provider of health care who provided the services covered by the policy."); *see also id.* at 689A.040 (mandating individual insurance policies contain "provisions specified in NRS 689A.050 to 689A.170, inclusive"). Nevada law also provides that HMO providers must pay facilities directly regardless of assignment of patient benefits. *See* NRS 695C.185. Although Saint Mary's does not agree that the exemplar EOC applies to any claims in this case, HH claims that the EOC is reflective of what their plans "typically" look like. The exemplar EOC provides for Nevada governing law and incorporates by reference "any provision that is required to be in this EOC by state or federal law . . . whether or not set forth in this EOC." *See* Dkt. 34-1, p. 18. If anything, therefore, HH's improperly submitted evidence at a minimum shows it is likely that many claims are not subject to anti-assignment provisions, since HH either incorporated Nevada law into its policies, or is violating Nevada law by failing to permit assignment.

      **d.**     <u>HH's anti-assignment clause does not prohibit assignment to Saint Mary's.</u>

HH's anti-assignment clause, to the extent it is an active term in any of the relevant policies, is ineffective against assignments of benefits to the provider of health benefits. The alleged anti-assignment language fails to make clear that it is intended to prevent assignments of benefits to health care providers, stating only that: "[y]ou may not assign this EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without Our prior written consent." *See* Dkt. 34-1, Winter Dec., ¶ 4 and Exhibit 1, Art. XVIII, §A. This provision is even less detailed than the provision considered and rejected by the Fifth Circuit in *Hermann Hospital*: "[n]o employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

attachment or garnishment proceedings against for the payment of any claims." *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574-75, (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (interpreting the generic anti-assignment to apply "only to unrelated, third-party assignees—other than the health care provider of assignment benefits—such as creditors"). Courts outside of the Fifth Circuit have found *Hermann* persuasive in construing similarly generic anti-assignment clauses as ineffective. *Fairview Hosp. v. Fortune*, 750 N.E.2d 1203, 1207 (Oh. App. 8th Dist. 2001) ("We read this in the same fashion as did the court in *Hermann*"); *Univ. of Tennessee William F. Bowld Hosp. v. Wal-Mart Stores, Inc.*, 951 F. Supp. 724, 730-32 (W.D. Tenn. 1996) (anti-assignment clause, read in light of *Hermann* and other authority, did not clearly invalidate assignment); *Sidlo v. Kaiser Permanente Ins. Co.*, No. 16-00073 ACK-KSC, 2016 WL 6821787, at *7-10 (D. Haw. Nov. 17, 2016) ("The Court is guided by the Fifth Circuit's reasoned approach to anti-assignment provisions and finds that the evidence here supports that approach…").

HH's nonspecific anti-assignment provision is to be contrasted with the provision in *Spinedex*, which HH cites in support of its argument: "You may not assign your Benefits under the Plan to a non-Network provider without our consent." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014). Of course, the provision in *Spinedex* prevented assignment to out-of-network providers: it specifically said that. *Id.* HH's provision is analogous to the provision in *Hermann*, so even if the inapplicable EOC HH attached was relevant to this case, it lacks the specificity to prohibit an assignment Saint Mary's.

### 2. Saint Mary's assignment to pay benefits is enough to confer a right to sue.

HH asserts that the assignments do not assign the members' rights to file this suit, specifically alleging that the "assignment is narrow and does not cover the claims asserted by Saint Mary's in this action." It is well established in the Ninth Circuit that a healthcare provider may obtain derivative standing to enforce a beneficiary's claim by virtue of a valid assignment. *See*, *e.g.*, *Spinedex*, 770 F.3d at 1289. It is similarly well-established that an assignment of benefits is enough to confer a right to sue to recover those benefits; after all, the right to receive benefits would be hollow without such enforcement capabilities. *See id.* In *Spinedex*, the Ninth Circuit found that

an assignment of payment benefits failed to assign any *fiduciary duty* claims while also confirming that language far less detailed than that in HH's assignment language did assign the right to sue for payment of benefits. *Id.* at 1292 (assignment of "right to seek payment of claims" which specifically assigned "BENEFITS UNDER THIS POLICY" successfully assigned "…***rights to bring suit for payment of benefits***" while failing to assign fiduciary duty claims). The language in *Spinedex* also did not specifically mention the right to sue, yet the court found it had created such a right *Id.* HH's argument is thus foreclosed by its own authority. Because the language in Saint Mary's assignments assigning the right to receive payment is enough to support a right to sue for payment, HH's attempt to bar Saint Mary's claims for lack of assignment fails.

### 3. Undercompensation of Saint Mary's is an injury for the purposes of standing.

HH argues that the members have not been injured even if the claims were underpaid under the terms of the plan, because "this did not cause the patients to pay anything more" and because Saint Mary's is not collecting from these patients and that the patients therefore have no injuries to assign. *See* Motion at 8. This argument is foreclosed by *Spinedex*, in which the Ninth Circuit reversed a district court that had erred in accepting HH's theory. *Spinedex*, 770 F.3d at 1288-91. As the court explained, the assignment was of the patient's right to benefits, and as assignee, the provider was injured by deprivation of its right to those benefits when the insurer failed to pay. *Id.* at 1291 ("As assignee, Spinedex took from its assignors what they had *at the time of* the assignment."). Consequently, "the patients' injury in fact after the assignment is irrelevant." *Id.*[6]

Like the provider in *Spinedex*, Saint Mary's was assigned the patients' rights to payment (including direct payment) and was provided "all public and private insurance benefits…including but not limited to…ERISA benefits/coverage…" Compl. ¶16. Saint Mary's, as assignee, was injured by a denial of its assigned rights when HH underpaid it. Saint Mary's standing to bring contract and ERISA claims is derivative because its rights are assigned, but it possessed the relevant rights when the injury occurred, so the alleged lack of a post-assignment injury is irrelevant. HH's

---

[6] The Ninth Circuit is not alone here. *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) (collecting cases from the Fifth, Ninth, and Eleventh Circuits holding that the denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services).

4846-7035-1348

Snell & Wilmer

L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

1

district court citations to the contrary do not overturn this binding Ninth Circuit precedent.[7]

2

Having failed to establish Saint Mary's lack of standing for various reasons outlined above,

3

HH then argues by implication that its own Winter Declaration and the attached EOC show that it

4

complied with the plans. *See* Motion at 9. But HH has to rely on mere implication, because it

5

refuses to say that this exemplar EOC applies to any of the claims at issue in this case (indeed,

6

because it is a 2020 plan, it *cannot* apply to the claims on the Claims List). The most HH says is

7

that the "exemplar plan document establishes that ***there are plans where the insured is told***…[that

8

HH will pay little or nothing to out-of-network providers]." Motion at 9 (emphasis added). As

9

argued in Section IV.A.1.a., *supra*, Saint Mary's does not concede that the EOC applies to any

10

claims in this case, and Ms. Winter's testimony is not permissible at the 12(b)(6) stage. In any case,

11

HH cannot refute the allegations of the Complaint, which must be taken as true, that relevant plans

12

require coverage of out-of-network services at "usual and customary," "reasonable and customary,"

13

or another market rate. Nor can it refute Saint Mary's allegations based on its long experience that

14

the claims were underpaid. *See* Compl. ¶23. Saint Mary's has plausibly alleged an injury in fact on

15

its contract and ERISA claims.

**B.      ERISA does not preempt Saint Mary's claims.**

16

HH also moves to dismiss Saint Mary's state and common law claims (Counts 2-6) based on

17

ERISA preemption, but provides little to no background, explanation, or supporting law on

18

preemption under ERISA. There are two forms of ERISA preemption: complete preemption under

19

29 U.S.C. §1132, and conflict preemption under 29 U.S.C. §1144(a). *Aetna Health Inc. v. Davila*,

20

542 U.S. 200, 208-209 (2004). Complete preemption under ERISA is not a basis for dismissal of a

21

cause of action; rather, it is a basis for federal jurisdiction as it renders facially state-law based

22

23

---

[7] HH miscited *DaVita* on this question. The Court in *DaVita* found that the patient was not injured because the plan provisions were followed, not because the insured suffered no post-assignment injury. *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 970-71 (N.D. Cal. 2019), *aff'd*, 981 F.3d 664 (9th Cir. 2020) ("***Because*** the payment made to DaVita matched what was described in Amy's Plan, DaVita cannot claim it received an adverse benefit determination within the meaning of ERISA. ***Because*** Patient 1 has not suffered an injury-in-fact, DaVita lacks the requisite Article III standing to bring an ERISA claim for benefits.") (emphasis added). Alternatively, if HH is citing *DaVita* for the proposition that there is generally no contract or ERISA injury to assign where the plan was complied with, the parties disagree about whether the plans were followed in this case (which is a fact issue not proper for dismissal).

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

4846-7035-1348

claims removable to federal court. *Davila*, 542 U.S. at 209-210; *Marin v. Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (finding complete preemption under § 502(a) "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances…") (citations omitted). The analytical framework for complete ERISA preemption was explained in *Davila*, where the Court devised a two-prong test to determine whether an asserted state-law cause of action comes within the scope of ERISA: (1) "an individual at some point in time, could have brought [the] claim under ERISA section 502(a)(1)(B)"; and (2) "where there is no other independent legal duty that is implicated by a defendant's action." 542 U.S. at 210.

Conflict preemption under Section 1144(a) preempts all state laws that "relate to any employee benefit plan" subject to ERISA. 29 U.S.C. §1144(a). Section 1144 contains three provisions relating to preemption: (1) Subsection (a) preempts all state laws that "relate to any employee benefit plan" subject to ERISA; (2) Subsection (b)(2)(A), the "saving clause," exempts from preemption "any law of any State which regulates insurance, banking, or securities"; and (3) Subsection (b)(2)(B), the "deemer clause," exempts from the saving clause laws that deem an ERISA plan "to be an insurance company or other insurer…or to be engaged in the business of insurance…for purposes of any law of any State purporting to regulate insurance companies…"

A state law "relates to" a covered employee benefit plan if it has a "reference to" or "connection with" it. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr. N.A. Inc.,* 519 U.S. 316, 324 (1997). As to the first prong, a state law has a "reference to" an employee benefits plan when it "acts immediately and exclusively upon ERISA plans…or where the existence of ERISA plans is essential to the law's operation." *Id. at* 325. As to the second prong, a state law has a "forbidden connection" with ERISA plans if it falls outside the scope of state laws that Congress understood would survive ERISA or if its effect is to bind ERISA claims. *Associated Builders and Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 984 (9th Cir. 2004).

If a cause of action relates to an employee benefit plan under this first prong, it is *saved* from ERISA preemption doctrine if the law "regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has created a two-part test that provides that a state law is

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

within this saving clause if it is (1) "specifically directed toward entities engaged in insurance," and (2) if it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003). The saving clause is not applicable to self-funded ERISA Plans.

ERISA preemption is an affirmative defense; thus, HH bears the burden to prove that ERISA preemption bars Saint Mary's claims. *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n.4 (9th Cir. 1988) ("the burden is on the defendant to prove the facts necessary to establish" a defense of ERISA preemption). Despite being the only party with the information necessary to make this determination (due to their exclusive access to the plans), HH has failed to identify even one of the 690 claims at issue as preempted—its affirmative defense, on which Saint Mary's bears no pleading burden, therefore fails *ab initio*. It also fails for the following additional reasons:

**1.  ERISA does not preempt the Emergency Care Statutes (Count 5) or Nevada Prompt Pay Statute (Count 6) because they affect the risk pooling arrangement and are saved from preemption under Section 1144(b)(2)(A).**

The Emergency Care Statutes and Nevada Prompt Pay statutes are not preempted by ERISA because the Saving Clause saves them from preemption. Both statutes are (1) "specifically directed toward entities engaged in insurance," and (2) "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 341-42.

First, the Emergency Care Statutes point directly at insurers. HH is an "Insurer" under the Nevada Insurance Code. NRS 679A.100. In its role as an Insurer, HH is required to "provide coverage for medically necessary emergency services," with "medically necessary emergency services" being defined as services provided "to an *insured* by a provider of health care…NRS 695G.170. Nevada's Prompt Pay Statute is also directed at insurers, since it regulates when administrators are required to pay claims. *See Am.'s Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1361 (N.D. Ga. 2012) (finding Georgia's Prompt Pay Statute "directed toward entities engaged in insurance" because it applies to health plans and insurance policies).

Second, the Emergency Care Statutes and the Nevada Prompt Pay Statutes "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 341-42. A state statute substantially affects the risk pooling arrangement between the insurer and the

Snell & Wilmer

L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

insured when it impacts the terms by which insurance providers must pay plan members. *Rudel v. Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262, 1274 (9th Cir. 2019) (finding the state statutes to substantially affect risk pooling where they caused insurers to face more risk than they would without the statutes), *cert. denied*, *Hawaii Mgmt. All. Ass'n v. Rudel*, 140 S. Ct. 1114 (2020); *Standard Ins. Co. v. Morrison*, 584 F.3d 837*, 845 (9th Cir. 2009) (where the state statute would lead to a greater number of claims being paid, more losses would be covered, thus affecting risk pooling). In *Miller*, the state passed an "Any Willing Provider" ("AWP") statute, which forbade insurance companies from discriminating against any doctor who was willing to meet the terms and conditions of the health plan. 538 U.S. at 331-332. This affected the risk pool because: "[b]y expanding the number of providers from whom an insured may receive health services, AWP laws alter the scope of permissible bargains between insurers and insureds." *Id.* at 338–39.

Here, 695G.170 of the Nevada Insurance Code requires coverage of medically necessary emergency services regardless of hospital. NIC 695G.170. This expands the number of providers from whom an insured may receive covered health services. The Emergency Care Statutes therefore alter the scope of the permissible bargains between insurers and insureds. Moreover, a state law that impacts the timing of when an insurance company must pay for claims can have a substantial effect of the risk pooling arrangement. *See Hudgens*, 915 F. Supp. 2d at 1361 (finding Georgia's Prompt Pay Statute substantially affects the risk pooling arrangement because the Act imposes a timeliness requirement onto the agreement between the insurer and the insured), *aff'd* 742 F.3d 1319, 1333 (11th Cir. 2014) (acknowledging "the similarities between Georgia's prompt-pay requirements, mandated-benefits laws, notice-prejudice rules, and independent review laws in that they all affect the rights and duties of the parties under the terms of a policy"). Accordingly, there is at least a fact issue regarding whether Nevada's Prompt Pay Statute alters the scope of the permissible bargains between the insurers and insureds. *See Munda*, 267 P.3d at 773. Because the saving clause saves the Emergency Care Statutes from ERISA conflict preemption, HH's Motion regarding preemption on Count 5 should be denied.[8]

---

[8] There is certainly at least a *fact issue* regarding whether these statutes are saved from preemption. *See Munda*, 267 P.3d at 773 (finding preemption analysis a "fact-intensive inquiry because ERISA

### 2. ERISA does not preempt Saint Mary's Quantum Meruit (Count 4) claim because the Emergency Care Statutes provide an independent legal basis for the claim.

Saint Mary's asserts its Quantum Meruit claim *independently* (not as assignee under ERISA), and its independent rights under the Emergency Care Statutes as a provider, or as a service provider under the Court's equitable powers, do not disappear just because it also has the patients' rights as assignee. *See Meadows v. Emp'rs Health Ins.*, 47 F.3d 1006, 1008-09 (9th Cir. 1995) (claims of a third party who sues independently not preempted under ERISA). Thus, Saint Mary's Quantum Meruit claim does not "relate to" ERISA benefits and is not preempted.

### C. All of Saint Mary's claims are adequately pleaded.

HH next argues that Saint Mary's has not adequately pleaded the elements of specific claims. All these arguments fail because Saint Mary's Complaint, which incorporates its Claims List (which HH has in its possession), sets out all the claims with specificity. While Saint Mary's could provide a separate list again, attached to an amended complaint and under seal to protect patient information, the substance of HH's argument lacks any basis—HH knows exactly which claims are at issue and knew this at the time of the filing of this Motion.

### 1. Saint Mary's adequately pleaded its ERISA claims.

In arguing that Saint Mary's has failed to adequately plead an ERISA violation, HH first claims that "nowhere in the Complaint does Saint Mary's identify what provisions of the plan entitle the participants to additional benefits." But paragraph 23 of Saint Mary's complaint states on information and belief that: "the insurance plans at issue in this matter require coverage of out-of-network services at the 'usual and customary' or 'reasonable and customary' or 'market' rate." HH may disagree that all of their plans require this or an equivalent reimbursement rate, but they have only attached an HMO plan that appears inapplicable to any claims at issue in this case to their Motion (which should not be considered at the Motion to Dismiss stage in any case). Taking all of

---

preemption is dependent on the actual operation of a state statute"). To the extent that HH argues that the "deemer clause" in 29 U.S.C. §1144(b)(2)(B) exempts from the Savings Clause any self-funded ERISA plans, Saint Mary's pleaded that its monetary damages exceed what any ERISA plan would have covered due to HH's administration. Compl. ¶73. For such self-funded ERISA claims, Saint Mary's seeks to recover for services based on HH's authorization of the services, not based on the members' insurance coverage; thus, such claims by Saint Mary's do not "relate to" any ERISA plan such that they would be preempted by ERISA and the deemer clause would even apply.

4846-7035-1348

Snell & Wilmer

L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

Saint Mary's allegations as true, as is proper at the 12(b)(6) stage, *Symington*, 51 F.3d at 1484, the Court must assume that Saint Mary's is correct that the insurance plans at issue, whether ERISA or non-ERISA, required reimbursement at a market rate for out-of-network services rendered by providers like Saint Mary's. Throughout the Complaint, Saint Mary's alleges that the claims were underpaid under the contracts' own provisions. *See* Compl. ¶¶15, 22-23, 25, 33-37, etc. And Saint Mary's did not just assert that what it was paid was below the market rate—it alleged that the average rate for the claims on the list, even excluding unpaid claims, was around 20%, which it further alleges, based on its long-term experience as a healthcare provider, is far below what the market requires for out-of-network services, emergency or otherwise. *See* Compl. ¶23.

It is true that HH has exclusive control over the plan documents at issue in this case. This makes it difficult for Saint Mary's, on its own, to determine for each of the 690 claims, which type of plan applies to each claim. But this is not a basis for dismissal:  Saint Mary's pleaded ***for each claim, if the underlying plan was an ERISA plan, then HH's failure to pay the benefit the plan requires was a denial of assigned ERISA benefits; if the plan was not an ERISA plan, then HH's failure to pay the required amounts under the plan was a breach of assigned contract rights.*** Saint Mary's has alleged sufficient facts that HH would be liable, *regardless* of the type of plan, rendering the question of how many of each type of claim there are in the Claims List irrelevant at this stage.

### 2. Saint Mary's adequately pleaded its contract claims.

HH further argues that Saint Mary's has not adequately alleged assignment of breach of contract claims, because, it claims, the exemplar assignment listed in the Complaint refers only to benefits. As argued in Section IV.A.2., *supra*, in Saint Mary's assignments, the patient explicitly assigns the right to receive payment of benefits, which is enough to create standing because it necessarily incorporates the right to seek payment. HH even acknowledges that assignments of benefits are sufficient to permit a lawsuit, but then claims that the assignment, because it only assigns "benefits payable to or on behalf of the patient[,]" *including* "ERISA benefits/coverage" is somehow not broad enough to encompass the patients' ERISA payment benefits and claims to bring the same. *See* Motion at 8:3-10. But HH does not explain why this would be the case and cites no

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

Snell & Wilmer

L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

1  law for the proposition. Its own authority, *Spinedex*, contradicts it. For each of the 690 claims, at

2  least one theory of liability would apply, rendering dismissal improper.

3       **3.**      **Saint Mary's stated a viable claim for contract implied-in-law.**

4       HH fails to adequately explain its argument that Saint Mary's contract implied-in-law claim

5  should be dismissed and cites to a case that was ultimately about *preemption* rather than the

6  inability to support an implied-in-law contract claim. *See Emerg. Group of Arizona Prof'l Corp. v.*

7  *United Healthcare Inc.*, 448 F. Supp. 3d 1077, 1085-86 (D. Ariz. 2020), *rev'd and remanded*, 838

8  Fed. Appx. 299 (9th Cir. 2021) (deciding that implied-in-law contract theory did not support state

9  law remand and was subject to dismissal under ERISA preemption). That same case was *reversed*

10  by the Ninth Circuit for remand to state court because the Ninth Circuit found that the implied-in-

11  law contract theory *was* a separate, valid, state-law claim independent of ERISA. *Emerg. Group of*

12  *Az. Prof'l Corp. v. United Healthcare, Inc.*, 838 Fed. Appx. 299, 300 (9th Cir. 2021) ("The Medical

13  Groups assert legal duties arising under an implied-in-fact contract…[t]hese alleged legal duties

14  'would exist whether or not an ERISA plan existed' and thus are independent from the legal

15  obligations imposed by the ERISA plans.").

16       Here, Saint Mary's has argued that by verifying benefits, authorizing medical services,

17  indicating that the services were medically necessary, and/or providing information to Saint Mary's

18  regarding benefits to be expected, HH agreed to pay for services provided to their members directly

19  with Saint Mary's, separately and apart from any obligations to their members. Saint Mary's alleges

20  this conduct communicated HH's willingness to accept the market or usual and customary rate for

21  the services provided. Saint Mary's has alleged the conduct that gave rise to the implied-in-law

22  contract, has alleged the breach of that contract (by failure to pay at market rates), and has alleged

23  the consideration for the contract (the provision of out-of-network services). The Nevada Supreme

24  Court recently refused to disturb a district court's denial of a dismissal motion under Nevada Rule

25  12(b)(5) (corresponding to Federal Rule 12(b)(6)) regarding an implied-in-law contract claim for

26  payment for emergency services rendered out-of-network. *United Healthcare Ins. Co. v. Eighth*

27  *Jud. Dist. Court in & for Cty. of Clark*, 81680, 2021 WL 2769032, at \*2 (Nev. July 1, 2021); *see*

28  *also Fremont Emerg. Servs. (Mandavia), Ltd. v. UnitedHealth Group, Inc.*, 446 F. Supp. 3d 700,

4846-7035-1348

703 (D. Nev. 2020).[9] Nevada law would apply to this implied-in-law contract, and the Nevada

Supreme Court has explained why HH's Motion should be denied:

> The providers alleged an implied-in-fact contract to provide emergency medical services to United's plan members in exchange for payment at a usual and customary rate, and that United breached this contract by not doing so. As the theory suggests, these determinations are factually intensive and ill-suited for a motion to dismiss or writ proceeding.

*United Healthcare*, 2021 WL 2769032, at *2.

### 4. Saint Mary's Emergency Care Statutes claim should not be dismissed either.

HH argues that the Emergency Care Statutes only require it to pay what *it* thinks is fair and

reasonable for emergency care. *See* Motion at 16. But HH misconstrues Saint Mary's argument, as

well as the relevance of the 2020 statute. All the claims at issue in this case, as HH knows (it has

the list) are for services rendered prior to the effective date of NRS 439B.748, 439B.751, and

439B.754 (the arbitration statute). However, Nevada's requirement that all managed care

organizations provide coverage for "medically necessary emergency services" is not new—it has

been on the books in its present form since 1999. NRS 695G.170. NRS 439B.748 is instructive of

the Legislature's intended meaning of the coverage of "medically necessary emergency services."

NRS 439B.748, 439B.751, and 439B.754 show an intent by the Legislature *not* to permit the insurer

to force *de minimis* payments on non-contracted providers—NRS 439B.748 provides that recently

out-of-network providers will be paid *more* than they were paid in-network, and provides that while

the insurer can pay a long term non-network provider a "fair and reasonable" amount, it permits the

provider to force an arbitration in the event the payment is unreasonable. And NRS 439B.751

provides that, for non-network, non-emergency facilities, the third party (here, HH) "shall submit to

the out-of-network provider an offer of payment in full for the medically necessary emergency

services."

NRS 695G.170 requires HH to "provide coverage for medically necessary emergency

services provided at any hospital," and thus standing alone requires HH to pay for the emergency

care provided by Saint Mary's. Saint Mary's contends that NRS 439B.748 shows a legislative intent

---

[9] Saint Mary's believes this was the remand that put the case before the Eighth Judicial District; the district court notes that the plaintiffs had never had a reimbursement contract with the insurer, making them out-of-network.

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

to ensure the parties cooperate in determining a fair market rate, like the usual and customary rate. Uncertainty about this law is not cause for dismissal.

### 5.     The Unjust Enrichment/Quantum Meruit claims should not be dismissed.

Saint Mary's claims for Quantum Meruit/Unjust Enrichment should not be dismissed because Saint Mary's argues that HH undercompensated Saint Mary's relative to what was minimally required under the member plans, and HH outright denied payment for other claims. HH's primary argument here is that there can be no unjust enrichment without a benefit, and HH cites to New York authority that tends to suggest that health insurers are not "benefited" when an insured is treated by a facility. *See* Motion at 14-15. In contradistinction to HH's authority, in this circuit, in *Goel v. Coalition Am. Holding Co.*, the plaintiff alleged that class members "conferred benefits . . . by providing healthcare services to patients" and that Defendants (administrators of a PPO plan) "have reaped the benefit of substantial monetary savings by wrongfully and illegally applying discounted rates to medical expense claims." CV 11-2349 GAF (EX), 2011 WL 13128300, at *6 (C.D. Cal. July 5, 2011). The court found this stated a plausible benefit for the purposes of an unjust enrichment claim. *Id.*[10] Other non-New York courts have similarly held that provision of services to an insured is a benefit to the insurer for the purposes of unjust enrichment.[11] Other courts have split the baby, finding a benefit to have been conferred where the provider had to provide the services because they were emergency services.[12]

The view of "benefit" HH articulates is short-sighted, as it fails to acknowledge that in plans that have out-of-network benefits, like Preferred Provider Organization ("PPO") plans, if providers

---

[10] Indeed, although this Court dismissed an unjust enrichment claim in *Valley Health System LLC v. Aetna Health* in part for failure to plead a benefit, this Court distinguished an unjust enrichment claim where, as here, the provider pleads that the compensation was lower than required by the insured's health plan. *Valley Health Sys. LLC v. Aetna Health, Inc.*, 215CV1457JCMNJK, 2016 WL 3536519, at *4 (D. Nev. June 28, 2016) ("Valley Health has not alleged that Aetna failed to reimburse Valley Health at levels commensurate with its individual members' coverage."). Here, unlike in Valley Health, Saint Mary's does allege that HH obtained an unjust benefit by reimbursing at a lower level than required by the plan.

[11] *E.g.*, *Demaria v. Horizon Healthcare Services, Inc.*, 2:11-CV-7298 WJM, 2013 WL 3938973, at *6 (D.N.J. July 31, 2013); *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1224 (M.D. Fla. 2020); *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507 (Pa. Super. Ct. 2003).

[12] *New York City Health & Hosps. Corp. v. Wellcare of New York, Inc.*, 35 Misc. 3d 250, 258, 937 N.Y.S.2d 540, 546 (Sup. Ct. 2011).

4846-7035-1348

Snell & Wilmer
L.L.P.
LAW OFFICES
510 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

*refuse* to provide coverage to patients of a particular insurer, the value of HH's out-of-network benefits to its members goes down—this necessarily makes the plans less valuable. With the exception of emergency care, Saint Mary's is under no obligation to treat HH members, but its willingness to do so is a benefit to HH, as is the willingness of other out-of-network providers, since it permits HH to sell a product to members who do not want to be locked into an HMO.[13]

HH's argument also fails to acknowledge that it has *extracted* a benefit from Saint Mary's by paying Saint Mary's less than it would have had to pay had the members received their services in-network. Under the exemplar EOC, HH claims it does not have to pay anything. HH also apparently believes (Saint Mary's does not concede it is correct) that Saint Mary's cannot balance bill. Motion at 8 ("Nor can it balance bill these patients"). Taking HH at its word, then Saint Mary's confers on HH a benefit equal to the amount it would normally pay an in-network facility to provide the same services every single time it provides out-of-network services to anyone covered under that EOC (if that EOC applies to any of the claims at all, which HH itself refuses to say). The Court should consider: is it a benefit to HH for its patients to obtain valuable medical services which HH does not have to pay for? If it is, then it is unjust for HH to retain that benefit.

### 6. HH ignores the attorney fees provision in Nevada's Health Insurance Prompt Payment Statute that shows that it contains a right of private action.

HH argues that NRS 683A.079 does not contain a right of private action by incorrectly analogizing this statute to the property/casualty prompt payment provision in NRS 690B.012. In *Allstate*, cited by HH, the Nevada Supreme Court found that, absent a clear private right in the statute, the statute defaulted to being enforceable by the Department of Insurance, given what surrounding statutes say about enforcement. *Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 571-73 (2007). And HH is right: if NRS 683A.079 were written as NRS 690B.012 was, then the proper procedure for pursuing this claim would have been for Saint Mary's to file a grievance with the

---

[13] And although Saint Mary's does not have access to HH's plans, HH's own website FAQs shows that it does sell individual PPO products that contain out-of-network benefits. HometownHealth.com, Individual and Family Plan Frequently Asked Questions, *available at* https://www.hometownhealth.com/individual-family-plan-faq/ (last visited July 28, 2021) ("If member goes out of network they are subject to out-of-network rates and the out-of-network deductible and out of pocket max is separate from the in-network deductible and out of pocket max. Out of network is also subject to the member being balance billed for anything the plan doesn't pay towards the provider's charges.")

4846-7035-1348

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

Nevada Insurance Commissioner.

But unlike NRS 690B.012, NRS 683A.079 contemplates that actions under the section will be brought in court: "5. A court shall award costs and reasonable attorney's fees to the prevailing party in an action brought pursuant to this section." NRS 683A.0879. This language assumes that "an action" may be "brought pursuant to this section" and that such an action will be before "[a] court" and not the Insurance Commissioner. This language is absent from 690B.012, and in Nevada, this distinction makes the difference. In *Csomos v. Venetian Casino Resort, LLC*, the Nevada Supreme Court found a right of private action in a statute in the same section as another statute where it had previously found a lack of such right, because the section it was investigating "allows for assessment of attorney fees." 55203, 2011 WL 4378744, at *2 (Nev. 2011). The court explained "[i]t is doubtful that the Legislature intended a private cause of action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the suit itself." *Id.*

Saint Mary's has also sufficiently alleged the violation of this statute, considering its Claims List, incorporated by reference, which identifies in a manner that HH can easily interpret each claim at issue in this case. HH can determine from this spreadsheet which claims were not timely paid with relative ease, starting with the claims which HH never paid at all (making these *128 claims* especially late, since they would each be more than a year old, as HH can determine by sorting the claims by date of discharge).

**7.      In the alternative, Saint Mary's seeks discovery to plead a more definite statement.**

HH, in moving for a more definite statement, complains about Saint Mary's protecting private patient information by not publicly publishing its Claims List (and a related letter appending them—the letter was *not* incorporated into the Complaint) by sending it to HH separately (but in conjunction with its filing of its Complaint). Much of what HH complains of it has actual knowledge of: the dates of the claims at issue, the actual issues at play, the patient/member names, the dates of service, etc., because this material is included in the Claims List. If HH had any arguments, for instance, that certain claims were barred by limitations, they could easily make those arguments with reference to the Claims List. They suggest that this is not proper pleading, citing only to a single ambiguous secondary source. However, under authority HH itself also cited,

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

4846-7035-1348

21

documents integral to the Complaint can be incorporated into it, or considered part of the pleadings, in deciding on a Motion to Dismiss. The Claims List is specifically referred to and is integral to the Complaint. Because it involves hundreds of claims, and contains protected patient information, Saint Mary's undertook this strategy to ensure (1) that patient privacy was protected, and (2) that HH nevertheless had a complete list of the claims at issue in this litigation with relevant detailed information about each. If the Court would prefer that the Claims List be filed under seal, Saint Mary's can  do so—however, it would be difficult to redact the list in such a way as to retain its usefulness while protecting patient privacy to permit it to be filed openly in court.

HH rhetorically asks if Rule 11 applies—it applies to Saint Mary's Complaint, which incorporates the Claims List by reference, so it applies to the Claims List. And although HH continually asks what proportion of claims are ERISA claims and what proportion are governed by state law, this is an out-of-network case, so only HH has all the plans, plan details, and funding arrangement data. However, because Saint Mary's has properly been assigned all of the claims whether they sound in state law or are instead founded on a denial of ERISA benefits, is irrelevant to what the Court must decide now, since neither finding with respect to a particular claim would be a reason to dismiss that claim.

In any case, while Saint Mary's would certainly replead in conjunction with the Court's wishes, it would request that the Court order limited discovery first—specifically the production of all relevant plan documents and records or deposition testimony establishing which plans apply to which claims. With that information, Saint Mary's could convert its Claims List into a detailed set of allegations specifying which claims were underpaid, under which relevant provisions, under what substantive law, etc.; but as it is, Saint Mary's lacks the necessary information to do so, because it lacks what only HH possesses.[14]

## D.  Saint Mary's claims are not barred for failure to exhaust remedies and appeals.

HH's Motion is based on the notion that, no matter how egregious HH's conduct was, and despite no written contractual agreement between the parties requiring the same, Saint Mary's is required to follow HH's appeals procedures to receive payment. But (1) Saint Mary's right to

---

[14] *See* Wallace Dec., Dkt. 37-1, ¶¶2-9.

1   reimbursement is not conditioned on compliance with any appeals process; and (2) the issue of

2   exhaustion of administrative remedies is an affirmative defense on which Saint Mary's bears no

3   pleading burden, and even if it had such a burden, it has met it.

### 1.   Saint Mary's right to reimbursement is not conditioned on HH's appeals process.

5   By failing to pay the usual and customary rate under the Emergency Care Statutes, HH

6   breached *first* and now attempts to condition Saint Mary's right to reimbursement on a non-

7   contractual requirement to appeal. HH cannot unilaterally condition its compliance with the

8   Emergency Care Statutes on whether Saint Mary's appeals. For the emergent claims, the Nevada

9   Insurance Code applies and cannot be negated by the lack of an appeal that the statutes do not

10  require. The Legislature could have required that a non-participating provider complete an insurer's

11  appeal process before filing suit, but it chose not to do so. *Cf.* NRS 439B.754 (effective Jan. 1,

12  2020, requiring non-participating providers to participate in a state-required mediation or arbitration

13  process before filing suit). There are simply no administrative remedies to exhaust, and the

14  exhaustion doctrine therefore has no relevance here.

### 2.   Saint Mary's need not plead exhaustion of administrative remedies.

16  Saint Mary's is not required to plead exhaustion of administrative remedies in its complaint

17  in the Ninth Circuit, given that failure to exhaust is an affirmative defense on which the Defendant

18  bears the burden of pleading and proof. *Albino*, 747 F.3d at 1166 (administrative exhaustion

19  generally, noting that a 12(b)(6) motion is appropriate on the defense of failure of exhaustion only

20  in the "rare event that a failure to exhaust is clear on the face of the complaint."); *Norris v. Mazzola*,

21  15-CV-04962-JSC, 2016 WL 1588345, at *6 (N.D. Cal. Apr. 20, 2016) (ERISA exhaustion is an

22  affirmative defense, declining to grant a 12(b)(6) motion on exhaustion because the defense did not

23  appear on the face of the complaint); *Puget Sound Surgical Ctr., PS v. Aetna Life Ins. Co.*, C17-

24  1190JLR, 2018 WL 4852625, at *6 (W.D. Wash. Oct. 5, 2018) ("[h]as [plaintiff] pleaded itself out

25  of its ERISA claim by alleging facts consistent with a failure to exhaust administrative remedies

26  related to Sound Health? It has not. ***Indeed, [plaintiff] need not plead any facts to negate an***

27  ***affirmative defense.***") (emphasis added). Saint Mary's Complaint does not show that it failed to

28  exhaust; consequently, HH's affirmative defense should be denied at the 12(b)(6) stage.

Snell & Wilmer
L.L.P.
LAW OFFICES
510 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

In any case, Saint Mary's went above and beyond what Rule 8 requires and in fact pleaded exhaustion adequately. Even before *Albino* settled the question of whether an administrative exhaustion was proper to present at the motion to dismiss stage, it was sufficient in the Ninth Circuit for plaintiffs to plead shortly and plainly that they had exhausted their administrative remedies. *See*, *e.g.*, *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d 1076, 1102 (D. Ariz. 2009) (finding the allegation "Plaintiffs have exhausted all required administrative appeals process" to have adequately pleaded exhaustion of remedies). In fact, the *Spinedex* court distinguished the very same cases HH cites for the following reasons:

> . . . The trend among the district courts appears to grant plaintiffs more lee-way than *DeVito,* only dismissing ERISA claims for failure to adequately plead exhaustion when the complaint does not refer to administrative procedures, but rather alludes vaguely to meeting all conditions precedent or fails to mention exhaustion at all.

*Spinedex*, 661 F. Supp. 2d at 1102-03.

Saint Mary's "short and plain statement" regarding exhaustion would have been sufficient to satisfy the requirements of Rule 8 even if Saint Mary's had been required to so plead. FED. R .CIV. P. 8(a)(1). In addition to the concerns above, fact questions abound: under Ninth Circuit precedent, ERISA's court-created exhaustion requirement applies only if the relevant plan requires exhaustion.[15] *Spinedex*, 770 F.3d at 1299. Where plan documents could reasonably be read as making the administrative appeals process optional, exhaustion is not required. *See id.* at 1298-99. What exhaustion procedures are required is thus a presently undecidable fact question.

## V.     CONCLUSION

For the reasons stated above, Saint Mary's requests that the Court deny HH's Motion.

---

[15] As addressed in detail above, Saint Mary's does not have access to the health plans, which first must be reviewed to determine if an appeal is required.

Snell & Wilmer

L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

4846-7035-1348

Dated: August 2, 2021

SNELL & WILMER L.L.P.

By: */s/ Janine C. Prupas*
    William E. Peterson, Bar No. 1528
    Janine C. Prupas, Bar No. 9156
    50 West Liberty Street, Suite 510
    Reno, Nevada 89501

    *Attorneys for Plaintiff*

4846-7035-1348

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINTE STATEMENT; PLAINTIFF'S ALTERNATICE MOTION TO DEFER OR DENY SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(D)** with the Clerk of the Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED this 2nd day of August, 2021.

*/s/ D'Andrea Dunn*
An employee of SNELL & WILMER L.L.P.

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775.785.5440

4846-7035-1348