Adam Hosmer-Henner, Esq., NSBN 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

*Attorneys for Defendants Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PRIME HEALTHCARE SERVICES- RENO, LLC D/B/A SAINT MARY'S REGIONAL MEDICAL CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>HOMETOWN HEALTH PROVIDERS INSURANCE COMPANY, INC., and HOMETOWN HEALTH PLAN, INC.<br><br>Defendants. | Case No: 3:21-CV-00226-MMD-CLB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |

Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc. (collectively "Hometown Health") submit this reply in support of Defendants' Motion to Dismiss or, in the Alternative, for a More Definite Statement, ECF No. 34 ("Motion"), and in reply to the Response filed by Plaintiff Prime Healthcare Services – Reno, LLC d/b/a Saint Mary's Regional Medical Center ("Saint Mary's"), ECF No. 37 ("Response").

**I.     INTRODUCTION**

Saint Mary's has already dropped two of the four defendants it originally sued, prior to even the completion of briefing on Defendants' Motion. And while Saint Mary's Complaint alleged that Defendants' "wrongful conduct continues to this day, and Saint Mary's will present evidence in support of all non-payments and underpayments that . . . may continue to the time of trial," in order to avoid a defense, Saint Mary's adjusts its claims in the motion practice and states "none of the claims have dates of services after December 31, 2019." (ECF No. 37 at 4.)

Then, in a novel argument made without legal support or citation, Saint Mary's actually asks for discovery to allow it to plead a more definite statement. (ECF No. 37 at 21.) This backwards argument is the latest and clearest example of Saint Mary's tactical impropriety.

In its Response, Saint Mary's asks the Court to postpone decision on the Motion until Saint Mary's conducts discovery. This typical approach to motions to dismiss fails though, because the Court is not asked to advance a summary judgment decision, but to determine either whether the current pleading fails to state a claim due to its intentional ambiguity or whether a more definite statement is required. Saint Mary's continues to combine more than six-hundred discrete claims without identifying the plan term that was violated or the language of the purported assignment for even a single claim. Saint Mary's inadequate pleading cannot fairly or reasonably serve as a basis for the parties to conduct discovery.

Hometown Health's defenses can be resolved at this procedural stage though because Saint Mary's, which can only sue derivatively on behalf of Hometown Health's members, attempts to give itself more legal rights as the assignor than were held by the assignee. These members did not have a contractual right for Hometown Health to pay in-full the charges billed by an out-of-network hospital. For emergency services, Saint Mary's is, at least for the past eighteen months, prohibited by Nevada law from balance billing the members and so there could be no conceivable injury to assign from them to Saint Mary's. For non-emergency services, it is hardly controversial that an out-of-network provider cannot demand the same payment from an insurer as if it was an in-network provider or that an insurer can limit its coverage for services obtained outside of the network. It is simply not a question of whether the assignment generated standing even though the members had not been billed by Saint Mary's *yet*, but whether Saint Mary's could have ever billed these members or whether there was any insurance coverage for the non-network services. Furthermore, under no circumstances can Saint Mary's derivatively assert claims for implied-in-fact contracts or unjust enrichment on behalf of these members who never possessed these claims at any point in time.

While Saint Mary's believes that it need only make a "short and plain statement" with respect to every disputed matter in the Complaint, it is not sufficient to summarily recite the

elements of each claim and defense without any factual allegations. Proceeding with the Complaint as currently pleaded would itself be an undue burden upon Defendants.

## II. ARGUMENT

### A. Saint Mary's Falls Far Short of Providing a Sufficiently Definite Statement.

Saint Mary's now represents that the claims list it provided to Hometown Health on June 2, 2021 was "incorporated into Saint Mary's Complaint by reference." (ECF No. 37 at n.4.) As the Complaint was filed on May 14 and served on May 20, 2021, it is extremely tenuous to claim that the Complaint includes the June 2, 2021 claims list. Courts dealing with similar cases have strongly rejected similar pleading practices. In *Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, the court noted: "Apparently, about two months after PSCC filed its Complaint, it produced an Excel spreadsheet to Cigna of unpaid claims . . . . This information also does not appear in the Complaint. If PSCC thinks alleging this information would help clarify its ERISA claims, then it may put it in an amended complaint." No. CV-20-02007-PHX-MTL, 2021 WL 3130336, at *4 n.3 (D. Ariz. July 23, 2021). In another case, after the plaintiff requested leave to submit a proposed second amended complaint, the court directed plaintiff to "create an Amended Claims List . . . and prepare a spreadsheet in Excel, one row per patient, consisting of columns containing the following data: Patient Name; Date(s) of Service; Plan Name; Plan Type (ERISA or non-ERISA); Amount Billed; Amount Paid; Amount Owed; and the remaining cause(s) of action as to that patient. The spreadsheet shall be sorted first by Plan Type, then alphabetically by patient last name. After sorting is completed, each row will be numbered sequentially." *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.*, No. 17-cv-1674, 2021 WL 1224883, *20 (E.D.N.Y. Mar. 31, 2021). Saint Mary's pleading is woefully short of the type of detail contained in other similar actions, which do not contain the same shotgun amalgamation present here. *See, e.g., DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 964 (N.D. Cal. 2019) (addressing claims for treatment rendered to a single patient).

### B. Saint Mary's Failed to Identify an Actual Injury.

Saint Mary's concedes that there is no actual injury to the patients/assignees. (ECF No. 37 at 10.) In order to continue with its suit, Saint Mary's relies upon *Spinedex Physical Therapy*

3

*USA Inc. v. United Healthcare of Arizona, Inc.* for the proposition that it inherited the causes of action as they stood at the time of assignment and was subsequently injured by the "deprivation of its rights to those benefits when the insurer failed to pay." 770 F.3d 1282, 1297 (9th Cir. 2014). Yet *Spinedex* bases this conclusion on the premise that if "the beneficiaries had sought payment directly from their Plans for treatment provided by Spinedex, and if payment had been refused, they would have had an unquestioned right to bring suit for benefits." 770 F.3d at 1291. If the individuals here had a right to sue – at the time of assignment – then *Spinedex* perhaps would counsel that this right could be assigned. But Saint Mary's fails to identify the injury or plan violation that was assigned, stating only in a conclusory fashion that it was injured "by a denial of its assigned rights when [Hometown Health] underpaid it." *Id.* Given the number of claims and plans, it is impossible to identify exactly what injury is actually in play. Specifically, the injury question is not whether Saint Mary's bills are reasonable or whether they would like to receive a higher reimbursement rate. Instead, Saint Mary's had to "allege . . . distinct injury . . . such as an obligation to pay part of DaVita's billed charges that exceeded the reimbursement amount." *Star Dialysis, LLC v. WinCo Foods Emp. Benefit Plan*, 401 F. Supp. 3d 1113, 1138 (D. Idaho 2019). For example, Saint Mary's includes two anecdotes where Hometown Health paid 11% of billed charges and 8% of billed charges. (ECF No. 1 ¶¶ 26-27.) Certainly, Saint Mary's does not and cannot seriously contend that Hometown Health has an obligation to pay 100% of Saint Mary's billed charges, which "bear little relationship to market rates [and] are usually highly inflated." Price Transparency Requirements for Hospitals to Make Standard Charges Public 84 Fed. Reg. 65,524, 65,542 (Nov. 27, 2019). Thus, the question for the Court – which neither it nor Hometown Health has a realistic ability to answer given the deliberately ambiguous pleading – is what injury was or could have been suffered by the patients as there is no allegation or claim that they would have been financially responsible for the difference between what Hometown Health paid and what Saint Mary's charged. Furthermore, there is no allegation that there was a contractual right to have Hometown Health pay more than what it paid or that members would be financially liable if Hometown Health did not pay more.

///

### C. Saint Mary's Fails to Adequately Plead Wavier.

The law is clear in the Ninth Circuit: "Anti-assignment clauses in ERISA plans are valid and enforceable." *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 440 (9th Cir. 2020). Saint Mary's cites Fifth Circuit caselaw to argue that Hometown Health's anti-assignment provisions is ineffective. (ECF No. 37 at 8-9.) Its argument is unpersuasive, as the Ninth Circuit has repeatedly found anti-assignment provisions almost identical to Hometown Health's valid and enforceable.[1] *See, e.g.*, *Spinedex*, 770 F.3d at 1296 (enforcing an anti-assignment clause stating: "You may not assign your Benefits under the Plan to a non-Network provider without our consent."); *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 872 n.2 (9th Cir. 2017) (enforcing an anti-assignment clause stating: "The benefits contained in this plan, and any right to reimbursement or payment arising out of such benefits, are not assignable or transferable, in whole or in part, in any manner or to any extent, to any person or entity . . . .").

Saint Mary's argument that the EOC attached to the Motion does not cover every claim is equally unpersuasive, as it is inconsistent with Ninth Circuit caselaw. *DB Healthcare*, 852 F.3d at 872 (finding that defendant's submission of one exemplar plan with anti-assignment language was sufficient to defeat any assignment). Further, Hometown Health is obviously not contending that the example EOC covers every alleged claim at issue, but is arguing that similar anti-assignment clauses are present for each potential claim—just as Saint Mary's cites just one assignment clause and alleges that clauses with "similar language" exist for all patients. (ECF No. 1 ¶ 16.) This argument itself shows that Saint Mary's is attempting to slip past the pleading stage into discovery by vaguely identifying its assignments and claims, but then demanding discovery on the anti-assignments.

Unable to dispute that the anti-assignment provision controls, Saint Mary's raises a waiver argument. (ECF No. 37 at 7.) It relies on two inapposite Ninth Circuit cases to argue that

---

[1] The anti-assignment provisions states: "You may not assign this EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without Our prior written consent." (ECF No. 34-1 ¶ 4; *see also id.* at 17.)

5

Hometown Health's alleged "fail[ure] to assert or acknowledge the existence of anti-assignment clauses" during the administrative process constitutes waiver in federal court. *Id.* But consistent with its pattern and practice of circumventing its pleading requirements, Saint Mary's has not clearly or definitively alleged waiver.

Waiver requires "the intentional relinquishment of a known right." *Beverly Oaks*, 983 F.3d at 440 (citations omitted); *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016) (requiring "'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved" for implied waiver (citation omitted)); *Host Int'l, Inc. v. Summa Corp.*, 94 Nev. 572, 574, 583 P.2d 1080, 1081 (1978) (same). Saint Mary's alleges only that Hometown Health "failed to assert or acknowledge the existence of anti-assignment clauses." (ECF No. 37 at 7.) But "[m]ere silence regarding the anti-assignment provisions does not constitute a waiver of those provisions." *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 330 (E.D.N.Y. 2017). The court in *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group. Inc.*, 99 F. Supp. 3d 1110, 1144 (C.D. Cal. 2015), explained why. There, the court concluded that "allowing Plaintiffs to conduct appeals or pursue a benefit claim decision would not waive the right to assert anti-assignment clauses" because "ERISA regulations require that the plans allow an authorized representative to engage in these activities, and [defendants] allowing it should not waive its right to assert anti-assignment clauses as to something beyond this permissive activity." *Id.* The same reasoning applies here.

Further, nowhere does Saint Mary's allege any facts inferring that Hometown Health intentionally or deliberately withheld information about the anti-assignment provisions during the administrative process. In fact, its Complaint is completely devoid of any discussion of the administrative process or communications exchanged therein. Similar deficiencies have resulted in dismissal in this Circuit. *E.g.*, *Almont*, 99 F. Supp. 3d at 1146-47; *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. CV-1401480-MMM-AGRX, 2014 WL 12573014, at *17 (C.D. Cal. Dec. 26, 2014) (finding plaintiff's bare allegation that defendant "never raised the anti-assignment provisions during the administrative process" insufficient because plaintiff failed to allege plaintiff was acting as assignee, rather than "authorized representative").

Saint Mary's tries to claim it needs further discovery to address this argument, but despite having access to all 690 assignment provisions, Saint Mary's has not even provided the precise assignment language it is attempting to rely on for each claim. The Complaint's factual shortcomings preclude this Court from finding, or even inferring, waiver. *Id.* (finding no waiver where complaint "says nothing about the methods or contents of the communications" between the provider and insurer and "provides no indication that [the insurer] voluntarily or intentionally waived the anti-assignment provisions"); *see also Sasson*, 2021 WL 1224883, at *8 (finding that plaintiff's failure to allege facts allowing an inference that defendant waived the anti-assignment provision warranted dismissal and precluded additional discovery).

For these same reasons, Saint Mary's reliance on *Beverly Oaks* is misplaced. In *Beverly Oaks*, the Ninth Circuit held that to prove waiver, a provider must allege specific facts showing that the insurer "was aware of should have been aware" during the claims process that the provider was acting as assignee. *Id.* at 440 (citing *Spinedex*, 770 F.3d at 1297). Unlike the plaintiff in *Beverly Oaks*, Saint Mary's alleged no facts related to the administrative claims process, let alone that Hometown Health knew or should have known that Saint Mary's was acting as its patients' assignee, rather than merely as "an authorized representative charged with filing, collecting, or appealing a claim on behalf of the patient." *Spinedex*, 770 F.3d at 1297 (holding that because "there is no evidence that [defendants] w[ere] aware, or should have been aware" that plaintiff was claiming as an assignee, "Defendants therefore did not waive their objection to the assignment in the district court"). Saint Mary's waiver argument should therefore be rejected and the anti-assignment provisions should compel dismissal.

### D. The Anti-Assignment Provision Is Not Inconsistent with NRS 698A.135.

While NRS 698A.135 permits assignment of benefits in the health insurance context, nothing in NRS 698A.135's language prohibits parties from freely entering into contracts conditioning such assignments on written consent. Hometown Health's anti-assignment provision permits parties to assign rights to benefits so long as the assignee obtain written consent. (ECF No. 34-1 ¶ 4.) Unsurprisingly, Saint Mary's fails to allege that it obtained written consent to assign the benefits, or even attempted to do so.

Further, NRS 698A.135 relates only to the assignment of *benefits* under a specific plan. It does not expressly allow for the assignment of the right to sue, which implicates the separate and distinct question of standing. Saint Mary's argues that the assignment of benefits is sufficient to confer a right to sue, but it ignores Hometown Health's recognition that even if the assignment of benefits carries with it the ability to pursue legal relief related to those claims, the assignment provision at issue here does not confer a broad right to sue. The assignment upon which Saint Mary's relies assigned only the "direct payment to the hospital" and all other benefits "payable" to the patient. (ECF No. 1 ¶ 16.) The limited language of the assignment provides only that Saint Mary's has a right to receive payment due under the plan, not that Saint Mary's has a broad right to sue or demand payment that was not due under the plan (to which even the insured is not entitled). Unlike the assignment in *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 968–69 (N.D. Cal. 2019), which assigned "all of my right, title and interest *in any cause of action* and/or any payment due to me," the assignment here is limited to payment due under the plan. Saint Mary's fails to acknowledge or address this argument in its opposition. Hometown Health's conditional anti-assignment provisions are therefore consistent with NRS 698A.135 and enforceable.

### E. Saint Mary's Statutory Claims are Not Saved from Preemption.

Saint Mary's erroneously argues that its statutory claims are saved from preemption under the savings clause in 29 U.S.C. § 1144. State law claims falling within ERISA's comprehensive scope are preempted under 29 U.S.C. § 1132 "as conflicting with the intended exclusivity of the ERISA remedial scheme, *even if* those causes of action would not necessarily be preempted by section [1144](b)." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (emphasis added) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004)); *Davila*, 542 U.S. at 209 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (2009) ("If state-law causes of action come within the scope of § [1132](a)(1)(B), those causes of action are completely preempted, and the only

possible cause of action is under § [1132](a)(1)(B)."). Thus, the savings clause is irrelevant.

The only other state law claim that Saint Mary's disputes is preempted by ERISA is the quantum meruit claim, which it purports to assert independently of the ERISA insureds' rights. However, a state law cause of action is "completely pre-empted by ERISA § [1132](a)(1)(B)" where (1) "an individual, at some point in time, could have brought his claim under ERISA § [1132](a)(1)(B), and" (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Here, the first prong is indisputably satisfied as Saint Mary's asserts a claim under ERISA on behalf of the individual, the basis of which mimics that of all its claims—i.e., alleged underpayments or non-payments. As for the "no independent legal duty" prong which Saint Mary's does not dispute, any legal duties at issue in this action are dependent upon and derive only from Hometown Health's obligation to provide benefits to its members under their respective plans. *See In re WellPoint, Inc. Out-of-network UCR Rates Litig.*, 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012). Because ERISA is the exclusive remedy for any patients insured under ERISA plans, Saint Mary's cannot assert both ERISA and state and common law claims for those ERISA-insured patients.

### F. Saint Mary's Remaining Claims Fail.

In its deliberately broad Complaint, Saint Mary's claims entitlement to over "over 600 unpaid or underpaid claims." (ECF No. 1 ¶ 10.) Saint Mary's does not get to lump together these separate claims—all involving different patients, different types of plans, different medical procedures, and different assignment provisions—and expect that this Court will adjudicate them in one cause of action. *See Glendale Outpatient Surgery Ctr. v. United Healthcare Servs., Inc.*, 805 F. App'x 530, 531 (9th Cir. 2020) (finding plaintiff's pleading deficiencies were "exacerbated by [its] decision to lump 44 separate events . . . into a single set of generalized allegations"). Saint Mary's expectation is all the more absurd given its failure to allege any specific allegations about the critical factual differences between the claims.

#### 1. Saint Mary's Failed to Plead Facts Sufficient to State an ERISA Claim.

Saint Mary's does not dispute that to state a viable ERISA claim, it must sufficiently establish the existence of ERISA plans and identify the specific provisions in those plans

9

entitling it to benefits. *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, No. 10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011). Saint Mary's attempts to overcome these obvious pleading deficiencies by pointing to paragraph 23 of its Complaint, wherein Saint Mary's generically states that upon information and belief the insurance plans "require coverage at the 'usual and customary' or 'reasonable and customary' or 'market' rate." (ECF No. 37 at 15.) Yet Saint Mary's fails to identify the express language in each plan that confers a benefit, which patients are governed by which plans, or "actually allege that the specific services they provided to the patients at issue were covered under the terms of the relevant plans or describe the plan terms that would support such coverage." *Almont*, 99 F. Supp. 3d at 1158. In *Almont*, similar deficiencies were fatal to the plaintiff's complaint. *Id.* (requiring plaintiff to plead facts specific to each plan); *see also Simi Surgical Ctr., Inc v. Connecticut Gen. Life Ins. Co.*, No. 2:17-CV-02685-SVW-AS, 2018 WL 6332285, at *3 (C.D. Cal. Jan. 4, 2018) (holding failure to allege specific facts "for each plan" warranted dismissal).

### 2. Saint Mary's Failed to Plead Facts Sufficient to State a Viable Implied-in-Law Contract

To prove its implied-in-law contract claim, Saint Mary's alleges only that Hometown Health "demonstrated its acknowledgement of a duty to pay for the majority of the services by paying or causing payment of something on them." (ECF No. 1 ¶ 58.) But the payment of a portion of billed charges does not create a contract to pay the full amount as, instead, it demonstrates Hometown Health was unwilling to pay that full amount. Hometown Health's course of conduct therefore does not a contractual duty or otherwise gave rise to an implied-in-law contract. It shows just the opposite. Although Hometown Health and Saint Mary's had many discussions regarding rates, Hometown Health never agreed to pay the rates requested by Saint Mary's, and thus never before paid those rates—that's why Saint Mary's is an out-of-network provider. *See Emergency Grp. of Ariz. Pro. Corp. v. United Healthcare Inc.*, 448 F. Supp. 3d 1077, 1085 (D. Ariz. 2020). The same reasoning applies here, but instead of addressing this argument, Saint Mary's merely repeats the allegations it made in its Complaint.

///

### 3. The Assignment Provision Does Not Assign the Right to Sue for Equitable Remedies.

In seeking relief for unjust enrichment/quantum meruit, Saint Mary's assumes, without providing any support, that the assignment provision also assigned it the right to seek equitable relief on behalf of the assignor. Setting aside that the assignment provision is unenforceable, Saint Mary's argument is unsupported by the narrow language of the assignment provisions and ERISA caselaw. Section 1132(a)(1)(B) provides a cause of action "to recover benefits due" under an ERISA plan. Hometown Health does not dispute that a patient can assign its right to recover benefits to a provider. The mere assignment of benefits under § 1132(a)(1)(B), however, does assign the right to sue under *other* provisions of ERISA, such as § 1132(a)(3) (allowing for equitable relief). Rather, to determine the appropriate scope of the assignment, courts in this circuit must "look at the language and context of the authorization," *DaVita* 981 F.3d at 679, and must "enforce the intent of the parties," *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983). *E.g.*, *In re WellPoint,* 903 F. Supp. 2d at 896 (finding that the assignment provision's language was insufficient to assign rights to sue for equitable relief). Saint Mary's assignment provision is limited to the right to collect payment for benefits. It provides that the patient assigned "direct *payment* to the hospital . . . all private and public *insurance benefits otherwise payable* to or on behalf of the patient . . . including but not limited to . . . self-insured ERISA benefits/coverage." (ECF No. 1 ¶ 16 (emphasis added)). This language indicates that the patients intended to assign Saint Mary's only the right to bring suit for payment of benefits. The Ninth Circuit in *DaVita* recently held that substantially similar assignment language did not assign equitable claims. 981 F.3d at 679. It concluded that "[t]he wording of the assignment itself suggests only an assignment of a claim for benefits." *Id.* ("The most natural reading of that sentence is that Patient 1 assigned all possible causes of action for the *payment of benefits.*").[2] Because Saint Mary's assignment provision assigs only the right to

---

[2] The *DaVita* Court also analyzed the assignment language in the "broader context" of the sentence, looking to the overall purpose of the document. *Id.* But because Saint Mary's has failed to provide this document or even provide a full recitation of the purported assignment

11

sue for payment of benefits, and not the right to sue for equitable relief, its unjust enrichment/quantum meruit claims must fail.[3]

## V. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice. In the alternative, if the Court does not dismiss the action outright, at a minimum Plaintiff should be required to submit a more definite statement pursuant to FRCP 12(e).

Dated: August 9, 2021.

McDONALD CARANO LLP

/s/ *Chelsea Latino*
Adam Hosmer-Henner, NV Bar No. 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000

*Attorneys for Defendants Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc.*

---

(which it alleges is the same for all 690 claims), Hometown Health and this Court are precluded from consider the assignment language as a whole.

[3] That Saint Mary's Complaint alleges that it "stands in the shoes of the insureds whose services HH contracted to cover" does not compel a different result. (ECF 1 ¶ 17.) Saint Mary's cites *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374 (9th Cir. 1986), but the plaintiff in *Misic* did not allege equitable relief, and thus the Ninth Circuit did not address whether the assignment language was sufficient to confer standing to sue for equitable relief under § 1132(a)(3). Further, as Ninth Circuit precedent makes clear, courts must interpret the express language of the assignment provision to determine the parties' intent—not extraneous allegations in the Complaint.