Adam Hosmer-Henner, Esq., NSBN 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

*Attorneys for Defendants Hometown Health Providers
Insurance Company, Inc., and Hometown Health Plan, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PRIME HEALTHCARE SERVICES- RENO, LLC D/B/A SAINT MARY'S REGIONAL MEDICAL CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> HOMETOWN HEALTH PROVIDERS INSURANCE COMPANY, INC., and HOMETOWN HEALTH PLAN, INC., <br><br> Defendants. | Case No: 3:21-CV-00226-MMD-CLB <br><br> **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc. (collectively, "Hometown Health") hereby move to dismiss Plaintiff Prime Healthcare Services – Reno, LLC D/B/A Saint Mary's Regional Medical Center's ("Saint Mary's") First Amended Complaint ("FAC"), ECF No. 69, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based upon the following memorandum of points and authorities, the pleadings and papers on file, and such other information as the Court may wish to consider.[1]

---

[1] Saint Mary's First Amended Complaint improperly identifies Hometown Health Management Company as a defendant. This entity was not identified as a defendant in the proposed pleading attached to Plaintiff's motion for leave (ECF No. 59), which was filed after the Court had already granted Saint Mary's motion to drop this entity as a party (ECF Nos. 42 and 44). Furthermore, this entity is not actively or directly involved with the issuance or administration of health insurance plans and should therefore be separately dismissed. ECF No. 34-1 ¶ 3.

McDONALD ⬥ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

## I.      INTRODUCTION

Saint Mary's asks a rhetorical "single, simple question" at the top of its FAC: "Can an insurer refuse to pay a medical provider (or pay whatever pittance it wishes) for medically necessary services provided to its insureds in good faith by a hospital simply because that hospital is not in its provider network?" ECF No. 69 at 2. The single, simple answer is yes. Saint Mary's and Hometown Health do not have a contract and Saint Mary's is an out-of-network provider. While there are combinations of certain plans and certain services that would require Hometown Health to pay for out-of-network services on behalf of its members, there are numerous other combinations where Hometown Health has no financial responsibility whatsoever.

Saint Mary's filed its initial complaint, ECF No.1, without any factual basis, failing to identify any contractual provision that was breached or even to identify the claims in question. Saint Mary's then requested and obtained discovery of a number of plans issued by Hometown Health. Unfortunately for Saint Mary's, this discovery did not strengthen Saint Mary's claims, quite the opposite. The plan documents provided to Saint Mary's and now attached to the FAC demonstrate that 1) the plans contained clear-cut anti-assignment provisions that bar Saint Mary's from bringing this action and 2) the plans clearly explain that "[i]n most cases, care you receive from an out-of-network provider will not be covered." ECF No. 69, Ex. B at HTH000455.

Although Saint Mary's FAC is 112 paragraphs, it contains only one salient fact: Saint Mary's was paid benefits from Hometown Health that were lower than its billed charges. In the absence of a contract and of valid assignments, this one fact does not permit Saint Mary's to bring essentially 690 separate and distinct lawsuits against Hometown Health related to services provided between January 6, 2014 and December 31, 2019. Saint Mary's offers no explanation for why it waited until now to bring suit rather than pursue the administrative remedies that are required under the plan documents. Saint Mary's does not have the standing, the right, or the basis to bring this suit and further amendment would be futile.

/ / /

McDONALD ⚫ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2021, Saint Mary's filed its original complaint alleging alleges six causes of action: (1) Failure to Comply with Health Benefit Plans in Violation of ERISA; (2) Breach of Contract; (3) Contract Implied-in-Law (In the Alternative); (4) Unjust Enrichment/Quantum Meruit (In the Alternative); (5) Violation of Nevada Emergency Care Statutes; and (6) Violation of Nevada Prompt Payment Statutes. ECF No. 1. On July 19, 2021, Defendants moved to dismiss the original complaint for failure to state a claim or for a more definite statement, noting among other things that the complaint was severely lacking in detail. ECF No. 34. Saint Mary's opposed the motion and adamantly denied that its complaint was deficient. ECF No. 37.

On August 20, 2021, Hometown Health moved to stay discovery pending resolution of their motion to dismiss. ECF No. 48. Magistrate Judge Baldwin granted in part Hometown Health's motion to stay discovery, but permitted certain limited and narrow discovery. ECF No. 55. Judge Baldwin directed Hometown Health to provide Saint Mary's with the plans for the four insureds that were at least partially identified in Saint Mary's Complaint by October 29, 2021. *Id.*; *see also* ECF No. 1 ¶¶ 26-27, 38-39. Hometown Health timely complied. Six months after filing its original complaint, during which the parties engaged in extensive and costly motion practice, Saint Mary's obtained leave to file its FAC, which still fails to allege sufficient facts about the claims central to this dispute. ECF No. 69.

Saint Mary's asserts the same causes of action, bringing Counts 1 and 2 on behalf of plan participants, relying solely on assignments, and the remaining claims derivatively based on alleged harm suffered by the plan participants. *Id.* ¶¶ 72, 79.[2] However, the FAC does not plead facts sufficient to establish that the alleged assignments occurred or that the clauses cover Saint Mary's claims. The FAC adds limited details about the 690 claims for which Saint Mary's

---

[2] Saint Mary's attempts to distract from its insufficient pleading by claiming that it "is not a coincidence that the repeated and extensive pattern and behavior of non-payment and gross underpayment to Saint Mary's is perpetrated by an insurer (Hometown Health) that is a wholly owned subsidiary of Renown Healthcare, Saint Mary's principal competitor for the provision of heath [sic] care services in Northern Nevada." ECF No. 69 at 2. Despite this statement and other baseless accusations of monopolistic behavior, Saint Mary's does not bring any claims predicated upon these allegations, which are baseless and included for immaterial and impertinent purposes.

alleges it was denied payment or underpaid for services rendered between January 6, 2014 – December 31, 2019 (the day before the effective date of NRS 439B.700 *et seq.*), but does not identify critical details such as the dates claims were paid, denied, or appealed, among others. *Id.* at Ex. A. The FAC contains new allegations surrounding the four plan documents Hometown Health produced and which contain unambiguous anti-assignment provisions, but no allegations about the specific assignments Saint Mary's alleges to have obtained from the patients. *See generally id.* at Ex. B. For these and the reasons detailed herein, the FAC should be dismissed.

### III.   LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682, at *1 (D. Nev. Aug. 29, 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although factual allegations generally are taken as true, conclusory allegations need not be when "contradicted by documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, mere "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are insufficient. *Henry v. Dovenmuehle Mortg.*, No. 2:19-cv-00360-MMD-NJK, 2020 WL 1290787, at *5-6 (D. Nev. Mar. 18, 2020) (citations omitted).

### IV.   ARGUMENT

#### A.   Saint Mary's Lacks Standing to Sue Defendants.

Saint Mary's purports to "stand in the shoes" of individuals insured by Hometown Health but it cannot satisfy the basic prerequisites for maintaining such a suit. The FAC, even more than the initial complaint, suffers from this defect because it runs directly into the anti-assignment language of the plans that Saint Mary's demanded and received. If Saint Mary's had a contract with Hometown Health, as many health care providers do, then Saint Mary's could

directly enforce its contractual rights. Without this contract, Saint Mary's can only rely upon rights that were validly assigned. Importantly, there is a significant difference between the assignment of the right to receive payment and the assignment of the right to enforce a contract. Hometown Health's plans generally permit benefits to be paid directly to providers: "Plan may pay benefits directly to providers of service unless the Covered Person requests otherwise." ECF No. 69, Ex. B at HTH000285. But these same plans expressly prohibit the assignment of the contractual rights: "*No covered [individual] may . . . assign his right to sue to recover benefits under the Plan, or enforce rights due under the Plan or any other causes of action that he may have against the Plan or its fiduciaries*." *Id.*

Under ERISA's civil enforcement provision, only plan participants and beneficiaries can sue to recover benefits under the plan. 29 U.S.C. § 1132(a)(1)(B); *see also id.* at § 1002(7) (defining a "participant" as an employee, current or former, or members of an employee organization, current or former, who are eligible to receive benefits under a covered plan); *id.* at § 1002(8) (defining a "beneficiary" as any person designated by a participant or the terms of the plan to receive some benefit from the covered plan). Saint Mary's, as a healthcare provider does not fall within either category, and therefore has no direct standing to sue under ERISA.[3] *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 874 (9th Cir. 2017) ("We have held before, and reiterate now, that health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions."). A healthcare provider can sue under ERISA only if it establishes derivative standing through a valid assignment from the participant or beneficiary. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) ("[A] non-participant health care provider . . . cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims.").

/ / /

/ / /

---

[3] Similarly, any of Saint Mary's state law claims would only arise from the assignment of the individuals' personal contractual rights and would also fail.

**1. Saint Mary's Has Failed to Adequately Plead the Existence of Valid Assignments.**

Saint Mary's is neither a plan participant nor beneficiary. It therefore does not have direct standing to sue under ERISA to recover benefits. Saint Mary's tries to establish derivative standing by alleging that the participants assigned their benefits to Saint Mary's. ECF No. 69 ¶¶ 21-22. However, Saint Mary's allegations concerning assignment continue to be deliberately ambiguous, which is surprising given that Saint Mary's is the only party in this action with access to the purported assignments. Saint Mary's alleges, in typically oblique fashion, that it had a "policy . . . to obtain assignments of benefits from patients" and that "[t]herefore . . . Saint Mary's has received signed assignments of benefits." *Id.* ¶ 21. Relying on the existence of an internal policy is not equivalent to affirmatively asserting that the assignments were made. This is made especially clear because Saint Mary's fails to allege the specific language from even one of the purported assignments, let alone all of them, choosing instead to rely on generic language. Saint Mary's alleges that it obtained an assignment from the insureds "in these words, or in similar language with similar legal effect," providing that the insured "assigns and hereby authorizes . . . direct payment to the hospital . . . all private and public insurance benefits otherwise payable to or on behalf of the patient." *Id.*

First, these allegations are not sufficient for the Court to find that a valid assignment exists. In *TML Recovery, LLC v. Cigna Corp.*, the court noted that it "previously dismissed without prejudice Plaintiffs' Consolidated Amended Complaint because Plaintiffs 'neither quoted language from the alleged assignments nor attached copies of agreements containing the assignments,' meaning the Court could not determine whether the asserted claims were within the assignment's scope." 2021 WL 3730168, *3 (C.D. Cal. Jul. 26, 2021) (finding that the claims were sufficiently pled in this respect *only* after the plaintiffs quoted "text from one of the Patients' written assignment of benefits" in a second amended pleading). Saint Mary's should not be permitted to proceed with 690 separate claims on the vague assertion that the language of the assignments had "similar legal effect." ECF No. 69 ¶ 21. Saint Mary's neither provides the

/ / /

court with the crucial language for its analysis nor provides Hometown Health with a fair opportunity to challenge the scope of the assignments.

Furthermore, whereas the assignment in *TML Recovery* included language that the provider was "appointed by me to act as my representative on my behalf in any proceeding that may be necessary to seek payment from [Cigna]," the claimed assignment to Saint Mary's is decidedly narrower. 2021 WL 3730168 at*3. The generic language provided by Saint Mary's relates *only* to the "direct payment to the hospital" of the benefits. ECF No. 69 ¶ 21. There is no basis on which Saint Mary's can contend that this language, which only lets Saint Mary's directly receive payment, is sufficient to allow Saint Mary's to bring the claims in this action. *Cf. DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 968–69 (N.D. Cal. 2019) (construing a broad assignment provision in the form of: "I hereby assign to DaVita all of my right, title and interest *in any cause of action* and/or any payment due to me") (emphasis added). The maximum that Saint Mary's could obtain from this assignment is the right to direct payment from the insurer so that payment is made to Saint Mary's rather than to the insured. The language is not broad enough to cover the assignment of a cause of action. The excerpted provision provided by Saint Mary's is difficult to interpret given the missing portions, but it is nowhere near as broad as the provision analyzed in *DaVita* or in *TML Recovery* above.

Second, Saint Mary's mass-pleading strategy is not appropriate. There are now, very specifically, 690 claims at question, each of which may have separate assignment language. If the assignments actually matched Saint Mary's allegations, it would be expected for Saint Mary's to attach or quote the actual language of the assignments. Saint Mary's allegation that it has valid assignments not only is "a legal conclusion that need not be accepted without supporting factual allegations," but also it directly contradicts the applicable plan documents attached to the FAC. *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz. Inc.*, No. CV-13-01558-PHX-NVW, 2014 WL 3349920, at *8 (D. Ariz., July 9, 2014), *aff'd* 852 F.3d 868. The Court and Hometown Health are left to guess as to whether the assignments – the fundamental trigger for Saint Mary's standings – are valid. Even the generic language provided by Saint Mary's is selectively excerpted and impossible to construe as a whole. *Klamath-Lake Pharm.*

McDONALD ☆ CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

*Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983) (holding that assignments must be read as a whole). Saint Mary's has now had two attempts to accurately plead the existence of an assignment, whether by quoting or attaching the actual assignments related to the claims in this case, but they still have failed to fulfill this basic requirement.

### 2. Hometown Health's Anti-Assignment Provisions Bar Plaintiff's Claims.

Saint Mary's attempt at manufacturing standing fails because the plan documents cited and attached to the FAC each contain valid and enforceable anti-assignment provisions that expressly prohibit the assignment of rights under the plans. These anti-assignment provisions are common throughout all of the plans related to Saint Mary's claims. The respective plans for the individuals referenced in paragraphs 52 and 41 both state: "You may not assign this EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without our prior written consent."[4]  ECF No. 69, Ex. B at HTH000102, 209.[5] The plan for the individual identified in paragraph 59 likewise prohibits assignment: "The benefits provided under this Evidence of Coverage are for the personal benefit of the member and cannot be transferred or assigned. Any attempt to assign this contract will automatically terminate all rights under this contract." *Id.* at HTH000619. The plan document covering the insured identified in paragraph 57 contains the following anti-assignment provision: "No covered Employee or Dependent may, at any time, either while covered under the Plan or following termination of coverage, assign his right to sue to recover benefits under the Plan, or enforce rights due under the Plan or any other causes of action that he may have against the Plan or its fiduciaries." *Id.* at HTH000285. In an illustration of "be careful what you wish for," Saint Mary's asked for limited discovery into the plan documents and then received the documents that now seal the case against them. Anti-assignment provisions are valid and the Court should enforce them here.

---

[4] The quotations in this paragraph come from documents containing confidential information but the quotations are not themselves confidential. Defendants are not waiving any confidentiality designation or treatment of these documents, nor should the quotations be construed to do so.

[5] Even the exemplar plan that Saint Mary's attaches to the FAC contains the exact same anti-assignment provision. ECF No. 69, Ex. D at 145 ("You may not assign this EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without Our prior written consent.").

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

"Anti-assignment clauses in ERISA plans are valid and enforceable" and render such assignments void. *Spinedex*, 770 F.3d at 1296 (holding that similar anti-assignment language prevented the plan participants from assigning their claims under that plan); *see also Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) (holding that "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan"); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) (joining the unanimous consensus among circuit courts and "hold[ing] that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable").

The anti-assignment provisions here similarly prevent the assignment of all rights and claims under the plans. Absent such a showing that there were valid assignments, Saint Mary's has failed to establish derivative standing. Thus, Saint Mary's claims lack either statutory or derivative standing to sue under ERISA, thereby warranting dismissal. *Reg'l Med. Ctr. of San Jose v. WH Administrators, Inc.*, No. 17-03357-EJD, 2017 WL 6513441, at *4 (N.D. Cal. Dec. 20, 2017) (explaining that "[a] dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction").

### 3. Saint Mary's Allegations of Waiver Are Inadequate to Confer Derivative Standing.

Saint Mary's alleges that Hometown Health waived or should be estopped from asserting its anti-assignment defense because Hometown Health may have made some payments "without raising any issue" about anti-assignment provisions. ECF No. 69 ¶¶ 62–64. The FAC's allegations about Hometown Health's purported pre-litigation silence are insufficient to establish a valid waiver, which must be intentional, voluntary, and not based on "[m]ere silence." *See Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 330 (E.D.N.Y. 2017). And the FAC lacks any allegations to support ERISA estoppel. *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 442 (9th Cir. 2020) (explaining that, in the ERISA context, a plaintiff must allege the traditional estoppel

McDONALD ⚖ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

1    requirements plus three additional requirements). Hometown Health raises the anti-assignment

2    provisions to contest Saint Mary's standing to sue.

3          But even if Hometown Health made some partial payments without raising the anti-

4    assignment provisions, Saint Mary's does not allege that Hometown Health invoked the anti-

5    assignment provisions to deny or underpay the claims at issue, nor does it allege that Hometown

6    Health intentionally concealed or materially misrepresented its intention to challenge Saint

7    Mary's standing to sue based on the anti-assignment provision. The FAC therefore fails to

8    sufficiently allege waiver, let alone estoppel, based on Hometown Health's purported pre-

9    litigation silence.[6] *Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, 720 Fed. App'x 862, 863

10   (9th Cir. 2018); *see also Beverly Oaks*, 983 F.3d at 441 (explaining that the holding in *Eden*

11   does not conflict with *Spinedex*'s holding that an insurer "cannot hold in reserve a known or

12   reasonable knowable reason for denying a claim, and give that reason for the first time when the

13   claimant challenges a benefits denial in court"). Crucially, Saint Mary's arguments conflate

14   assignment of the receipt of benefits and the assignment of claims. Hometown Health generally

15   has no prohibition against directly paying benefits to providers and so making a partial payment

16   would not be inconsistent with this policy. But in no way would making a partial payment to

17   Saint Mary's indicate an assent to an assignment of contractual rights from the individual to the

18   provider.

19         Because the FAC fails to adequately allege that Saint Mary's was assigned the right to

20   sue or that Hometown Health intentionally withheld information about the anti-assignment

21   provisions at any time, Saint Mary's cannot establish derivative or statutory standing to sue

22   under ERISA through a valid assignment of rights.

23   ///

24   ///

25   _____

26   [6] Similarly, while Saint Mary's fails to identify which claims were actually administratively
     appealed, Saint Mary's waiver allegations also fail to the extent they are based on Hometown
27   Health's purported conduct during any number of required administrative processes that Saint
     Mary's itself concedes it did not pursue before filing suit. *See* ECF No. 69 ¶¶ 67–70; *see also*
28   ECF No. 69, Ex. B at HTH000302 (prohibiting "legal action . . . brought to recover on the Plan
     . . . until the Plan's mandatory claim appeal(s) are exhausted").

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

**4. Absent an Injury-in-Fact for the Insureds, Saint Mary's Cannot Establish Derivative Standing.**

At its core, Saint Mary's complaint is that it should have been paid more for the services it provided to the patients insured by Hometown Health than Saint Mary's ultimately received. To support this position, Saint Mary's makes arguments that would only be persuasive to those unfamiliar with the health care industry and its practices. ECF No. 69 ¶ 38 ("Even excluding all cases in which HH paid nothing, the average payment percentage relative to Saint Mary's billed charges for the Claims at issue is a pitiful 20.42%"). While there is no need to dispute this allegation at present, Saint Mary's walks a fine line when arguing that Hometown Health's reimbursement rate is a "pitiful" 20.42%, as this argument could just as easily be flipped to demonstrate the excessiveness of Saint Mary's billed charges. In any event, what matters at this stage is that even if Saint Mary's can stand in the shoes of the insureds (which it cannot as shown above), there is no injury-in-fact to pursue on behalf of those insureds.

Saint Mary's is clear that it is not pursuing further payment from the insureds. ECF No. 69 ¶ 57. Nor can it balance bill these patients. NRS 439B.745. Although Saint Mary's casts itself as benevolently abstaining from collecting from the patients, it cannot take this step as it is barred by law. *Id.* When Hometown Health allegedly underpaid Saint Mary's, this did not cause the patients to pay anything more than if Hometown Health had paid Saint Mary's inflated charges. When Hometown Health allegedly denied Saint Mary's bills due to timeliness or other reasons, this also did not cause the insureds to pay anything additional. These alleged disputes were based on Hometown Health's policies and procedures that govern the submission and documentation of claims. It is for this reason, that Saint Mary's cannot bring these claims against Hometown Health as the insureds fully received the benefit of the bargain of their insurance contracts. They received medical care and the claims were submitted for resolution between the provider and the insurer without further financial consequence to the insured.

In *Star Dialysis, LLC v. WinCo Foods Emp. Benefit Plan*, 401 F. Supp. 3d 1113, 1138 (D. Idaho 2019), the provider "alleged only that it has suffered injury as a result of WinCo's (or EthiCare's) failure to pay for the services provided at the rate DaVita contends it was owed."

The provider failed to explain how the patients were harmed and "failed to allege any distinct injury . . . such as an obligation to pay part of DaVita's billed charges that exceeded the reimbursement amount determined by WinCo." *Id.* (holding that "[a]bsent facts that would establish an injury to the Plan beneficiaries, DaVita does not have derivative standing to assert the WinCo Plan beneficiaries' claims."); *see also DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 970–71 (N.D. Cal. 2019) (dismissing ERISA claim for benefits for lack of Article III standing where the provider's allegation that the plan documents entitled the insured to "better coverage and higher reimbursement than he actually received" was inconsistent with the terms of the plan).

The patients at issue here, would be in the exact same situation regardless of whether Saint Mary's succeeds or fails in this litigation. They also would have been in the exact same situation at the time of assignment because they were not at risk of an injury-in-fact then or at any subsequent point in time. In fact, Saint Mary's cannot even identify a plan provision requiring Hometown Health to pay its full billed charges, thus there was never an injury-in-fact created by Hometown Health's actions. This is a commercial disagreement between an out-of-network provider and an insurer and it is hardly a unique disagreement in the health care industry. Here, the patients have not suffered an injury, Saint Mary's has received benefits that the patients were entitled to, and Hometown Health has complied with all of its statutory and contractual obligations.

### B. Saint Mary's Failed to Properly Allege Exhaustion of Administrative Remedies.

Controlling caselaw in this Circuit requires Saint Mary's to exhaust the administrative remedies provided by the plans before seeking this court's review. *See, e.g.*, *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (concluding that as a matter of sound policy, federal courts should exercise their authority to enforce the exhaustion of remedies requirement in suits under ERISA); *Wojciechowski v. Charles River Lab'ys, Inc.*, No. 308-cv-00250-BES-RAM, 2009 WL 10708972, at *5 (D. Nev. Jan. 23, 2009) ("Failure to exhaust the plan's review process precludes court actions for benefits due under ERISA."). Saint Mary's fails to identify and plead the steps

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

it took to actually exhaust the administrative remedies available under the plans. Defendants' plan documents contain clear requirements for administrative appeals. *See* ECF No. 69, Ex. B at 91–101, 198–208, 284–92, 547–96. For example, one plan provides that "[n]o legal action may be brought to recover on the Plan: (1) more than three years from the time written proof of loss is required to be given, or (2) until the Plan's mandatory claim appeal(s) are exhausted." *Id.* at 302. Administrative exhaustion is not a trivial requirement, but one that completely eliminates Saint Mary's ability to proceed with this lawsuit.

Acknowledging this issue, Saint Mary's summarily alleges that it "has exhausted all remedies required under applicable law prior to this litigation, or was excused from so doing." ECF No. 69 ¶ 70. But its conclusory allegation does not suffice to plead exhaustion. *See Twombly*, 550 U.S. at 555; *RMP Enterprises LLC v. Connecticut Gen. Life Ins. Co.*, No. 9:18-CV-80171, 2018 WL 2973389, at *3 (S.D. Fla. June 13, 2018) ("The Court agrees with Defendants that Plaintiffs have not met their burden to allege that they either exhausted administrative remedies or that the administrative remedies would be futile. As a threshold issue, the Court cannot discern from the Complaint exactly what claims Defendants denied or what steps Plaintiffs took to appeal those claims."); *De Vito v. Local 553 Pension Fund*, 02-cc-4686, 2005 WL 167590, at *7 (S.D.N.Y. Jan. 26, 2005) ("Plaintiff's complaint alleges that he has exhausted his administrative remedies. This conclusory allegation, however, does not suffice."); *Med. Alls., LLC v. Am. Med. Sec.*, 144 F. Supp. 2d 979, 982-83 (N.D. Ill. 2001) (holding that plaintiff failed to sufficiently plead exhaustion where complaint alleged that plaintiff made numerous demands but contained no allegation regarding administrative appeals or procedures nor any allegation that plaintiff pursued all avenues of administrative relief).

Saint Mary's attempts to avoid its requirement to plead specific facts related to exhaustion by alleging that it was excused from exhausting its administrative remedies because "any such appeals have proved to be futile in previous dealings with HH." ECF No. 69 ¶ 24. In other words, it urges this Court to apply the futility exception to the general rule that a plaintiff bringing an ERISA claim in federal court must exhaust administrative remedies under the relevant benefit plan. *See Amato*, 618 F.2d at 568; *Diaz v. United Agric. Emp. Welfare Benefit*

1  *Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995) (recognizing the futility exception).

2  But "[t]he futility exception is narrow—the plan participant must show that it is certain

3  that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result

4  in a different decision." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F.

5  Supp. 3d 1110, 1179 (C.D. Cal. 2015) (quoting *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586

6  F.3d 1079, 1085 (8th Cir. 2009)). Saint Mary's does not show or allege that it is *certain* that its

7  claims will be denied. On the contrary, Saint Mary's does exactly what federal courts have

8  expressly rejected—it alleges, with no specificity or justification, that it doubts the success of

9  any appeal based solely on past alleged conduct. This allegation is conclusory, and the Ninth

10  Circuit has squarely rejected conclusory futility arguments in the context of administrative

11  exhaustion. *See Diaz*, 50 F.3d at 1485 (holding that "bare assertions of futility are insufficient to

12  bring a claim within the futility exception"); *Grenell v. UPS Health & Welfare Package*, 390 F.

13  Supp. 2d 932, 935 (C.D. Cal. 2005) (granting defendants' motion to dismiss because plaintiff

14  "completely fail[ed] to explain *why* an appeal of the claim denial would have been futile"). Saint

15  Mary's conclusory allegation that exhaustion would be futile does not show *why* administrative

16  review would have been a wasted effort, and therefore does not excuse Saint Mary's from its

17  obligation to exhaust the administrative remedies under the plans.

18      **C.**    **ERISA Preempts Saint Mary's State and Common Law Claims.**

19  ERISA preempts all state and common law claims that "relate to" an ERISA plan, i.e.,

20  claims that have "a connection with or reference to such a plan." *Providence Health Plan v.*

21  *McDowell*, 385 F.3d 1168, 1171-72 (9th Cir. 2004); 29 U.S.C. § 1144(a) (ERISA's preemption

22  provision). To determine whether a claim has a "reference to" an ERISA plan, courts focus on

23  "whether the claim is premised on the existence of an ERISA plan, and whether the existence of

24  the plan is essential to the claim's survival." *McDowell*, 385 F.3d at 1172. To determine whether

25  a claim has "a connection with" an ERISA plan, "courts in this circuit use a relationship test"

26  that emphasizes "the genuine impact that the action has on a relationship governed by ERISA,

27  such as the relationship between the plan and a participant." *Id.*; *see also Gen. Am. Life Ins. Co.*

28  *v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("The key to distinguishing between what

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

ERISA preempts and what it does not lies … lies in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee . . . , and between plan and trustee."). ERISA's expansive preemptive provisions are interpreted broadly to provide a uniform regulatory scheme. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).

Here, Saint Mary's state-law claims relate to the same alleged underpayments or non-payments that Saint Mary's contends Defendants were at fault for. Both common law and statutory claims can be preempted by ERISA. *Neurological Surgery, P.C. v. Aetna Health Inc.*, No. 219CV4817DRHARL, 2021 WL 26097, at *14 (E.D.N.Y. Jan. 4, 2021) (finding that the New York "Prompt Payment Law cause of action is also preempted by ERISA."). The test for preemption is not overly complicated. A state claim is completely preempted if "an individual, at some point in time, could have brought [the] claim under ERISA § [1132](a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions." *Marin Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 946 (9th Cir. 2009). Here, all of Plaintiff's claims are brought derivatively on behalf of the individual and therefore the first prong is readily satisfied. Additionally, the "independent legal duty" prong is satisfied where the insurer's obligations are dependent upon the individual's enrollment "in a qualifying benefits plan." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig*., 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012). Plaintiff's claims all must be construed in the context of the plan and plan documents and Defendants' obligations exist only in the context of providing benefits to the individuals under a health insurance plan. Saint Mary's attempt to assert both ERISA and state law claims for the same patients should be rejected. *Compare* ECF No. 69 at 21 (alleging that ERISA cause of action "Applies to Claims Arising From ERISA Plans") *with id.* at 22–27 (alleging that remaining causes of action apply to "All Claims" or "Emergency Claims" without regard to whether the claim arises from ERISA plans).

/ / /

/ / /

15

**D.     Any Remaining Claims Must Be Dismissed under FRCP 12(b)(6).**

**1.   Saint Mary's Fails to Plead Facts Sufficient to State an ERISA Claim.**

Even if this Court finds that Saint Mary's has standing to sue under ERISA despite Hometown Health's valid and enforceable anti-assignment provisions, Saint Mary's ERISA claim must still be dismissed. To recover under § 502(a)(1)(B), a plan participant or beneficiary must show that he and/or she is due benefits "under the terms of [the] plan." This requires a plaintiff to not only allege the existence of an ERISA plan, but to also identify "the provisions of the plan that entitle it to benefits." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, No. 10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) (dismissing plaintiff's ERISA claim because it contained conclusory allegations without reference to the terms of the controlling plans).

In its FAC, Saint Mary's summarily alleges that "HH has violated ERISA; specifically, HH has violated HH's duty to HH's insured by not paying claims which were covered, and by underpaying claims which were covered at a higher level than HH paid." ECF No. 69 ¶ 60.  It further alleges that "HH breached the terms of those patients' health insurance plans by failing to pay Saint Mary's" the rates required by the relevant plan documents, without identifying what that amount is let alone why the amount it received was less. *Id.* ¶ 75.

Saint Mary's seeks damages under ERISA "equal to the amount payable for those services under the terms of those patients' health insurance plans." *Id.* ¶ 75. But nowhere in the FAC does Saint Mary's identify any plan provisions that entitle the participants to the additional benefits Saint Mary's seeks in the form of damages—i.e., the full amount of billed charges. *See id.*; *see also* ECF No. 69, Ex. A (calculating total amount owed based on total billed charges).

In fact, Saint Mary's admits that it cannot even plead information specific to the plan "documents or funding arrangements for the Claims." ECF No. 69 ¶ 17. Plaintiff bears the burden of pleading specific facts that "rise above the speculative level," and failure to satisfy that burden justifies dismissal. *Dovenmuehle Mortg.*, 2020 WL 1290787, at *2 (quoting *Twombly*, 550 U.S. at 555); *see also Steelman v. Prudential Ins. Co. of Am.*, No. 06-2746, 2007 WL 2009805, at *6 (E.D. Cal. July 6, 2007) (explaining that a complaint must sufficiently allege

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

how defendant violated a plan term of ERISA to rise above speculative level). Saint Mary's conclusory and contradictory allegations are therefore insufficient to state an ERISA claim.

### 2. Saint Mary's Fails to State a Viable Claim for Breach of Contract.

Saint Mary's claim for breach of contract is based only on the provision of emergency services. Saint Mary's does not establish that the insured suffered any damages from the rate of compensation provided by Defendants to Saint Mary's. In its claim for breach of contract, Saint Mary's again relies on the assignments of rights from plan participants. It alleges that "[e]ach of the HH insureds for whom Saint Mary's provided emergency services validly assigned his or her health insurance plan benefits to Saint Mary's as part of their conditions of admission paperwork." ECF No. 69 ¶ 79. Hometown Health's anti-assignment provision renders the alleged assignments void, and Saint Mary's is therefore precluded from bringing a claim for breach of contract on behalf the plan participants.

Even in the absence of a valid and enforceable anti-assignment provision, the assignment provision on which Saint Mary's relies does not expressly assign the right to sue for breach of contract. Saint Mary's alleges that it received "signed assignments of **benefits** from the insureds." ECF No. 69 ¶ 21. Nothing in the assignment provision quoted in Paragraph 21 of the FAC specifically assigns to Saint Mary's the right to bring a claim for breach of contract under state law on the patients' behalf, as alleged in Count 2. *Id.* ¶ 79 (alleging in its state-law claim for breach of contract that each patient "validly assigned his or her health insurance plan benefits to Saint Mary's . . . . Thus, Saint Mary's stands in the insured's shoes and has standing to assert all rights that HH owes to each insured under his or her health insurance plan.").

Further, "[i]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (quoting Restatement (Second) of Contracts, § 324 (1981)). Saint Mary's broad assertion that the assignment provision assigned to it the right to bring all its state law and common law claims, without any allegation that the parties intended for such a broad and far-reaching assignment, must therefore be rejected.

/ / /

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

### 3. Saint Mary's Fails to State a Viable Claim for Contract Implied-in-Law.

Saint Mary's allegations regarding an implied-in-fact contract are self-defeating. Saint Mary's alleges that Defendants "demonstrated its acknowledgement of a duty to pay for the majority of the services by paying or causing payment of something on them." ECF No. 69 ¶ 87. Contrary to Saint Mary's interpretation, this course of conduct demonstrates that Defendants *never* agreed to pay the rates requested by Saint Mary's by *never* paying the rates requested by Saint Mary's. To claim that there was a course of conduct – which is the basis of this lawsuit – that created a contract on different terms whereby Defendants agreed to Saint Mary's rates is simply preposterous. *Emergency Grp. of Ariz. Pro. Corp. v. United Healthcare Inc*., 448 F. Supp. 3d 1077, 1085 (D. Ariz. 2020), *reversed on other grounds* (noting that an implied-in-fact contract was a stretch as "the parties here were unable to reach agreement on a provider agreement, which is why the Plaintiffs are out-of-network providers").

### 4. Saint Mary's Did Not Confer a Benefit on Hometown Health, so Its Unjust Enrichment/Quantum Meruit Claim Fails as a Matter of Law.

A plaintiff seeking quantum meruit under an unjust enrichment theory must allege that it conferred a benefit on the defendant. *Topaz Mut. Co., Inc. v. Marsh*, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (listing the essential elements of unjust enrichment); *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012) (explaining that "a pleading of quantum meruit for unjust enrichment does not discharge the plaintiffs obligation to demonstrate that the defendant received a benefit from services provided"). Absent an allegation or evidence that plaintiff bestowed a benefit or "ascertainable advantage" on defendant, plaintiff cannot recover quantum meruit under an unjust enrichment theory. *Certified Fire*, 128 Nev. at 383, 283 P.3d at 258; *see e.g.*, *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, Case No. 2:10–cv–00661–GMN–RJJ, 750 F. Supp. 2d 1180, 1197 (D. Nev. 2010) (finding that plaintiff failed to allege that the defendant unjustly retained any benefit that plaintiff bestowed upon them and therefore dismissing plaintiff's unjust enrichment claim); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, Case No. 214–cv–01975–KJD–NJK, 2019 WL 3936387, at *2 (D. Nev. Aug. 19, 2019) (same).

Saint Mary's alleges that "Hometown Health received the benefit of having its healthcare obligations to its plan members discharged and its members received the benefits of the medical care provided to them by Saint Mary's." ECF No. 69 ¶ 93. But Hometown Health, as the insurer, does not have an obligation to provide healthcare services under its plans, so the medical services provided by Saint Mary's upon patients do not confer a benefit on Hometown Health. Any benefit conferred was on the patients—not Hometown Health. *See Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) (explaining that "[t]he insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit."). Saint Mary's admits as much when it concedes that "Saint Mary's rendered valuable emergency services *to HH's members*" and that Hometown Health's "*members* received the benefit of the medical care provided to them by Saint Mary's." ECF No. 69 ¶¶ 92-93 (emphasis added). Hometown Health has not received a benefit from Saint Mary's, and therefore Saint Mary's has not—and cannot—plead the essential elements of its quantum meruit/unjust enrichment claim.[7]

Further, Hometown Health did not directly request that Saint Mary's perform the medical services—the patients requested the services. In this context, a "[p]laintiff cannot recover under a theory of unjust enrichment or quantum meruit if the services the plaintiff provided were done at the behest of someone other than the defendant." *See Pekler v. Health Ins. Plan of Greater N.Y.*, 67 A.D.3d 758, 760 (N.Y.S.2d 2009) ("As the complaint alleges that medical services were performed by the plaintiff doctors at the behest of their patients, no claim in quantum meruit can be asserted against the defendants."). Saint Mary's fails to allege that Hometown Health, rather than the patients, requested the medical services, and therefore further fails to sufficiently plead its unjust enrichment/quantum meruit claim.

---

[7] The overwhelming authority supports this conclusion. *E.g.*, *MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17–cv–01909 (KAD), 2019 WL 2015949, at *10 (D. Conn. May 7, 2019) (listing cases where "courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds."); *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16–cv–00266–BSM, 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018) ("[A] number of courts have found that medical providers cannot bring unjust enrichment claims against insurers because patient-subscribers, and not insurers, are the ones receiving benefits from the provider's services.").

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

Because Saint Mary's failed to adequately allege that it conferred a benefit on Hometown Health and further failed to allege that Hometown Health requested the medical services, Saint Mary's has failed to state a viable quantum meruit/unjust enrichment claim, thereby warranting dismissal. *U.S. Bank Nat'l Ass'n v. Saticoy Bay LLC*, No. 216–cv–01346–JCM–CWH, 2017 WL 277494, at *4 (D. Nev. Jan. 19, 2017) (dismissing plaintiff's unjust enrichment claim because the "alleged benefits were not benefits plaintiff conferred on defendant"); *Carrington Mortg. Servs., LLC v. SFR Invs. Pool 1, LLC*, No. 215–cv–1377–JCM–NJK, 2017 WL 537192, at *6 (D. Nev. Feb. 8, 2017) (dismissing plaintiff's unjust enrichment claim where plaintiff's complaint did not sufficiently allege that *plaintiff* conferred a benefit on *defendant* and merely provided "conclusory allegations, without sufficient facts in support thereof, that the HOA benefited from the foreclosure sale and CMS's property-related payments").

### 5. Claim – Nevada Emergency Care Statutes.

Saint Mary's alleges that Defendants had a duty to "provide such coverage of emergency care to out-of-network providers at the usual and customary rate" and violated NRS 439B.748 by not paying this rate to Saint Mary's. ECF No. 69 ¶ 101. Saint Mary's failed to accurately restate the legal obligation created by NRS 439B.748(2), which actually provides that:

> *If an out-of-network emergency facility did not have a provider contract as an in-network emergency facility within the 24 months immediately preceding the date on which the medically necessary emergency services were rendered to a covered person, the third party that provides coverage to the covered person shall pay to the out-of-network emergency facility **an amount that the third party has determined to be fair and reasonable as payment for the medically necessary emergency services**, except for any copayment, coinsurance or deductible that the coverage requires the covered person to pay for the services when provided by an in-network emergency facility.*

Any obligation for Defendants was not to pay the "usual and customary rate" but to pay an amount that Defendants determined "to be fair and reasonable." NRS 439B.748(2). Saint Mary's cannot state a claim based on the accurate restatement of the statute. Furthermore, as this statute only became effective on January 1, 2020, it is beyond dispute that Saint Mary's claims are preempted by the statutory arbitration process in NRS 439B.754.

### 6.   Claim – Violation of Nevada Prompt Payment Statutes.

Finally, Saint Mary's alleges that Hometown Health violated NRS 683A.0879, Nevada's prompt-pay statute for health insurance coverage. ECF No. 69 ¶¶ 104–07. Under NRS 679B.120(3), which is contained within NRS Title 57, the Nevada Insurance Commissioner has express authority to "[e]nforce the provisions of [the Nevada Insurance] Code." And under NRS 686A.015(1), which is also contained within NRS Title 57, the Insurance Commissioner has "exclusive jurisdiction in regulating the subject of trade practices in the business of insurance in this state." The Nevada Supreme Court has interpreted these two provisions in Title 57 to preclude a private right of action under Nevada's prompt-pay statute for casualty insurance. *Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 573, 170 P.3d 989, 995 (2007) ("Given the [Nevada Department of Insurance's] exclusive original jurisdiction over this matter, we conclude that no private right of action exists under NRS 690B.012."); *see also Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1255 (D. Nev. 2016) (citing *Thorpe* and finding that "[t]he Nevada Supreme Court has clearly held that there is no private right of action in the district court under the statute" (internal quotation marks omitted)). NRS 683A.0879 is similarly contained within Title 57, thereby precluding a private right of action under Nevada's prompt-pay statute.

Even if this Court finds that Saint Mary's can sue under Nevada's prompt-pay statute, despite the controlling caselaw and Saint Mary's failure to sufficiently allege exhaustion of remedies, Saint Mary's conclusory allegations are insufficient to state a viable claim for relief. Saint Mary's generally alleges that "HH has taken far longer than 30 days to adjudicate and pay Saint Mary's clean claims, even when it underpaid those claims." ECF No. 69 ¶ 106. Saint Mary's does not allege any specific facts about the allegedly late payment of the claims, like which of the 690 claims were allegedly late, how long the alleged delay was, whether Hometown Health requested additional information, or whether and to what extent Saint Mary's appealed the decisions. Instead, Saint Mary's claim is merely a "formulaic recitation of the elements of a cause of action," void any specific allegations that could reasonably put Hometown Health on notice of the allegations. *See Dovenmuehle*, 2020 WL 1290787, at *5-6.

McDONALD ⚖ CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

## V. CONCLUSION

For all of the foregoing reasons, Hometown Health respectfully requests that the Court dismiss Plaintiff's FAC in its entirety, with prejudice.

Dated: January 7, 2022.

McDONALD CARANO LLP

/s/ *Adam Hosmer-Henner*

Adam Hosmer-Henner, NV Bar No. 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
 (775) 788-2000

*Attorneys for Defendants Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc.*