Adam Hosmer-Henner, Esq., NSBN 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

*Attorneys for Defendants Hometown Health Providers
Insurance Company, Inc. and Hometown Health Plan, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PRIME HEALTHCARE SERVICES- RENO, LLC D/B/A SAINT MARY'S REGIONAL MEDICAL CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>HOMETOWN HEALTH PROVIDERS INSURANCE COMPANY, INC., and HOMETOWN HEALTH PLAN, INC.<br><br>Defendants. | Case No: 3:21-CV-00226-MMD-CLB<br><br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Hometown Health Providers Insurance Company, Inc. and Hometown Health Plan, Inc. (collectively "Hometown Health") submit this reply in support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 73 ("Motion"), and in reply to the Response filed by Plaintiff Prime Healthcare Services – Reno, LLC d/b/a Saint Mary's Regional Medical Center ("Saint Mary's"), ECF No. 74. This Motion is based on the below memorandum of points and authorities, the pleadings and papers on file, and such other matters that the Court may wish to consider.

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Saint Mary's categorically announces that "just days ago, the Ninth Circuit . . . reject[ed] another insurer's attempt to avoid payment of an out-of-network provider's necessary care, and formally invalidat[ed] HH's position here." ECF No. 74 at 1 (citing *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, No. 20-56122, 2022 WL 129139 (9th Cir. Jan. 14, 2022)). Saint Mary's completely mischaracterizes and overstates *Bristol*, where the Ninth Circuit described its decision thusly: "Our ruling today is a modest one: We hold only that the first assignee as a successor-in-interest through bankruptcy proceedings who owns all of one healthcare provider's health benefit claims has derivative standing." 2022 WL 129139, at *5. *Bristol* has no relevance to this case and it did not determine whether the assignments from the patients to the predecessor-in-interest were valid. In fact, the "crux of the disagreement" in *Bristol* was whether the provider "entered into an enforceable agreement with Cigna to treat patients covered by Cigna through a series of 'verification' and 'authorization' phone calls that Sure Haven claims it relied on in providing medical services." *Id.* at *1. Unlike *Bristol* and many of the other authorities Saint Mary's relies on, Saint Mary's is not alleging that it reached an agreement with Hometown Health *before* providing services but that it has a guaranteed right to receive its billed charges without any agreement with Hometown Health.

Saint Mary's continues to attempt to cobble together a pleading involving 690 claims, 562 of which were allegedly underpaid (based on some unprovided calculation) and 128 of which were denied. While Hometown Health is not contending that there are *no circumstances* in which it could be required to make a payment to Saint Mary's (indeed Hometown Health paid over 81% of the claims in question), Saint Mary's is taking the extreme position that Hometown Health is required to pay the full amount charged for each and every out-of-network claim. The problem for Saint Mary's, and for the Court, is that by alleging this many claims, under this many theories, Saint Mary's cannot actually state a plausible or identifiable claim for relief for any of the claims as it fails to include sufficient information showing a wrong was committed or that it has standing to seek a remedy.

## II.    ARGUMENT

### A.    Saint Mary's Fails to Plead the Existence of Valid Assignments.

Without citing any caselaw, Saint Mary's tries to frame Hometown Health's arguments regarding the assignment provisions as "evidentiary questions" that "raise fact issues to be resolved through discovery." ECF No. 74 at 4. The accurate language of the assignment provisions on which Saint Mary's relies is not an "evidentiary question." Saint Mary's must establish on the face of its complaint that is has standing to bring this suit. *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) (explaining that "a dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for failure to state a claim"). Despite being the only party in this action with access to the purported assignment provisions, Saint Mary's still fails to cite specific language from or attach the purported assignments.

Saint Mary's argues that Rule 8 does not require it to include the specific language from all 690 provisions. ECF No. 74 at 5. While this may be true, Saint Mary's should be required to identify and cite the actual language from at least one assignment provision that encompasses its asserted claims. *Cf. TML Recovery, LLC v. Cigna Corp.*, 2021 WL 3730168, at *3 (C.D. Cal. Jul. 26, 2021) (determining language of assignment Plaintiffs actually received and finally alleged in a second amended complaint, that "[Plaintiff] has been appointed by me to act as my representative on my behalf in any proceeding that may be necessary to seek payment from [Cigna]," encompassed their claims). Saint Mary's fails to meet even this minimal requirement, and instead includes general (and selectively excerpted) language. ECF No. 69 ¶ 21. Further, Saint Mary's admits in its FAC that the assignment provisions are not all identical. *Id.* Where there are different assignment provisions with different language, Saint Mary's must plead specific facts from each type of provision to provide the opportunity not only for Hometown Health to respond, but also for the Court to determine whether the asserted claims are within the assignment's scope. Saint Mary's cites no caselaw permitting it to rely on a vague practice of obtaining assignments with "similar legal effect" to proceed with 690 separate claims. ECF No. 74 at 5 ("Saint Mary's pleaded that its practice was to obtain an assignment for each of its patients."). At a minimum, Saint Mary's should be willing to actually make declarative

2

allegations as to whether it *did* receive an assignment for each of the claims and what that assignment said.

To remedy this shortcoming, Saint Mary's could have attached an assignment to its FAC or quoted an actual assignment in full. But for the second time, it failed to do so. Ninth Circuit caselaw requires that assignments be construed as a whole. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983). Saint Mary's selectively excerpted language makes it impossible to comply with that mandate.

Even assuming that the general language included in Saint Mary's FAC is sufficient, the quoted language assigns only the right to "direct payment," not the right to enforce a contract. ECF No. 69 ¶ 21. Saint Mary's argues that implied in the right to receive payment is the right to sue. ECF No. 74 at 6. But none of the cases Saint Mary's cites address a situation with similar assignment language or where, like here, the anti-assignment provision expressly *prohibits* the assignment of the right to sue. *See* ECF No. 69, Ex. B at HTH000285. Without a valid assignment, Saint Mary's does not have standing to bring its claims.[1]

**B.      Hometown Heath's Anti-Assignment Provisions Bar Plaintiff's Claims.**

Saint Mary's acknowledges that anti-assignment clauses are valid and enforceable under Ninth Circuit caselaw, but suggests that Hometown Health cannot rely on the anti-assignment provisions of four plans to seek dismissal of 690 claims. ECF No. 74 at 9. Hometown Health is obviously not contending these four plans bar every claim at issue, but is arguing that they bar the claims brought under those plans and that similar anti-assignment clauses are present for each potential claim—just as Saint Mary's cites just a typical assignment clause and alleges that

---

[1] Saint Mary's tries to stretch the Ninth Circuit's limited holding in *Bristol* to "invalidat[e] HH's position here." ECF No. 74 at 1. But *Bristol* addresses the "unique circumstance" where patients *validly assign* their benefits to a healthcare provider, and a successor-in-interest then purchases those claims in a bankruptcy proceeding. *Bristol,* 2022 WL 129139, at *4. The only question raised in *Bristol* was whether the Court should extend derivative standing to a party two levels removed from the direct beneficiary. The validity of the initial assignment of benefits between the patients and healthcare provider was not at issue, and the Court did not address the sufficiency of plaintiff's pleading or the effect of anti-assignment provisions. Rather, the Court assumed there was a valid assignment to begin with, which formed the basis for the Court's reasoning. This does not apply here, and Saint Mary's use of *Bristol* to conclude that "Congress's purpose behind ERISA was to prevent *this very situation*" is entirely misleading. ECF No. 74 at 6 (emphasis added).

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

clauses with "similar language" exist for all patients. ECF No. 69 ¶ 21. This argument itself shows that Saint Mary's is attempting to slip past the pleading stage into discovery by vaguely identifying its assignments and claims, but then demanding discovery on the anti-assignments. Even so, Ninth Circuit caselaw does not require a defendant cite every anti-assignment provision to obtain dismissal. *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 872 (9th Cir. 2017) (finding defendant's submission of one exemplar plan with anti-assignment language sufficient to defeat any assignment).

The anti-assignment provisions here are valid and enforceable. In Plan #3, which Saint Mary's concedes is the only ERISA plan specifically identified in the FAC, Saint Mary's focuses only on the language regarding the assignment of benefits payable under the plan, while ignoring the more relevant language appearing in the same "Assignments to Providers" subsection that expressly prohibits assignment of the "right to sue to recover benefits under the Plan, or enforce rights due under the Plan or any other causes of action that he may have against the Plan or its fiduciaries." ECF No. 69, Ex. B at HTH000285. Saint Mary's quotes additional language from Plan #3, but this language too relates only "to benefit[s] payable under the provisions of the Plan," refers to the section prohibiting assignment of the right to sue, and deems any attempt to so assign "will be void." *Id.* at HTH000300; ECF No. 74 at 10. Saint Mary's fails to address the dispositive language, which prohibits assignment of the right to sue.

Saint Mary's argues that the remaining plans are "ineffective" because they "fail[ ] to make clear that [they are] intended to prevent assignments to health care providers." ECF No. 74 at 10. An anti-assignment provision need not expressly clarify that it applies to health care providers to be enforceable. Saint Mary's continues to rely on Fifth Circuit caselaw to support its position, but the Ninth Circuit has repeatedly found anti-assignment provisions almost identical to those in Hometown Health's plans enforceable.[2] *See, e.g.*, *Spindex Physical*

---

[2] ECF No. 69, Ex. B HTH000102, HTH000209 ("You may not assign this EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without our prior written consent."); *id.* at HTH000619 ("The benefits provided under this Evidence of Coverage are for the personal benefit of the member and cannot be transferred or assigned. Any attempt to assign this contract will automatically terminate all rights under this contract.").

1   *Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014).

2   (enforcing an anti-assignment clause stating: "You may not assign your Benefits under the Plan

3   to a non-Network provider without our consent.").

4           **C.      Hometown Health Did Not Waive Its Anti-Assignment Provision.**

5           Mere silence regarding a plan's anti-assignment provisions does not constitute waiver.

6   *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 330 (E.D.N.Y. 2017). But

7   consistent with Saint Mary's pattern and practice of circumventing its pleading requirements,

8   that is all that Saint Mary's has alleged. ECF No. 69 ¶ 64. Nowhere does Saint Mary's allege

9   any facts inferring that Hometown Health intentionally or deliberately withheld information

10  about the anti-assignment provisions during the administrative process. In fact, its FAC does not

11  provide any specific facts about that process or communications exchanged therein. Similar

12  deficiencies have resulted in dismissal in this Circuit. See *e.g.*, *Sasson Plastic Surgery, LLC v.*

13  *UnitedHealthcare of N.Y., Inc.*, 2021 WL 1224883, *8 (E.D.N.Y. Mar. 31, 2021) (finding that

14  plaintiff's failure to allege facts allowing an inference that defendant waived the anti-assignment

15  provision warranted dismissal and precluded additional discovery). In fact, the allegations

16  support non-waiver as Hometown Health may permit the assignment of payments (it did make

17  payments to Saint Mary's) but does not permit the assignment of the right to sue (Saint Mary's

18  does not allege that it previously sued Hometown Health).

19          To avoid dismissal, Saint Mary's cites two cases that purportedly stand for the

20  proposition that this Court's review is "limited to the actual basis on which the administrator

21  denied the claim." ECF No. 74 at 11-12. Saint Mary's never alleged what the "actual basis on

22  which the administrator denied the claims," making the analysis under *Harlick* and *Beverly Oaks*

23  impossible. Further, Saint Mary's has not alleged any facts that are remotely similar to those in

24  *Harlick* and *Beverly Oaks*. In *Harlick v. Blue Shield of California*, the Court addressed a

25  situation where a claims administrator provided one reason during the administrative process to

26  deny benefits, but later alleged an alternative reason in court. 686 F.3d 699, 720 (9th Cir. 2012).

27  There, the health care provider included specific facts about the claims administrator's initial

28  reason for denying the claims and the conversations that occurred during the administrative

McDONALD ⚫ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR ⚫ RENO, NEVADA 89501
PHONE 775.788.2000 ⚫ FAX 775.788.2020

process. *Id.* Similarly, in *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, the health care provider pleaded specific facts supporting waiver, including that it indicated on its claim form submitted to Blue Cross that it was acting as its patient's assignee. 983 F.3d 435, 440 (9th Cir. 2020). Here, Saint Mary's provides none of these facts, and instead alleges generally that over a five-year period, it "provided Hometown Health with notice that Saint Mary's is the assignee" for the individual patients. ECF No. 69 ¶ 63. For Saint Mary's waiver argument to be persuasive, however, Saint Mary's had to allege that Hometown Health had notice that Saint Mary's was the assignee not just of the right to receive payment but also of the right to sue. Saint Mary's also failed to allege any facts about the reason Hometown Health initially denied the benefit claim, its knowledge about the anti-assignment provisions, and its intent to relinquish this defense.

Finally, Saint Mary's cannot show that Hometown Health's previous "silence" about the anti-assignment provisions is "inconsistent with an intent to enforce" them, as *Beverly Oaks* requires. 983 F.3d at 441 (internal citation omitted). The assignment of receipt of benefits is not the same as the assignment of the right to sue, a distinction that Hometown Health's anti-assignment provisions make clear. *See* ECF No. 69, Ex. B at HTH000285.

### D.   The Anti-Assignment Provision Is Not Inconsistent with NRS 689A.135.

While NRS 689A.135 permits assignment of benefits in the health insurance context, nothing in NRS 689A.135's language prohibits parties from freely entering into contracts conditioning such assignments on written consent. Hometown Health's anti-assignment provision permits parties to assign rights to benefits so long as the assignee obtain written consent. ECF No. 69, Ex. B at HTH000102, 209. Unsurprisingly, Saint Mary's fails to allege that it obtained written consent to assign the benefits, or even attempted to do so. Further, NRS 698A.135 relates only to the assignment of *benefits* under a specific plan. It does not expressly allow for the assignment of the right to sue, which implicates the separate and distinct question of standing. Hometown Health's anti-assignment provisions that prohibit the assignment of the right to sue are therefore not inconsistent with NRS 689A.135.

/ / /

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

### E.      Saint Mary's Failed to Identify an Actual Injury.

Saint Mary's concedes that there is no actual injury to the patients/assignees. ECF No. 74 at 8. Saint Mary's relies upon *Spinedex* for the proposition that it inherited the causes of action as they stood at the time of assignment and was subsequently injured by the "deprivation of its rights to those benefits when the insurer failed to pay." 770 F.3d at 1297. Yet *Spinedex* bases this conclusion on the premise that if "the beneficiaries had sought payment directly from their Plans for treatment provided by Spinedex, and if payment had been refused, they would have had an unquestioned right to bring suit for benefits." 770 F.3d at 1291. If the individual patients here had a right to sue – at the time of assignment – then *Spinedex* perhaps would counsel that this right could be assigned. But Saint Mary's fails to identify or plead any injury to the patient, alleging only that "[Hometown Health] was required to pay Saint Mary's" and stating in a conclusory fashion that Saint Mary's was injured "by a denial of its assigned rights when [Hometown Health] underpaid it." ECF No. 74 at 8.

Given the number of claims and plans, it is impossible to identify exactly what injury is actually in play. Specifically, the injury question is not whether Saint Mary's bills are reasonable or whether they would like to receive a higher reimbursement rate. Instead, Saint Mary's had to "allege . . . distinct injury . . . such as an obligation to pay part of DaVita's billed charges that exceeded the reimbursement amount." *Star Dialysis, LLC v. WinCo Foods Emp. Benefit Plan*, 401 F. Supp. 3d 1113, 1138 (D. Idaho 2019). For example, Saint Mary's includes two anecdotes where Hometown Health paid 11% of billed charges and 8% of billed charges. ECF No. 69 ¶¶ 41, 52. Certainly, Saint Mary's does not and cannot seriously contend that Hometown Health has an obligation to pay 100% of Saint Mary's billed charges, which "bear little relationship to market rates [and] are usually highly inflated." Price Transparency Requirements for Hospitals to Make Standard Charges Public 84 Fed. Reg. 65,524, 65,542 (Nov. 27, 2019). Thus, the question for the Court – which neither it nor Hometown Health has a realistic ability to answer given the deliberately ambiguous pleading – is what injury was or could have been suffered by the patients as there is no allegation or claim that they would have been financially responsible for the difference between what Hometown Health paid and what Saint Mary's charged. And

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

there is no allegation that there was a contractual right to have Hometown Health pay more than what it paid or that members would be financially liable if Hometown Health did not pay more.

### F.   Saint Mary's Failed to Exhaust its Administrative Remedies.

The Hometown Health plans attached to the FAC all contain a clear administrative process that, under Ninth Circuit law, Saint Mary's must exhaust before bringing its claims to court. ECF No. 69, Ex. B at HTH000091–101, 198–208, 284–92, 547–96. Saint Mary's alleges that it was not required to plead exhaustion of remedies because it is an affirmative defense. Saint Mary's own authority proves otherwise. *In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthCare*, 2020 WL 8457488 at *5 (C.D. Cal. Nov. 18, 2020) (explaining that where failure to exhaust is "clear on the face of the complaint," dismissal is warranted). There, the Court rejected plaintiffs bare allegations that they "made all reasonable efforts to have Defendants adjudicate their claims" and that they "have exhausted, or by law are deemed to have exhausted, their administrative remedies under the ERISA plans." *Id.* The Court also rejected Plaintiff's futility argument, explaining that "simply claiming futility without any other factual basis showing futility is not enough." *Id.* (rejecting plaintiff's general allegations that failed to analyze the particular details of the administrative process). The Court therefore dismissed the ERISA claims for failure to adequately plead exhaustion. Saint Mary's pleading is similarly deficient, *see* ECF No. 69 ¶¶ 67-70, warranting dismissal under its own caselaw.

### G.   Saint Mary's Statutory Claims are Not Saved from Preemption.

Saint Mary's erroneously argues that its statutory claims are saved from preemption under the savings clause in 29 U.S.C. § 1144. State law claims falling within ERISA's comprehensive scope are preempted under 29 U.S.C. § 1132 "as conflicting with the intended exclusivity of the ERISA remedial scheme, *even if* those causes of action would not necessarily be preempted by section [1144](b)." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (emphasis added) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004)). Thus, the savings clause is irrelevant.

The only other state law claim that Saint Mary's disputes is preempted by ERISA is the quantum meruit claim, which it purports to assert independently of the ERISA insureds' rights.

However, a state law cause of action is "completely pre-empted by ERISA § [1132](a)(1)(B)" where (1) "an individual, at some point in time, could have brought his claim under ERISA § [1132](a)(1)(B), and" (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Here, the first prong is indisputably satisfied as Saint Mary's asserts a claim under ERISA on behalf of the individual, the basis of which mimics that of all its claims—i.e., alleged underpayments or non-payments. As for the "no independent legal duty" prong which Saint Mary's does not dispute, any legal duties at issue in this action are dependent upon and derive only from Hometown Health's obligation to provide benefits to its members under their respective plans. *See In re WellPoint, Inc. Out-of-network UCR Rates Litig.*, 903 F. Supp. 2d 880, 930 (C.D. Cal. 2012). Because ERISA is the exclusive remedy for any patients insured under ERISA plans, Saint Mary's cannot assert both ERISA and state and common law claims for those ERISA-insured patients.

### H.   Saint Mary's Remaining Claims Fail.

Saint Mary's had the opportunity to amend its FAC with the benefit of previewing Hometown Health's arguments and obtaining limited discovery. Instead of using this insight, evidence, and time to sufficiently plead its 690 claims, Saint Mary's again fails to plead specific allegations about the critical factual differences between the claims—including the different types of plans, medical procedures, entitlement to reimbursement under the plan, and assignment provisions that vary among the 690 alleged claims. This deficiency is fatal to Saint Mary's FAC.

#### 1.   Saint Mary's Failed to Plead Facts Sufficient to State an ERISA Claim.

Saint Mary's does not dispute that to state a viable ERISA claim, it must sufficiently establish the existence of ERISA plans and identify the specific provisions in those plans entitling it to benefits. *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011). Saint Mary's attempts to overcome these obvious pleading deficiencies by pointing to the four benefit plans attached to the FAC as "confirm[ing]" Saint Mary's previous, general statement that all Hometown Health's insurance plans "require coverage of medically necessary out-of-network services at the 'usual and customary' rate or at a rate derived therefrom." ECF No. 69 ¶ 28. Saint Mary's cannot rely on

9

these four benefit plans to satisfy its pleading requirements.  Rather, Saint Mary's must identify the express language in each plan that confers a benefit, which patients are governed by which plans, and "actually allege that the specific services they provided to the patients at issue were covered under the terms of the relevant plans or describe the plan terms that would support such coverage." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group. Inc.*, 99 F. Supp. 3d 1110, 1144 (C.D. Cal. 2015). Similar deficiencies have warranted dismissal. *Id.* (requiring plaintiff to plead facts specific to each plan).[3]

### 2.     Saint Mary's Fails to Plead a Viable Implied-in-Law Contract Claim.

Instead of responding to Hometown Health's argument, Saint Mary's simply repeats it general allegation that the "verifications, authorizations, and representations obtained from [Hometown Health] regarding each of the patients" create an implied-in-law contract. ECF No. 69 ¶ 86. The caselaw does not support Saint Mary's position that its allegations are sufficient to plead mutual assent. *Stanford Health Care v. Blue Cross Blue Shield of N.C., Inc.*, 2022 WL 195847, at *6 (N.D. Cal. Jan. 21, 2022) (listing cases dismissing implied contract claims based solely on verification of patient benefits, authorization, and partial payment). Instead, Saint Mary's needed to allege additional facts, like "specific names and dates of the calls between Plaintiff and Defendant regarding payment for Patient's services, what the services would be, what was said, and by whom—including that Defendant agreed to pay a specific price." *Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018).

Although Hometown Health and Saint Mary's allegedly had many discussions regarding rates, Hometown Health never agreed to pay the rates requested by Saint Mary's, and thus never before paid those rates—that's why Saint Mary's is an out-of-network provider. *See Brand*

---

[3] *See also Simi Surgical Ctr., Inc v. Conn. Gen. Life Ins. Co.*, No. 2:17-CV-02685-SVW-AS, 2018 WL 6332285, at *3 (C.D. Cal. Jan. 4, 2018) (holding failure to allege specific facts "for each plan" warranted dismissal); *Glendale Outpatient Surgery Ctr. v. United HealthCare Servs. Inc.*, No. 2:18-CV-10550-SVW-SS, 2019 WL 8888305, at *1 (C.D. Cal. Mar. 26, 2019) (dismissing plaintiff's complaint "lump[ing] together 42 separate causes of action under [ERISA]" and requiring plaintiff to file each claim separately), *aff'd,* 805 F. App'x 530, 531 (9th Cir. 2020).

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

*Tarzana Surgical Inst., Inc. v. Blue Cross & Blue Shield of Ill.*, 833 F. App'x 714, 715 (9th Cir. 2021) (concluding that a "[Plaintiff's] description of what it was 'typically' told by Defendant is not 'enough to raise a right to relief above the speculative level'" Rule 12(b)(6) standard).  The Nevada Supreme Court's recent unpublished order does change that fact. ECF No. 74 at 19 (citing *United Healthcare Inss Co. v. Eighth Jud. Dist. Ct.*, No. 81680, 2021 WL 2769032 (Nev. July 1, 2021) (unpublished order)). The issue in *United Healthcare* reached the Court on a writ petition, so a more stringent standard of review applied, not to mention that Nevada Rule 12(b)(5)'s standard is less stringent than under Federal Rule 12(b)(6); the order did not address the sufficiency of the allegations in the complaint, and instead addressed the ultimately factual determination; and because the order is unpublished, it is not binding authority.

### 3.    Saint Mary's Fails to Plead its Equitable Claims.

In seeking relief for unjust enrichment/quantum meruit, Saint Mary's assumes, without providing any support, that the assignment provision also assigned it the right to seek equitable relief on behalf of the assignor. Saint Mary's argument is unsupported by the narrow language of the assignment provisions and ERISA caselaw. Section 1132(a)(1)(B) provides a cause of action "to recover benefits due" under an ERISA plan. The mere assignment of benefits under § 1132(a)(1)(B), however, does assign the right to sue under *other* provisions of ERISA, such as § 1132(a)(3) (allowing for equitable relief). Rather, to determine the appropriate scope of the assignment, courts in this circuit must "look at the language and context of the authorization," *DaVita*, 981 F.3d at 679, and must "enforce the intent of the parties," *Klamath–Lake*, 701 F.2d at 1283. *E.g.*, *In re WellPoint,* 903 F. Supp. 2d at 896 (finding that the assignment provision's language was insufficient to assign rights to sue for equitable relief).

Saint Mary's assignment provision is limited to the right to collect payment for benefits. ECF No. 69 ¶ 21. Its language shows that the patients intended to assign Saint Mary's only the right to bring suit for payment of benefits. The Ninth Circuit in *DaVita* held that substantially similar assignment language did not assign equitable claims. 981 F.3d at 679. It concluded that "[t]he wording of the assignment itself suggests only an assignment of a claim for benefits." *Id.* Finally, caselaw published few days ago confirms that a plaintiff in Saint Mary's situation "can

McDONALD ⁂ CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

11

only plausibly allege a direct benefit to [patients], which courts have consistently found not to be sufficient for a quantum meruit claim." *Stanford Health Care,* 2022 WL 195847, at *6 (dismissing Stanford's quantum meruit claim and rejecting leave to amend because it "sees no way for Stanford to get around the gaps in its quantum meruit allegations through amendment").

## I.    Saint Mary's Request to Replead Should Be Denied.

In its last attempt to save its complaint, Saint Mary's asks this Court to again delay ruling on Hometown Health's Motion. The parties have now briefed these issues twice and Saint Mary's had a golden opportunity to amend its complaint knowing exactly what Hometown Health would argue in favor of dismissal. Yet Saint Mary's repeated the same mistakes and submitted a similarly deficient FAC. This shows that even if this Court grants Saint Mary's leave to amend, Saint Mary's cannot remedy the deficiencies in its FAC, for if it could, it surely would have done so when given the opportunity. For these and the reasons Hometown Health raised in opposition to Saint Mary's Motion for Leave to Amend Complaint (ECF No. 61), this Court should deny Saint Mary's request to further delay this proceeding.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.

Dated: January 28, 2022.

McDONALD CARANO LLP

/s/ *Chelsea Latino*
Adam Hosmer-Henner, NV Bar No. 12779
Chelsea Latino, Esq., NBSN 14227
Jane Susskind, Esq., NSBN 15099

*Attorneys for Defendants*