UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – RENO, LLC, d/b/a SAINT MARY'S REGIONAL MEDICAL CENTER,<br><br>   Plaintiff,<br>   v.<br><br>HOMETOWN HEALTH PROVIDERS INSURANCE COMPANY, INC., *et al*.,<br><br>   Defendants. | Case No. 3:21-cv-00226-MMD-CLB<br><br>ORDER |

## I.     SUMMARY

Plaintiff Prime Healthcare Services – Reno, LLC ("Saint Mary's") sued Defendants Hometown Health Providers Insurance Company, Inc., and Hometown Health Plan, Inc. (collectively, "Hometown Health"), for failing to pay or underpaying for medically necessary services that Saint Mary's provided to patients insured by Hometown Health. (ECF No. 67 at 2.) Before the Court is Hometown Health's motion to dismiss (ECF No. 73 ("Motion"))[1] Saint Mary's First Amended Complaint ("FAC")[2] under Federal Rule of Civil Procedure 12(b)(6). Because Saint Mary's has demonstrated standing to sue Hometown Health, and has sufficiently pleaded facially plausible claims, and as further explained below, the Court will deny the Motion.

---

[1] Saint Mary's filed a response (ECF No. 74), and Hometown Health filed a reply (ECF No. 75) to the Motion.

[2] The Court previously granted Saint Mary's motion to amend the original complaint after United States Magistrate Judge Carla L. Baldwin approved limited discovery and ordered Hometown Health to produce four healthcare plans for the patients mentioned in the original complaint. (ECF Nos. 55, 58, 59, 65.) Saint Mary's filed two versions of the FAC, one with the information from Hometown Health's healthcare plans redacted (ECF No. 69), and one without redaction and filed under seal (ECF No. 67 (Sealed)). Saint Mary's also filed sealed exhibits to the FAC. (ECF No. 68 (Sealed).)


## II. BACKGROUND[3]

Saint Mary's is a limited liability company and an acute care hospital that provides medical services to patients in the Reno area. (ECF No. 67 at 3-4.) Hometown Health are health insurance companies and wholly owned subsidiaries of Renown Healthcare. (ECF Nos. 67 at 2-4, 73 at 3.) Saint Mary's is an out-of-network provider and has no pre-existing "express provider contract" with Hometown Health. (ECF Nos. 67 at 4, 73 at 2.)

Saint Mary's alleges that from 2014 to 2019, it provided medically necessary services to Hometown Health's insured members, many of which were emergency services. (ECF No. 67 at 5-6.) Saint Mary's contends that, as a matter of policy, it acquired assignments of benefits from patients insured by Hometown Health and has sought payment of its services from Hometown Health on the patients' behalf. (*Id*. at 8-9.) However, Hometown Health have allegedly refused to pay 128 claims and have underpaid 562 claims, and owe Saint Mary's around $6,001,530.51. (*Id*. at 6, 8.) Saint Mary's maintains that Hometown Health's benefit plans require it to pay out-of-network providers the "usual and customary" rate or "at a rate derived therefrom." (*Id*. at 10.) Saint Mary's has allegedly tried to gather information from Hometown Health regarding the funding status and healthcare plans for the 690 claims at issue,[4] and served a demand letter on Hometown Health in 2018, but has not had success acquiring this information. (*Id*. at 7-8.)

Saint Mary's initiated this lawsuit against Hometown Health. (ECF No. 1.) United States Magistrate Judge Carla L. Baldwin granted limited discovery and ordered Hometown Health to provide Saint Mary's with the healthcare plans[5] for the patients

---

[3]The following allegations are adapted from the FAC unless noted otherwise. (ECF Nos. 67, 69.)

[4]Saint Mary's alleges that "as an out-of-network provider," it did not have "access to health plans that Defendants solely possess." (ECF No. 58 at 4 (Sealed).)

[5]At this time, it is unclear how many healthcare plans are implicated by the 690 claims, which and how many of the 690 claims are for emergency services, and which and how many of the 690 claims are covered by ERISA.

named in the original complaint. (ECF Nos. 55 at 2, 58 at 2.) Hometown Health subsequently provided Saint Mary's with four healthcare plans.[6] (ECF Nos. 58 at 2, 67 at 2, 68-2 at 1.) In light of this disclosure, Saint Mary's sought leave to amend its original complaint, which the Court granted. (ECF Nos. 58, 65.)

Saint Mary's then filed the FAC and asserts the following claims: (1) failure to comply with health benefit plans in violation of ERISA (claims arising under ERISA plans), (2) breach of contract (all claims), (3) breach of contract implied-in-law (in the alternative) (all claims), (4) unjust enrichment/quantum meruit (in the alternative) (all claims), (5) violation of Nevada emergency care statutes (emergency claims), and (6) violation of Nevada prompt payment statutes (all claims). (ECF No. 67 at 21-27.) Hometown Health now seek dismissal of the FAC. (ECF No. 73 at 22.)

### III.   LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court of the United States clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal

---

[6]According to Saint Mary's, only one out of the four healthcare plans that Hometown Health provided is an Employee Retirement Income Security Act ("ERISA") plan. (ECF No. 74 at 11.)

conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678.

Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. at 679 (alteration in original) (quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

## IV.  DISCUSSION

The Court first focuses its inquiry on whether Saint Mary's has standing to sue Hometown Health. The Court next considers whether Saint Mary's sufficiently alleged exhaustion of administrative remedies. Finally, the Court examines whether Saint Mary's plausibly pleaded its claims under Rule 12(b)(6). For the reasons stated below, the Court will deny Hometown Health's Motion and will defer its analysis of ERISA preemption.

### A.    Standing to Sue

The Court will first address issues that implicate Saint Mary's standing to sue, including whether Hometown Health have waived the anti-assignment provisions in its benefit plans, whether the assignment of benefits to Saint Mary's is valid, the scope of such assignments, and whether Saint Mary's has suffered an injury-in-fact. Each standing issue is addressed in turn as follows.

///

///

### 1. Waiver of Anti-Assignment Provisions

To start, the Court finds that Hometown Health have waived the right to enforce the anti-assignment provisions in its benefit plans. Hometown Health argue that its healthcare plans contain clear anti-assignment clauses that bar Saint Mary's claims. (ECF No. 73 at 8-9.) Saint Mary's counters that Hometown Health waived the anti-assignment clauses because it knew Saint Mary's was the patients' assignee and "failed to assert or acknowledge the existence of anti-assignment clauses when it underpaid" the claims in the case. (ECF No. 74 at 12-13.) The Court agrees with Saint Mary's.

"ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan." *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000) (citing 29 U.S.C. § 1132(e)(1)). However, as an out-of-network healthcare provider, Saint Mary's "cannot bring claims for benefits on its own behalf [under ERISA]. It must do so derivatively, relying on its patients' assignments of their benefits claims." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) (citations omitted). Although anti-assignment provisions in ERISA plans "are valid and enforceable," an insurance plan administrator "can waive the right to enforce an anti-assignment provision." *Id*. at 1296; *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shields of Ill.*, 983 F.3d 435, 440 (9th Cir. 2020). Waiver may arise "when [a] party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Beverly Oaks*, 983 F.3d at 440 (citations omitted). To show waiver, the healthcare provider must "plead sufficient facts that [the plan administrator] was aware or should have been aware, during the administrative [claim] process that [the provider] was acting as its patients' assignee." *Id.* (citation omitted).

Here, Saint Mary's has pleaded sufficient facts to support the existence of waiver. Accepting Saint Mary's allegations as true, Saint Mary's contends that it began providing notice to Hometown Health that it was "the assignee of the patients for which it seeks assigned rights under the plans administered by [Hometown Health]" in January

of 2014, "[a]s part of [its] communications with [Hometown Health] concerning requested payment." (ECF No. 67 at 20.) *See Iqbal*, 556 U.S. at 678. Saint Mary's even noticed Hometown Health of "its delay in processing [the] claims, but to no avail." (*Id*. at 27.) In light of Saint Mary's repeated representations to Hometown Health that it was the patients' assignee during the administrative process, Hometown Health either knew or *should have known* that Saint Mary's was seeking payments through assignment. *See Beverly Oaks*, 983 F.3d at 440. Moreover, Hometown Health allegedly issued partial payments to Saint Mary's for 562 out of 690 claims. (ECF No. 67 at 8.) Hometown Health's processing or partial processing of over 80 percent of the claims at issue in this case, over the course of five years, contradicts its own anti-assignment clauses and policies.[7] (ECF Nos. 67 at 8, 73 at 8, 74 at 4.) *See id.* at 441 (finding that the plan administrator's "silence and payment was so inconsistent with an intent to enforce the anti-assignment clause as to induce a reasonable belief that [the right to enforce the clause] ha[d] been relinquished") (citation and quotation marks omitted). In light of these allegations, the Court finds that Saint Mary's has pleaded sufficient facts to support waiver.[8]

---

[7]An example of an anti-assignment clause in Hometown Health's benefit plans includes a prohibition on assignment of the "EOC or any of the rights, interests, claims for money due, benefits, or obligations hereunder without our prior written consent." (ECF No. 68-3 at 103, 210.)

[8]Saint Mary's also argues that Hometown Health waived its anti-assignment defense because it failed to disclose "the existence of anti-assignment clauses when it underpaid any of the claims in this case." (ECF No. 74 at 12.) *See Spinedex*, 770 F.3d at 1296 ("an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court"). Noticeably, Hometown Health do not deny that it failed to raise or acknowledge the anti-assignment provisions. (ECF No. 73 at 9-10.) Hometown Health, instead, cite to an unpublished Ninth Circuit decision to suggest that waiver is inapplicable because Hometown Health only raised the anti-assignment provisions to challenge Saint Mary's standing to sue, not as a basis to deny benefits. (*Id*. at 10.) *See Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, 720 F. App'x 862, 863 (9th Cir. 2018). However, *Eden* is not binding, and the Ninth Circuit later clarified that its prior holding "that an insurer or claim administrator may waive the ability to raise an anti-assignment provision as a defense when they take action inconsistent with that provision or are aware that the claimant is acting as an assignee" remains undisturbed. *Beverly Oaks*, 983 F.3d at 441.

**2. Validity and Scope of Assignments**

Hometown Health contend that dismissal is proper because Saint Mary's failed to include the assignment provision for each claim, and the assignment language is too narrow to "cover the assignment of a cause of action." (ECF No. 73 at 6-7.) Saint Mary's counters that it met Rule 8 requirements by citing to "the exact language of the quoted assignment or language that had a similar legal effect." (ECF No. 74 at 5-6.) The Court agrees with Saint Mary's.

First, Hometown Health argue the allegations in the FAC "are not sufficient for the Court to find that a valid assignment exists" because Saint Mary's did not include the complete, exact language from each assignment. (ECF No. 73 at 6.) The Court is unpersuaded because Rule 8 only requires "a short and plain statement" and Saint Mary's provided the Court with an excerpt of the exact language[9] from at least one assignment, which is allegedly pervasive through all of the assignments. (ECF No. 67 at 8-9.) The Court finds that the excerpt in the FAC is sufficient to determine the scope of the assignments. Moreover, at the pleading stage, it would be unreasonable to expect Saint Mary's to provide the complete assignment language for *each* of the 690 claims, and such an onerous request violates Rule 8. (ECF No. 74 at 6.) *See In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, Case No. SACV 19-2075 JVS (DFMx), 2020 WL 8457488, at *4 (C.D. Cal. Nov. 18, 2020) (declining to dismiss the plaintiffs' ERISA claim "merely for failure to quote the exact language of the assignment").

Second, Hometown Health contend that the scope of the assignment language only confers the right for Saint Mary's to receive payment but is insufficient "to allow

---

[9]In the FAC, Saint Mary's alleges that its assignments include the following language, or similar language with similar legal effect: ". . . the undersigned irrevocably assigns and hereby authorizes…direct payment to the hospital . . . all private and public insurance benefits otherwise payable to or on behalf of the patient for this hospitalization or for these outpatient services and for any emergency services, if rendered, including but not limited to group medical/indemnity/self-insured ERISA benefits/coverage, PIP, UIM/UM, as well as auto-homeowner insurance." (ECF No. 67 at 8-9.)

7

Saint Mary's to bring the claims in this action." (ECF No. 73 at 7.) To determine whether the assignment covers Saint Mary's claims in the FAC, the Court examines the "language and context of the authorizations," as well as "the intent of the parties." *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876-77 (9th Cir. 2017) (citation omitted); *see also Britton v. Co–op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) ("[I]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person") (citation omitted).

Here, Saint Mary's assignments authorize Saint Mary's to receive direct payment for "all private and public insurance benefits otherwise payable to or on behalf of the patient." (ECF No. 67 at 9.) The plain language of the assignment suggests that patients intended to assign the right to bring suit for payment or non-payment of benefits when they received medically necessary services at Saint Mary's facility. (*Id*.) *See DB Healthcare*, 852 F.3d at 877. Since Saint Mary's is suing for non-payment and underpayment of benefits covered by Hometown Health's plans, Saint Mary's claims fall within the scope of the assignments and may proceed.[10] (ECF No. 67 at 21- 27.)

Hometown Health attempt to argue in the reply that the scope of Saint Mary's assignments does not encompass Saint Mary's equitable claims.[11] (ECF No. 75 at 12-13.) Hometown Health cite to *DaVita Inc. v. Amy's Kitchen, Inc.* as support, where the Ninth Circuit found that the assignment language, which was similar to Saint Mary's,

---

[10] Hometown Health also attempt to argue that Saint Mary's only obtained assignment of receipt of benefits, not assignment of the right to sue. (ECF Nos. 73 at 10, 75 at 7.) However, assignment of the right to receive payment for benefits also generally includes the right to sue for payment or non-payment of those benefits—which is precisely what Saint Mary's is doing in this case. *See Reg'l Med. Ctr. of San Jose v. WH Adm'rs, Inc.*, 795 F. App'x 524, 525 (9th Cir. 2020) (noting that "nothing in ERISA appears to support a separation of the assignment of benefits and the corollary assignment of the right to sue"); *see also DB Healthcare*, 852 F.3d at 877 n.7 (explaining that "[a]n assignment of the right to receive payment of benefits generally includes the limited right to sue for non-payment under § 502(a)(1)(B)") (citations omitted).

[11] The Court notes that Hometown Health allude to this argument at certain points throughout the Motion, but do not explicitly raise it until the reply. (ECF Nos. 73, 75 at 12-13.)

8

covered "a claim seeking to recover benefits," but "did not encompass an assignment of equitable claims." 981 F.3d 664, 678 (9th Cir. 2020).

However, this case is distinguishable from *DaVita*. The assignee in *DaVita* specifically sought injunctive and equitable relief "to address allegedly illegal plan terms, including reformation to conform the plan to the requirements of federal law." *Davita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 965 (N.D. Cal. 2019). Here, Saint Mary's is not seeking reformation of Hometown Health's benefit plans or alleging that the terms of the plans are illegal. (ECF No. 67 at 23-26.) Instead, Saint Mary's is alleging that Hometown Health violated its own benefit plans by failing to pay or underpaying Saint Mary's, and Saint Mary's is seeking recovery, through its equitable claims, of the benefits owed. (*Id.*) The Court therefore finds that Saint Mary's equitable claims fall within the scope of the assignment for right to sue for payment or non-payment of benefits. (ECF No. 67 at 9.) *See DB Healthcare*, 852 F.3d at 877.

### 3. Injury-in-Fact

Hometown Health argue that dismissal is appropriate because the patients have not suffered an injury, since Saint Mary's is not pursuing payment from the insured members. (ECF No. 73 at 11-12.) Saint Mary's counters that as a healthcare provider, denial of payment or underpayment is an injury-in-fact for standing. (ECF No. 74 at 8-9.) The Court again agrees with Saint Mary's.

Hometown Health's argument contravenes controlling Ninth Circuit case law. (ECF No. 73 at 11.) The Ninth Circuit has held that the assignee takes from its assignors "what they had at the time of the assignment," and that if at the time of the assignment "[p]lan beneficiaries had the legal right to seek payment directly from the Plans for charges by non-network health care providers," then the assignee does as well. *See Spinedex*, 770 F.3d at 1291. In other words, "an assignee has the same injury as its assignor for purposes of Article III." *Id*.

Here, Hometown Health's plans provide some form of coverage to patients for out-of-network providers. (ECF No. 68-3 at 115, 219, 414, 444.) Moreover, Hometown

Health have not directed the Court to any plan provisions that explicitly prohibit its insureds from suing for denial of coverage or benefits. (ECF Nos. 73 at 11-12, 75 at 8-9.) If Hometown Health's insured members, rather than Saint Mary's, sought direct payment from Hometown Health for out-of-network medical services, and Hometown Health denied their requests, the insured members would have standing to sue Hometown Health. *See Spinedix*, 770 F.3d at 1291 (explaining that "[i]f the beneficiaries had sought payment directly from their Plans for treatment provided by Spinedex, and if payment had been refused, they would have had an unquestioned right to bring suit for benefits"). The insured members would have suffered an injury from the economic losses they sustained from Hometown Health's denial or underpayment of promised coverage under the plans. *See id*. As the assignee, Saint Mary's assumes the injuries of the insured members. *See id*. Since the assignments were valid, as explained above, Saint Mary's has pleaded a plausible injury-in-fact and has standing to sue. (ECF No. 74 at 8-9.) *See Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 n.4 (9th Cir. 1986) ("[m]any cases reflect the premise that a valid assignment confers upon the assignee standing to sue in place of the assignor") (citations omitted).

### B. Exhaustion of Administrative Remedies

Hometown Health also argue that the Court should dismiss the FAC because Saint Mary's failed to include the specific steps it took to exhaust the administrative remedies under the benefit plans. (ECF No. 73 at 12-13.) Saint Mary's counters, in part, that it is not required to plead these steps because exhaustion is an affirmative defense. (ECF No. 74 at 24.) The Court agrees with Saint Mary's.

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011) (citation omitted). However, the Ninth Circuit has held that exhaustion is an affirmative defense that the defendant "must plead and prove," and should only be a basis for dismissal under Rule 12(b)(6) "[i]n the rare

event that a failure to exhaust is clear on the face of the complaint." *Albino v. Baca*, 747 F.3d 1162, 1166, 1176 (9th Cir. 2014) (citation omitted).[12]

In the FAC, Saint Mary's alleges that it "pursued all contractually required appeals procedures on behalf of the insureds before pursuing this litigation, or was excused from doing so due to a prior breach by [Hometown Health], or was excused because any such appeals have proved to be futile in previous dealings with [Hometown Health]." (ECF No. 67 at 9.) Accepting Saint Mary's allegations as true, it is unclear from the face of the FAC whether Saint Mary's has or has not exhausted their administrative remedies for each claim. (ECF Nos. 67 at 9, 73 at 12-14.) *See Iqbal*, 556 U.S. at 678; *Albino*, 747 at 1166, 1176. Thus, the exhaustion issue should be resolved at the motion for summary judgment stage, "followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion." *Albino*, 747 F.3d at 1171. Because the failure to exhaust is an affirmative defense, the Court finds that dismissal on this ground is inappropriate at the pleading stage. (ECF No. 67 at 9.) *See id*. at 1166.

C. **ERISA Preemption**

Hometown Health next argue that ERISA preempts Saint Mary's state and common law claims in the FAC. (ECF No. 73 at 14-15.) The Court declines to address the issue of ERISA preemption at the motion-to-dismiss stage, since Hometown Health have only produced four benefit plans under court order—of which only one is an ERISA plan. (ECF Nos. 55 at 2, 74 at 11.) There is no dispute that at this time, Hometown Health have not provided all of the benefit plans that pertain to the 690 claims at issue in this case. Hence, it is unclear how many additional ERISA plans are implicated by the 690 claims, which and how many of the 690 claims involve ERISA and

---

[12]Although in *Albino*, the Ninth Circuit addressed exhaustion in the Prison Litigation Reform Act context, many district courts in this circuit have agreed that the holding and reasoning in *Albino* extend to ERISA. *See Hasten v. Prudential Ins. Co. of Am.*, 470 F. Supp. 3d 1076, 1079 (N.D. Cal. 2020); *Waddell v. S. Cal. IBEW-NECA Tr. Fund*, Case No. LA CV18-10476 JAK (KSx), 2022 WL 1134701, at *6 (C.D. Cal. Feb. 1, 2022); *Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, Case No. 8:20-cv-00102-JWH-ADSx, 2022 WL 757315, at *5 (C.D. Cal. Feb. 2, 2022).

non-ERISA plans, or even how many of the 690 claims are covered by the single ERISA plan provided by Hometown Health. (ECF No. 74 at 3.)

The Court therefore reserves the ERISA preemption analysis for a later time because the scope of ERISA preemption is currently unclear due to the undeveloped and incomplete record, because deferral of the analysis is in the interest of judicial efficiency, and because the preemption issue is a question of law that hinges on unresolved questions of fact. *See, e.g.*, *Ahn v. Cigna Health & Life Ins. Co.*, Case No. 19-07141 (KM)(JBC), 2019 WL 5304628, at *4-5 (D.N.J. Oct. 21, 2019) (deferring the issue of ERISA preemption for the summary judgment stage because the court could not "determine from the Complaint which of the 46 allegedly defamatory EOBs relate to the [defendant's] administration of plans covered by ERISA"); *see also Croxson v. Seneca One Fin., Inc.*, Case No. PWG-16-449, 2016 WL 6462039, at *5 (D. Md. Nov. 1, 2016) ("[d]etermining whether ERISA preempts Croxson's severance-pay claims involves factual determinations that cannot be made at the motion-to-dismiss stage"); *Wallace v. Int'l Paper Co.*, 509 F. Supp. 3d 1045, 1053 (W.D. Tenn. 2020) ("it is premature to dismiss Plaintiff's state law claims as preempted by ERISA at this stage, even recognizing that ERISA preemption is exceptionally broad").

### D. Dismissal Under Fed. R. Civ. P. 12(b)(6)

Hometown Health alternatively request dismissal under Rule 12(b)(6) for failure to state a claim. (ECF No. 73 at 16-21.) The Court will address each claim in the FAC in turn. Because Saint Mary's has pleaded facially plausible claims, and as explained below, the Court will deny Hometown Health's Motion on this basis.

#### 1. ERISA and Breach of Contract Claims

To start, Saint Mary's has sufficiently pleaded its ERISA claim. Hometown Health argue that dismissal is proper under Rule 12(b)(6) because Saint Mary's failed to point to provisions of the benefit plan that entitled insured members to "the full amount of billed charges." (*Id.* at 16.) The Court disagrees and finds that Hometown Health mischaracterize Saint Mary's argument. In the FAC, Saint Mary's claims that the ERISA

12

benefit plan requires Hometown Health to compensate out-of-network providers "the usual and customary rate" for emergency and elective services, and cites to specific provisions as support. (ECF No. 67 at 10, 21-22.) Hometown Health have allegedly underpaid or refused to pay those rates, and Saint Mary's is seeking to recover the benefits under ERISA. (*Id*. at 21-22.) Hence, Saint Mary's is not seeking "additional benefits," but rather payment that is owed and guaranteed by Hometown Health's plan. (ECF Nos. 67 at 21-22, 73 at 16-17, 74 at 18.) The Court therefore denies dismissal and finds that Saint Mary's pleaded a plausible ERISA claim. *See Twombly*, 550 U.S. at 555.

Hometown Health also argue that the breach of contract claim should be dismissed because it is foreclosed by Hometown Health's "enforceable" anti-assignment provisions, and because Saint Mary's assignment provisions do not "expressly assign the right to sue for breach of contract." (ECF No. 73 at 17.) However, as explained above, the Court finds that Hometown Health waived its anti-assignment clauses. *See Beverly Oaks*, 983 F.3d at 440-41. The Court also finds that the assignment provisions confer an implied right to sue for payment or non-payment of benefits. *See DB Healthcare*, 852 F.3d at 877. Here, Saint Mary's is seeking compensation of benefits by alleging that the plans allow "payment of emergency and elective services at the usual and customary rate" for out-of-network providers, and that by failing to pay or underpaying, Hometown Health breached the terms of the plans. (ECF No. 67 at 22-23.) The claim is therefore covered by assignment.

### 2. Breach of Implied-in-Fact Contract (In the Alternative)

Next, Saint Mary's pleaded a plausible breach of implied-in-fact contract claim.[13] Hometown Health contend that by "never paying the rates requested by Saint Mary's,"

---

[13]Saint Mary's seeks to assert its implied contract and quantum meruit/unjust enrichment claims independent of assignment—i.e., not as an ERISA assignee. (ECF No. 74 at 17-21.) The Court only considers whether Saint Mary's pleaded facially plausible claims in this order. The Court declines to resolve whether these are separate, state law claims independent of ERISA, as this may ultimately implicate ERISA preemption, which the Court has reserved for a later time.

its course of conduct shows that there was not an implied-in-fact contract between the parties.[14] (ECF No. 73 at 18.) The Court disagrees for the following reasons. First, Saint Mary's alleges that Hometown Health's benefit plans explicitly provide for payment at the "usual and customary rate" for out-of-network emergency services. (ECF No. 67 at 10.) Second, Saint Mary's alleges that Hometown Health partially paid 562 out of the 690 claims at issue in the case over the span of five years. (*Id.* at 8.)

These details support an intent to contract between the parties, where Hometown Health would pay Saint Mary's a "Usual, Customary and Reasonable" rate for the emergency services that Saint Mary's rendered to Hometown Health's insured members. (*Id*. at 10.) *See Magnum Opes Constr. v. Sanpete Steel Corp.*, Case No. 60016, 2013 WL 7158997, at *2 (Nev. Nov. 1, 2013) (explaining that an implied-in-fact contract "exists where the conduct of the parties demonstrates that they (1) intended to contract; (2) exchanged bargained-for promises; and (3) the terms of the bargain are sufficiently clear") (citing *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012)). The precise parameters of this implied agreement, including the exact numerical rate for Saint Mary's services, need not be determined at the motion-to-dismiss stage. (ECF No. 73 at 18.) The Court therefore declines to dismiss Saint Mary's breach of implied-in-fact contract claim.

### 3. Quantum Meruit/Unjust Enrichment (In the Alternative)

Saint Mary's also alleged a plausible quantum meruit/unjust enrichment claim. First, Hometown Health contend that dismissal is proper because Saint Mary's never conferred a benefit to Hometown Health, but rather conferred a benefit to Hometown Health's insured members. (*Id.* at 19.) For an unjust enrichment claim, the plaintiff must demonstrate that "it conferred a benefit on the defendant, that the defendant

---

[14]Saint Mary's appears to be asserting two different theories in the FAC—breach of implied-in-law contract and breach of implied-in-fact contract. (ECF No. 67 at 23-25.) The parties also refer to the claims interchangeably in their briefs. (ECF Nos. 67 at 23-24, 73 at 18.) Because the primary allegations in the FAC and Defendants' basis for dismissal are focused on the parties' course of conduct and intentions, the Court construes Saint Mary's claim as one for contract implied-in-fact. (*Id*.) *See Magnum Opes Constr.,* 2013 WL 7158997, at *1 n.2.

14

appreciated the benefit, and that the defendant accepted and retained the benefit under circumstances where it would be inequitable for the defendant not to reimburse the plaintiff." *USROF III Legal Title Tr. 2015-1 by U.S. Bank Nat'l Assoc. v. Las Vegas Rental & Repair LLC Series 66*, 475 P.3d 780 (Nev. 2020) (citing *Certified Fire Prot. Inc.*, 283 P.3d at 257).

By rendering medically necessary services to the insured members, it is plausible that Saint Mary's conferred a benefit to Hometown Health because Hometown Health would not have to compensate another provider for the same services. *See San Joaquin Gen. Hosp. v. Health Care Serv. Corp.*, Case No. 2:20-cv-01582-MCE-CKD, 2021 WL 4033214, at *5 (E.D. Cal. Sept. 3, 2021) (allowing the quantum meruit claim to proceed because it was "reasonable to infer that, because Defendant would no longer have to pay for the Patients to receive the same services elsewhere, Defendant benefited from Plaintiff's services"). Further, by failing to compensate or undercompensating Saint Mary's for its services, it is plausible that Hometown Health retained an unjust economic benefit by withholding money that it would otherwise be required to pay. (ECF No. 74 at 22.) *See Certified Fire Prot. Inc.*, 283 P.3d at 257.

Second, Hometown Health contend that dismissal is proper because it never directly requested Saint Mary's services—its insured members requested the medical services. (ECF No. 73 at 19.) *See id*. (noting that a benefit for unjust enrichment can include "services beneficial to or at the request of the other") (citations omitted). The Court is similarly unpersuaded because it is plausible that Hometown Health implicitly requested Saint Mary's services since its benefit plans authorize payment to out-of-network providers like Saint Mary's, and Hometown Health partially paid around 80% of the insurance claims over a span of five years. (ECF No. 67 at 8, 10.) *See San Joaquin Gen. Hosp.*, 2021 WL 4033214, at *5 (finding it plausible that the defendant "implicitly requested Plaintiff's services when it verbally authorized the Patients' care and rendered partial payment") (citations omitted). For the aforementioned reasons, the Court denies dismissal of Saint Mary's quantum meruit/unjust enrichment claim.

### 4. Nevada Emergency Care Statutes

Next, Saint Mary's pleaded a plausible claim under NRS § 439B.748. Hometown Health primarily argue[15] that it already paid Saint Mary's "an amount that [Hometown Health] determined 'to be fair and reasonable,'" as required by the statute. *See* NRS § 439B.748(2) (providing that "the third party that provides coverage to the covered person shall pay to the out-of-network emergency facility an amount that the third party has determined to be fair and reasonable as payment for the medically necessary emergency services"). However, it is plausible that Hometown Health still violated NRS § 439B.748(2) because it allegedly refused to pay 128 claims,[16] some of which may be for emergency services. (ECF No. 67 at 8.) Moreover, whether Hometown Health actually paid a "fair and reasonable" rate for the remaining 562 claims likely requires consideration of extrinsic, evidentiary materials and should not be resolved at the motion-to-dismiss stage. (ECF Nos. 67 at 26, 73 at 20.) *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (explaining that district courts generally "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion" except "material which is properly submitted as part of the complaint" and "matters of public record"). The Court therefore declines to dismiss Saint Mary's NRS § 439B.748 claim.

### 5. Nevada Prompt Payment Statutes

Finally, Saint Mary's sufficiently alleged a claim under NRS § 683A.0879. Hometown Health argue that the claim should be dismissed because Saint Mary's does not have a private right of action under the statute. (ECF No. 73 at 21.) Saint Mary's

---

[15]In the Motion, Hometown Health include a brief, one-sentence argument that "it is beyond dispute that Saint Mary's claims are preempted by the statutory arbitration process in NRS 439B.754," without any further elaboration or case law for support. (ECF No. 73 at 20.) Even if NRS § 439B.754 deems arbitration the exclusive remedy for a violation of NRS § 439B.748, the Court declines to dismiss the claim on this basis because Hometown Health failed to make this specific argument in the Motion or explicitly raise this interpretation of the statute, (*Id.*)

[16]Due to the limited, undeveloped record before the Court and the lack of discovery, it is unclear at this time which and how many of the 690 claims are for emergency services.

counters that there is a private right of action because NRS § 683A.0879 contains an attorney fees provision. (ECF No. 74 at 23.) The Court agrees with Saint Mary's.

Since the Nevada Supreme Court has not directly addressed whether there is a private right of action under NRS § 683A.0879, the Court will "predict how the highest state court would decide the [state law] issue." *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1131-32 (9th Cir. 2021) (citations omitted). Although NRS § 683A.0879 does not expressly provide for a private right of action, "one may be implied if the Legislature so intended." *See Neville v. Eighth Judicial Dist. Court*, 406 P.3d 499, 502 (Nev. 2017) (citation omitted). To determine legislative intent, the Court considers "(1) whether the plaintiffs are of the class for whose [ ] special benefit the statute was enacted; (2) whether the legislative history indicates any intention to create or deny a private remedy; and (3) whether implying such a remedy is consistent with the underlying purposes of the legislative scheme." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 101 (Nev. 2008) (citations and quotation marks omitted). However, "the determinative factor is always whether the Legislature intended to create a private judicial remedy." *Id*. (citations omitted).

The Court finds that there was legislative intent to create a private cause of action under NRS § 683A.0879 for late or unpaid insurance claims. NRS § 683A.0879(5) explicitly provides for an award and assessment of attorney's fees *by a court* "to the prevailing party in an action brought pursuant to this section." The statute's authorization of attorney's fees is consistent with legislative intent for a private right to sue, as "[i]t would be absurd to think that the Legislature intended a private cause of action to obtain attorney fees for an unpaid [insurance claim] suit but no private cause of action to bring the suit itself." *See* NRS § 683A.0879(5); *Neville*, 406 P.3d at 504 (citation omitted). Hometown Health attempt to analogize NRS § 683A.0879 to NRS § 690B.012, another statute within NRS Title 57 where the Nevada Supreme Court found that there was not a private cause of action. (ECF No. 73 at 21.) However, the Court is

unpersuaded because NRS § 690B.012 does not contain an attorney fee provision and has a different statutory scheme.

The first factor in *Baldonado* also favors an implied, private right of action under NRS § 683A.0879. *See* 194 P.3d at 101. The statute provides a clear time frame for payment of healthcare claims and protections for claimants by imposing specific penalties on insurers for late payments. *See* NRS § 683A.0879. Here, Saint Mary's is a claimant that is seeking compensation for its healthcare services from the insurer, Hometown Health, that allegedly failed to issue timely payments. (ECF No. 67 at 27.) Saint Mary's therefore belongs to the class of beneficiaries that the statute was enacted for. *See Baldonado*, 194 P.3d at 101. Because NRS § 683A.0879 explicitly contemplates the assessment and award of attorney's fees *in court*, and because Saint Mary's is an intended beneficiary under the statute, Saint Mary's has a private right of action under NRS § 683A.0879.[17]

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

///
///
///

---

[17]Hometown Health also argue that dismissal is proper under Rule 12(b)(6) because Saint Mary's failed to specify and identify "which of the 690 were allegedly late, how long the delay was, whether Hometown Health requested additional information, or whether and to what extent Saint Mary's appealed the decisions." (ECF No. 73 at 21.) However, these details need not be raised or resolved at the motion-to-dismiss stage, given the large volume of claims at issue here, the distinct appeal process for each of Hometown Health's benefit plans, Saint Mary's inclusion of the list of claims at issue in this case, and Rule 8's requirement of "a short and plain statement" in the complaint. (ECF Nos. 68-1 at 2-10, 74 at 23.) *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. The Court therefore declines to dismiss Saint Mary's claim under NRS § 683A.0879 on this basis.

It is therefore ordered that Hometown Health's motion to dismiss (ECF No. 73) the first amended complaint (ECF Nos. 67, 69) is denied.

DATED THIS 26th Day of May 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE